IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PROGRESSIVE SPECIALTY  )
INSURANCE COMPANY,  )
  )
  )
Plaintiff,  )
  )
  )
v.  ) Case Number: 2:05-CV-438-W
  )
McKNIGHT AGENCY, INC.;  )
JOE McKNIGHT; RICKY LANE;  )
RIVERSIDE TURF FARM; JANE  )
HOLMES, individually and as the  )
personal representative of the Estate  )
of DAISY BEASLEY, deceased;  )
YOUNG, JOHNSTON &  )
ASSOCIATES, INC.  )
  )
Defendants.  ).
  )

## PROGRESSIVE'S MEMORANDUM BRIEF IN SUPPORT OF ITS SUMMARY JUDGMENT MOTION

Progressive Specialty Insurance Company ("Progressive") has filed a complaint against the defendants, Joe McKnight and McKnight Agency, Inc., as a result of a discrepancy between the amount of liability coverage requested by the named insured, Ricky Lane ("Lane"), and the amount actually procured for him by his independent agent. The facts are essentially undisputed.

Simply put, Lane requested $1 million of liability coverage from Joe McKnight ("McKnight") of the McKnight Agency, Inc. However, McKnight submitted an application for insurance to Progressive which requested $300,000 of liability limits. Progressive issued a policy to Lane which had the requested $300,000 liability limits.

Progressive has filed a complaint against McKnight and his agency, asserting in part claims for negligence and fraud. Progressive filed a motion for leave to amend its complaint on November 22, 2005 so that it could assert a related claim for indemnity based upon the producer's agreement executed by McKnight.

## POLICY BACKGROUND

Lane submitted an application for a Progressive policy on March 10, 2003. The application signed by him reflected that it would have $300,000 of liability limits. Progressive issued the policy which was in effect from March 10, 2003 to March 10, 2004. The policy and declarations page were mailed by Progressive to both Lane and McKnight. The declarations page reflects that Lane had $300,000 of liability coverage.

Progressive issued three separate endorsements to Lane on August 6, 2003. The endorsements changed the description of the insured vehicle to list Lane's 1995 International truck, added Riverside Turf as the lienholder for the truck, and changed the mailing address for the premium finance company. The declarations pages for those endorsements all reflected that the liability limits were $300,000. Progressive mailed copies of the declarations pages to Lane and McKnight.

Progressive renewed the policy for the period from March 10, 2004 to March 10, 2005. The renewal policy had liability limits of $300,000. Again, Progressive mailed the declarations pages to Lane and McKnight reflecting those limits.

The accident in which Daisy Beasley was killed occurred on July 6, 2004. After that accident, Lane discovered from Progressive that his liability limits were $300,000 instead of $1 million. He increased his liability limits to $1 million in October 2004. Lane subsequently renewed his policy for the period from March 10, 2005 to March 10, 2006 with $1 million of liability coverage.

The problem, of course, is that McKnight improperly told Lane that he had $1 million of liability coverage. McKnight also issued certificates of insurance on two occasions to Riverside Turf reflecting that Lane had $1 million of liability coverage. He submitted an invoice to Lane for the premium payment which reflected that there was $1 million of liability coverage.

## DEPOSITION TESTIMONY

1.    Deposition of Ricky Allen Lane.

The named insured is Ricky Lane. He was deposed on November 15, 2005. He lives in Shorterville, Alabama where he is employed as a commercial truck driver (depo., p. 23). He has difficulty in reading and writing (depo., p. 10).

Lane met with Joe McKnight around March 2003 to obtain liability coverage for his job where he hauled sod (depo., p. 27). He requested $1 million of liability coverage (depo., p. 27).

Lane recognized his signature on the application for the Progressive policy (depo., p. 32). The application is dated March 10, 2003. It is attached as Exhibit 4 to Lane's deposition. It provides that the coverage is "300 CSL".

McKnight input the application information on his computer which was online with Progressive (depo., p. 31). Lane never read the application before it was submitted to Progressive although there was nothing to prevent him from doing so (depo., p. 41).

Lane purchased a replacement truck in August 2003 (depo., p. 42). He obtained an insurance binder from McKnight at that time. McKnight faxed the binder to him at Riverside Turf (depo., p. 43).

After the accident, Lane received a letter from Progressive notifying him that he only had $300,000 of liability coverage (depo., p. 49). He discussed the letter with McKnight who was surprised that the requested limits were not procured (depo., p. 50). Lane acknowledged that he never discussed his limits directly with Progressive and was never informed by Progressive that he had $1 million of liability coverage (depo., p. 68).

