# EXHIBIT E
# PRODUCER'S AGREEMENT

**PROGRESSIVE**                    **PRODUCER'S AGREEMENT**

PRODUCER CODE: __64376__ __AL__

This Agreement is made this __5__ day of __Feb__, 19 __98__ ("Effective Date") by and between the following insurance company(ies):

- ☐ Progressive American Insurance Company
- ☐ Progressive Casualty Insurance Company
- ☐ Progressive Consumers Insurance Company
- ☐ Progressive County Mutual Insurance Company
- ☐ Progressive Express Insurance Company
- ☐ Progressive Indemnity Insurance Company
- ☐ Progressive Northern Insurance Company
- ☐ Progressive Northwestern Insurance Company
- ☐ Progressive Specialty Insurance Company
- ☐ Progressive Security Insurance Company
- ☐ Progressive Value Insurance Company
- ☐ Classic Insurance Company
- ☐ Mountain Laurel Assurance Company
- ☐ Paloverde Insurance Company
- ☐ Progressive Coastal Plain Insurance Company Inc
- ☐ National Continental Insurance Company
- ☐ Progressive Gulf Insurance Company
- ☐ Progressive Max Insurance Company
- ☐ Progressive Mountain Insurance Company
- ☐ Progressive Preferred Insurance Company
- ☐ Progressive Southeastern Insurance Company
- ☐ Progressive Southern Pine Insurance Company
- ☐ Pro-West Insurance Company

hereinafter "we", "us", and "our", and the undersigned producer:

__McKnight Agency, Inc__
__203 W. Washington St__
__Abbeville, AL 36310__

hereinafter "you" and "your".

Please mail our copy of this Agreement to:

Progressive Companies
ATTN: Agency Licensing
POB 94064
Cleveland, OH 44101

### Article I. Definitions

A. "Policy" means any contract of insurance issued by us pursuant to this Agreement.
B. "Renewal" means any contract of insurance issued by us, or any of our corporate affiliates, that
   1. is effective within sixty (60) days after the expiration date of any Policy or Renewal thereof;
   2. provides substantially similar coverage as any such Policy or Renewal;
   3. is issued to the same named insured as such Policy or Renewal; and
   4. is issued using your Expiration Information.
C. "Expiration Information" means business records and information originating with you regarding any applicant or insured under a Policy or Renewal, including the name and address of the applicant or insured, and the date of expiration and policy limits of any Policy or Renewal. Subject to the provisions of Section VI(C), you will own all rights in the Expiration Information.
D. "Underwriting Requirements" means instructions that we provide to you in writing or electronic format, which may include, without limitation, insurance applications, underwriting rules, service standards, rates and rating procedures, commission schedules, and premium payment plans.

### Article II. Authority

A. You have the authority to solicit, provide quotes, receive applications, bind coverage, and collect, receive, and receipt for premiums for insurance products specified in our Underwriting Requirements, in the state(s) of __Alabama__ subject to and in accordance with this Agreement and the Underwriting Requirements.
B. You have no authority to, and you will not, bind us on insurance coverage:
   1. based on information that you know or have reason to know is false or inaccurate;
   2. with an effective date prior to the date that you receive an acceptable down payment, as specified in the Underwriting Requirements, and a request for such coverage; or
   3. on any class of risk or type of insurance not specified in the Underwriting Requirements.
C. Without our prior written consent, you have no authority to, and you will not:
   1. adjust any claim;

    2. grant binding authority to, or accept business subject to this Agreement from, other agencies or brokers, or any agents, solicitors, or subagents who are not your employees;
    3. issue financial responsibility filings, certificates of insurance, filings with any state or municipal agency, policies, endorsements, renewal notices, or cancellation notices;
    4. give or disclose information contained in our Underwriting Requirements or applications to any third party; or
    5. use our name in any advertisement or promotional material.

D. We have the authority to:
    1. expand, restrict, or modify, in writing, any part or all of your authority to represent us hereunder;
    2. change our Underwriting Requirements upon written notice to you, specifying the effective date of any such change;
    3. contact, or use any third party to contact, any person insured by us, or who has applied to be insured by us, to:
       a. provide customer service to the person;
       b. request, receive, or verify any information related to the person;
       c. notify the person of, and collect premiums due on, any Policy or Renewal; or
       d. change the terms of any Policy or Renewal; and
    4. access and use information regarding Policies and Renewals, including Expiration Information, only for the purposes set forth in Subsection II(D)(3), market research, product development, regulatory compliance, or determining compliance with the provisions of this Agreement.

E. Without your prior written consent, we have no authority to, and we will not:
    1. use any Expiration Information for the purpose of soliciting any Policy, Renewal, or other insurance product, except in accordance with Subsection VI(A)(5) and Section VI(C); or
    2. disclose Expiration Information to any third party, except as necessary for the purposes set forth in Subsection II(D)(3). If we disclose Expiration Information to a third party pursuant to Subsection II(D)(3), we will take reasonable steps to ensure confidential treatment of the Expiration Information by the third party.