2.    Deposition of Joe McKnight.

Joe McKnight was deposed on October 28, 2005. He has had a license to sell property and casualty insurance since 1992 (depo., p. 8). He started McKnight Agency at that time (depo., p. 9).

McKnight Agency is an independent agency. It sells for several different insurers, including Progressive, and has brokerage contracts with other agencies (depo., p. 10). He entered into a producer's agreement with Progressive which allowed him to sell commercial auto insurance for it (depo., p. 11).

McKnight knows the owners of Riverside Turf. He knows that they require their drivers to have $1 million of liability coverage and that it sold products in several southeastern states (depo., p. 22).

McKnight met with Lane on March 10, 2003 to prepare an application for liability coverage (depo., p. 28). McKnight billed Lane for $1 million of liability coverage (depo., p. 30). He understood that Lane wanted that amount of coverage (depo., p. 31).

Progressive provides a software program which McKnight used in obtaining the underwriting information and determining the premium and payment plan (depo., p. 14). The software automatically runs a retail credit report on the insured and a motor vehicle report to check the insured's driving history (depo., p. 15).

The Progressive policy which became effective March 10, 2003 only had $300,000 of liability coverage. McKnight believes that he simply clicked on the computer screen to request $300,000 instead of $1 million of liability coverage (depo., p. 33). It was a mistake on his part (id). McKnight acknowledged that he received that agent's copy of the Progressive policy which showed $300,000 of liability coverage (depo., p. 38).

McKnight sent a certificate of insurance to Riverside Turf on March 10, 2003. It reflected that Lane had $1 million of liability coverage (depo., p. 39).

Lane renewed his Progressive policy on March 8, 2004 (depo., p. 46). The renewal policy reflected that Lane had $300,000 of liability coverage, but McKnight still assumed that he was obtaining $1 million of coverage (depo., p. 49). McKnight issued another certificate of insurance to Riverside Turf on March 10, 2004 reflecting that Lane's renewal policy had $1 million of liability coverage (depo., p. 51).

After Lane's accident, McKnight reviewed his policyholder file and saw that the agent's copy of the policy reflected that Lane had $300,000 of liability coverage (depo., p. 54). He disclosed this information to Lane (depo., p. 55).

In conclusion, McKnight testified that Lane would have qualified for $1 million of coverage except for McKnight's mistake in obtaining the appropriate limits (depo., p. 63). McKnight does not fault Progressive for the improper procurement of the coverage limits requested by Lane (depo., p. 69-70).

McKnight was familiar with Progressive's software package and had been using it for approximately seven years before he submitted the application for Lane (depo., p. 71). He knew how to accurately use the software program and he never had any prior problems with it (depo., p. 71).

McKnight received from Progressive a copy of Lane's policy which became effective March 10, 2003. It disclosed that Lane's liability limits were $300,000, but McKnight never contacted Progressive concerning this discrepancy (depo., p. 74-75). He also received a copy of the renewal policy which became effective March 10, 2004. It again disclosed that Lane had $300,000 of liability coverage (depo., p. 76).

Further, McKnight had access to Progressive's website which it maintains for its agents. He could have determined Lane's liability limits at any time within a minute or so after accessing the website (depo., p. 78-80).

3.    Deposition of Raymond Morris, Jr.

Raymond Morris was deposed on November 18, 2005. He is the general partner for the lienholder, Riverside Turf (depo., p. 17). He is responsible for handling insurance matters for that company (depo., p. 18).

Riverside Turd does not own any of its own trucks (depo., p. 38). It requires its drivers to obtain their own liability coverage (depo., p. 38). He requests his drivers to obtain a certificate of insurance for it to confirm that the driver has liability coverage (depo., p. 41). Riverside Turf loaned money to Lane for his purchase of the 1995 International truck. It was listed as a lienholder on the Progressive policy (depo., p. 46).

Riverside Turf received a certificate of insurance from McKnight in March 2003 reflecting that Lane had $1 million of liability coverage (depo., p. 50, 59). It received another certificate of insurance in March 2004 from McKnight reflecting that Lane had $1 million of liability coverage (depo., p. 63-64).

4.    Deposition of Mary Alice Fitzgerald.

Mary Alice Fitzgerald was deposed on November 21, 2005. She is employed by Progressive as a customer service manager in its Cleveland, Ohio office (depo., p. 56).

Progressive entered into a producer's agreement with McKnight on February 5, 1998 (depo., p. 17). The agreement provides that McKnight has authority to provide quotes, receive applications, and bind coverage in Alabama (depo., p. 64). He did not have authority to bind coverage on inaccurate information according to the terms of the agreement (depo., p. 65).

Further, Article VIII of the producer's agreement contains an indemnification provision. It requires the agent to hold Progressive harmless from any liabilities or losses due to any acts, errors or omissions on the agent's part (depo., p. 71-72).