F. Our authority under Section II(D), as limited by Section II(E), will survive the expiration or termination of this Agreement.

### Article III. Duties

A. You will:
    1. forward all applications and premiums to us in any reasonable manner that we may specify, which may include, without limitation, electronic transmission;
    2. reasonably ensure that all applications are complete and contain accurate information;
    3. present to each applicant all promotional and instructional materials, and any other information that we may direct you to present to the applicant, including, without limitation, information regarding preferred repair facilities, preferred provider organizations, direct claims reporting and response, safety, insurance economics, and financial stability;
    4. comply with all applicable laws relating to the sale of insurance coverages pursuant to this Agreement, including, without limitation, agent, broker, and solicitor licensing laws;
    5. pay for all of your operating expenses, including, without limitation, personal license fees and taxes, and occupational or municipal license fees and taxes;
    6. maintain an agent's errors and omissions policy of insurance with minimum limits of liability of Three Hundred Thousand Dollars ($300,000) covering you and each of your employees;
    7. comply with our Underwriting Requirements, as these may be changed by us;
    8. instruct each insured to immediately report all losses directly to us, and immediately refer to us any inquiry or report concerning any claim or loss that you may receive;
    9. if electronic transmission is specified pursuant to subsection III(A)(1), retain in an orderly fashion, and for the period specified in the Underwriting Requirements, all original signed applications, and exclusions and rejections of optional coverage under any Policy or Renewal, and not discard or destroy any such documents without our prior written consent. Notwithstanding the foregoing, after any such document has been retained by you for a period of at least three (3) years, you may send it, or an accurate copy thereof, to us, and upon expiration or termination of this Agreement, you will send to us all such documents, or accurate copies thereof;
    10. grant us access to any of your facilities for the purpose of inspecting such documents and records, and provide reasonable assistance in performing any such inspection;
    11. provide to us any information in your possession or control that we may request in exercising our authority under this Agreement, including, without limitation, a copy of all or any part of any file concerning any person insured under, or who has applied for, a Policy or Renewal; and

Received: 2/ 3/98;   7:20PM;   904 434 0202 => McKnight Agency, Inc;   #2

Feb-03-98 08:05P Progressive Corp.                904-434-0202                    P.02

12. refund unearned commissions to the insured who paid the premium resulting in such commissions, or to us if we bill you, at the same rate that such commissions were paid to you.

B. We will:
1. issue all policies, endorsements, renewal notices, cancellation notices, certificates, filings, and other required documentation of coverage;
2. adjust or arrange for the adjustment of all claims;
3. promptly inform you of any material change to any Policy or Renewal;
4. fulfill our obligations under our Underwriting Requirements, Policies, and Renewals;
5. pay you commissions as provided in this Agreement; and
6. develop and provide to you the Underwriting Requirements, and promptly notify you of any material change to the Underwriting Requirements.

C. Your duties under Subsections III(A)(8) through III(A)(12) and our duties under Subsections III(B)(1) through III(B)(5) will survive the expiration or termination of this Agreement.

Received:  2/ 3/98;  7:22PM;  904 434 0202 => McKnight Agency, Inc;  #1

Feb-03-98  08:07P  Progressive Corp.          904-434-0202          P.01

A. We will pay you commissions on Policies and Renewals based on our applicable commission schedules in effect as of the inception date of each such Policy or Renewal, provided that:
1. you are properly licensed;
2. you have paid all amounts that are due and owing to us; and
3. you are the agent of record at the inception of the Policy or Renewal.
B. We may change our commission schedules at any time upon prior written notice to you.

### Article V. Term and Termination

A. This Agreement will expire upon the anniversary of the Effective Date if either party so elects by giving written notice to the other party at least thirty (30) days prior to the anniversary date. Absent such notice, this Agreement will automatically renew for successive one year periods, subject to expiration on any anniversary of the Effective Date, as provided above.
B. Unless otherwise required by applicable state law, this Agreement may be terminated by either party immediately upon the expiration of thirty (30) days' prior written notice to the other party.
C. Unless otherwise required by applicable state law, if a party fails, in any material respect, to comply with the provisions of this Agreement, and if such failure is not cured within fifteen (15) days after receipt of written notice thereof, then the other party may terminate this Agreement immediately upon written notice to the party failing to so comply. If we provide you notice of our intent to terminate pursuant to this Section due to your failure to pay all amounts due and owing to us, then we will set forth the total amount due and owing in our notice.