Progressive would have sent the policy and declarations page for the March 2003 policy to Lane. A copy of the declarations page would also have been mailed by Progressive to McKnight as the agent (depo., p. 36).

Progressive also issued declarations pages on August 6, 2003 to change the description of the insured vehicle, add a lienholder, and change the address for the premium finance company (depo., p. 39-41). Riverside Turf as the lienholder also would have received the declarations page which showed $300,000 of liability coverage (depo., p. 42). The Progressive policy was renewed in March 2004. A copy of the declarations page showing the $300,000 limits would have been mailed by Progressive at that there to Lane, McKnight, and Riverside Turf (depo., p. 44-45).

## ALABAMA LAW

Generally, an agent with binding authority is considered a general agent of the insurer. Watson v. Prudential Insurance Company of America, 399 So.2d 285 (Ala. 1981). Here, it is undisputed that McKnight had binding authority. However, the producer's agreement clearly states that the binding authority requires the agent to submit "accurate" information to Progressive on the policy application. He did not do so. An insurer, such as Progressive, has the right to presume that information given to it by the agent is true and accurate. Crumpton v. Pilgrim Health & Life Insurance Company, 46 So.2d 848 (Ala. Civ. App. 1950).

Assuming that Progressive is liable for the improper procuring of coverage by McKnight, then it is clear under Alabama law that McKnight is liable to Progressive for any losses sustained by it as a result of the agent's negligent or fraudulent conduct. Progressive Casualty Insurance Company v. Blythe, 350 So.2d 1062 (Ala. Civ. App. 1977); See, B. Allen, Alabama Liability Insurance Handbook §2-8 (1996).

Similarly, McKnight has liability to Lane if he was requested to procure $1 million of liability insurance but negligently failed to do so. Highlands Underwriters Insurance Company v. Elegante Ins., Inc., 361 So.2d 1061 (Ala. 1978); Northington v. Dairyland Insurance Company, 445 So.2d 283 (Ala. 1984). An independent agent is usually deemed to be the agent of the insured. Ala. Code §27-71-1. In Washington National Insurance Company v. Strickland, 491 So.2d 872 (Ala. 1985), the court noted that an agent who failed to obtain appropriate insurance coverage could be sued by the insured for either breach of

contract or in tort for breach of his duty to use reasonable skill, care, and diligence in obtaining coverage.

Numerous cases in Alabama have found liability on the part of the agent where he fails to obtain the coverage requested by an insured. Lewis v. Donald G. Roberts and Automobile Insurance Company, 630 So.2d 355 (Ala. 1993) (holding that agent becomes liable for any damage resulting from failure to procure appropriate coverage); Montz v. Meed & Charles, Inc., 557 So.2d 1 (Ala. 1987), (holding that agent must exercise reasonable skill, care, and diligence in effecting coverage).

Here, Progressive did nothing wrong. Its only exposure for increased limits is based upon the mistake or negligence in McKnight in submitting an incorrect application and in failing to review the declarations pages mailed to him before Lane's accident. McKnight was required by the indemnity provision in the producer's agreement executed by him to defend and indemnify Progressive for his errors and omissions.

## CONCLUSION

Progressive respectfully requests the court to enter a summary judgment in its favor, finding that Joe McKnight and McKnight Insurance Agency must provide any liability coverage up to $1 million in excess of Progressive's $300,000 liability limits. It further requests that Joe McKnight and McKnight Insurance Agency be liable under the indemnity agreement for Progressive's litigation expenses and attorney fees in prosecuting this action and defending the counterclaims filed Lane and Riverside Turf.

/s/ R. Larry Bradford
R. Larry Bradford, Attorney for Plaintiff,
Progressive Specialty Insurance Company
Attorney Bar Code: BRA039


OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road
Suite 100
Birmingham, AL 35216
(205)871-7733

## CERTIFICATE OF SERVICE

I hereby certify that I have this the 23 day of November, 2005, served a copy of the foregoing to all attorneys of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows:

Erin E. May, Esq.
Stephen E. Whitehead, Esq.
Mark E. Tindal, Esq.
Lloyd, Gray, & Whitehead, P.C.
2501 Twentieth Place South, Suite 300
Birmingham, Alabama 35223

Randy Haynes, Esq.
Larry W. Morris, Esq.
Morris, Haynes & Hornsby
P.O. Box 1660
Alexander City, Alabama 35011

Christina D. Crow, Esq.
Jinks, Daniel & Crow
P.O. Box 350
Union Springs, Alabama 36089


/s/ R. Larry Bradford
OF COUNSEL