### Article VI. Rights After Expiration or Termination

A. Upon and after the expiration or termination of this Agreement:
1. all authority given to you by this Agreement ends;
2. we may notify policyholders of the expiration or termination of this Agreement;
3. you will promptly return all of our manuals, forms, records, materials, applications, rate guides, Underwriting Requirements, software, and any other property that we have furnished to you;
4. all in-force Policies and Renewals will continue to normal expiration, subject to their terms; and
5. unless otherwise notified by you in writing, we may, in our discretion, offer to renew Policies and Renewals written hereunder. When required by applicable law, we will offer to renew such Policies and Renewals. If we make such offers to renew, we will continue to designate you as the producer, and we will pay you commissions on each resulting Renewal, subject to and in accordance with Article IV, provided that this Agreement has not been terminated by us pursuant to Section V(C).
B. Notwithstanding the foregoing, unless otherwise notified by us in writing, you will continue to have binding authority with respect to endorsements to Policies and Renewals outstanding after expiration or termination of this Agreement, and you may retain those materials of ours that are necessary to exercise this authority.
C. If this Agreement is terminated by us pursuant to Section V(C) due to your failure to pay all amounts due and owing to us, then we will own all rights in Expiration Information.

### Article VII. Fiduciary Responsibilities

A. All funds received by you as premiums for insurance written under this Agreement will be held by you in a fiduciary capacity, in trust, for our benefit. If mutually agreed, you will deposit such funds into a bank account for electronic transfer to us. If you fail to remit or make these funds available to us in a timely fashion, as determined by the Underwriting Requirements, we will have a first lien on such funds. After the expiration or

Received: 2/ 4/98; 11:07PM; 904 434 0202 => McKnight Agency, Inc; #1
Feb-04-98 11:53P Progressive Corp. 904-434-0202 P.01

termination of this Agreement, you will continue to hold these funds in a fiduciary capacity, in trust, for our benefit until you remit or make these funds available to us.

B. Notwithstanding anything in this Agreement to the contrary, we may set off any amounts due and owing to you against any amounts due and owing by you to us.

C. This Article will survive the expiration or termination of this Agreement.

### Article VIII. Indemnification

A. We will indemnify and hold you harmless for and from all liabilities, losses, damages, judgements, actions, and expenses, including reasonable attorneys' fees (collectively, "Losses"), that you sustain due to our negligence, any acts, errors or omissions on our part, or our failure to comply with the provisions of this Agreement, including, without limitation, our failure to perform our duties set forth in Article III, provided that we are legally liable to you for such Losses. You will immediately notify us when you learn of or receive any claim that you feel is covered under this Article. We have the right to participate in the investigation and defense of any such claim, and may, at our option, assume full defense of any action filed. If we assume the defense, we will not be liable to you for any cost of litigation, including, without limitation, court costs and attorneys' fees, that you incur subsequent to our decision to assume defense of any such action.

B. You will indemnify and hold us harmless for and from all Losses that we sustain due to your negligence, any unauthorized representations, acts, errors, or omissions on your part, or your failure to comply with the provisions of this Agreement, including, without limitation, your failure to perform your duties set forth in Article III, or failure to comply with restrictions on your binding authority as set forth in our Underwriting Requirements, provided that you are legally liable to us for such Losses.

C. This Article will survive the expiration or termination of this Agreement.

### Article IX. Miscellaneous

A. This Agreement will be governed by and interpreted under the laws of the first state set forth in Section I(A). Any provision of this Agreement that is contrary to the controlling law is hereby deemed to be amended to bring it in compliance with that law. The determination by a court of competent jurisdiction that any provision of this Agreement is unenforceable will in no way impair or affect the validity or enforceability of any other provision of this Agreement.

B. This Agreement contains the entire understanding between the parties and supersedes all previous agreements between the parties, oral or written, with respect to any insurance product that you are authorized to solicit under this Agreement. This Agreement will not affect, alter, or impair any agreement between the parties with respect to any other insurance product(s).

C. Any controversy or claim arising out of this Agreement shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

D. This Agreement may not be altered or modified except in writing signed by both parties.

E. This Agreement will be binding on and will inure to the benefit of the parties and their respective successors and permitted assigns. Except as provided in this Section, neither this Agreement nor any rights or duties hereunder may be assigned or delegated by either party without the prior consent in writing of the other party, which will not be unreasonably withheld. Upon written notice to you, we may assign or delegate our rights or duties under this Agreement to any of our corporate affiliates. Upon written notice to us, you may assign your rights to receive commissions on Renewals to any insurance agent, and upon receipt of such notice we will pay such commissions to the assignee, provided that the conditions of Section IV(A) are met with respect to the assignee and the Renewals giving rise to such commissions.

F. The captions contained in this Agreement are for organizational purposes only and do not constitute a part of this Agreement.

G. A party's failure to insist upon strict compliance with any of the provisions of this Agreement or the Underwriting Requirements will not constitute a continuing waiver of the right to insist upon such compliance.

H. The rights and remedies of the parties under this Agreement are cumulative and in addition to any rights and remedies available to the parties at law or in equity.

I. You are an independent contractor and not our employee. This Agreement is not exclusive as to either party.

INSURANCE COMPANY(IES)                    PRODUCER

By: _Progressive_____              By: _[signature]_____

Name: _[signature]_____              Name: _Joe T. McKnight__

Title: _TSR_____              Title: _President_____