## FREEDOM COURT REPORTING

```
 1        IN THE UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF ALABAMA
 2                NORTHERN DIVISION
 3   PROGRESSIVE SPECIALTY INSURANCE COMPANY,
 4        Plaintiff,
 5                          CIVIL ACTION NUMBER
     VS.
 6                          2:05-CV-438-W
 7   McKNIGHT AGENCY, INC.; JOE McKNIGHT; RICKY
     LANE; RIVERSIDE TURF FARM; et al.,
 8
         Defendants.              ORIGINAL
 9
10        DEPOSITION OF MARY ALICE FITZGERALD
11
              S T I P U L A T I O N S
12
13             IT IS STIPULATED AND AGREED,
14   by and between the parties through their
15   respective counsel, that the deposition
16   of:
17             MARY ALICE FITZGERALD,
18   may be taken before Carol J. Reyer,
19   Commissioner, at The Courtyard Marriott,
20   4277 W. 150th Street, Cleveland, Ohio, on
21   the 21st day of November, 2005, commencing
22   at approximately 9:15 a.m.
23
```

# FREEDOM COURT REPORTING

1    IT IS FURTHER STIPULATED AND

2   AGREED that the signature to and reading

3   of the deposition by the witness is

4   waived, the deposition to have the same

5   force and effect as if full compliance had

6   been had with all laws and rules of Court

7   relating to the taking of depositions.

8

9    IT IS FURTHER STIPULATED AND

10  AGREED that it shall not be necessary for

11  any objections to be made by counsel to

12  any questions, except as to form or

13  leading questions, and that counsel for

14  the parties may make objections and assign

15  grounds at the time of the trial, or at

16  the time said deposition is offered in

17  evidence, or prior thereto.

18

19    IT IS FURTHER STIPULATED AND

20  AGREED that notice of the filing of the

21  transcript by the Court Reporter is hereby

22  waived.

23

## FREEDOM COURT REPORTING

```
1                A P P E A R A N C E S
2
     FOR PROGRESSIVE SPECIALTY INSURANCE
3    COMPANY:
4              R. LARRY BRADFORD
               Attorney-at-Law
5              BRADFORD LAW FIRM
               2020 Canyon Road, Suite 100
6              Birmingham, Alabama 35216
               (205) 871-7733
7
8    FOR THE DEFENDANTS:
9              MARK E. TINDAL
               Attorney-at-Law
10             LLOYD, GRAY & WHITEHEAD
               2501 20th Place South, Suite 300
11             Birmingham, Alabama 35223
               (205) 967-8822
12
13             RANDALL S. HAYNES
               Attorney-at-Law
14             MORRIS, HAYNES & HORNSBY
               131 Main Street
15             Alexander City, Alabama 35011
               (256) 329-2000
16
17             T. RANDALL LYONS
               (via telephone)
18             Attorney-at-Law
               WEBSTER, HENRY & LYONS
19             418 Scott Street, Suite B
               Montgomery, Alabama 36101
20             (334) 264-9472
21
22
23
```

# FREEDOM COURT REPORTING

1        ALEX L. HOLTSFORD, JR.
         (via telephone)
2        Attorney-at-Law
         NIX, HOLTSFORD, GILLILAND, HIGGINS
3        & HIGGINS
         4001 Carmichael Road, Suite 300
4        Montgomery, Alabama 36103
         (334) 262-2006
5
6        NATHAN A. DICKSON, II
         (via telephone)
7        Attorney-at-Law
         JINKS, DANIEL & CROW
8        219 N. Prairie Street
         Union Springs, Alabama 36089
9        (334) 738-4225
10
         JEFFREY W. SMITH
11       (via telephone)
         Attorney-at-Law
12       SLATEN & O'CONNOR
         105 Tallapoosa Street
13       Montgomery, Alabama 36104
         (334) 396-8882
14
15   ALSO PRESENT:  LARRY LACKEY
16
17
18
19
20
21
22
23

# FREEDOM COURT REPORTING

```
1                      I N D E X
2   WITNESS:                                   PAGE
3         MARY ALICE FITZGERALD
          Examination by Mr. Tindal              9
4         Examination by Mr. Haynes             56
          Reexamination by Mr. Tindal           77
5         Examination by Mr. Lyons              77
          Reexamination by Mr. Haynes           80
6

7   - - - - - - - - - - - - - - - - - - - - -
8                   E X H I B I T S
9
          Defendant's Exhibit No. 1 -           14
10              Notice of Deposition
11        Defendant's Exhibit No. 2 -           19
                Insurance Application
12
          Defendant's Exhibit No. 3 -           30
13              Producer Agreement
14        Defendant's Exhibit No. 4 -           30
                Declarations Page
15
          Defendant's Exhibit No. 5 -           38
16              Declarations Page
17        Defendant's Exhibit No. 6 -           39
                Important Notice
18
          Defendant's Exhibit No. 7 -           47
19              Renewal Notice
20        Defendant's Exhibit No. 8 -           48
                ForAgentsOnly.com
21
          Defendant's Exhibit No. 9 -           50
22              Insurance
                Identification Cards
23
```

## 367 VALLEY AVENUE
## (877) 373-3660    BIRMINGHAM, ALABAMA    (205) 397-2397

# FREEDOM COURT REPORTING

1      Defendant's Exhibit No. 10 -          52
              Progressive Claims
2             Service Card
3      Defendant's Exhibit No. 11 -          52
              Insurance
4             Identification Card
5      Defendant's Exhibit No. 12 -          53
              Revised Renewal Quote
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## FREEDOM COURT REPORTING

1          I, Carol J. Reyer, a Court

2    Reporter of Birmingham, Alabama, acting as

3    Commissioner, certify that on this date,

4    pursuant to the Federal Rules of Civil

5    Procedure, and the foregoing stipulation

6    of counsel, there came before me at The

7    Courtyard Marriott, 4277 W. 150th Street,

8    Cleveland, Ohio, on the 21st day of

9    November, 2005, commencing at

10   approximately 9:15 a.m., MARY ALICE

11   FITZGERALD, witness in the above cause,

12   for oral examination, whereupon the

13   following proceedings were had:

14          MARY ALICE FITZGERALD,

15   being first duly sworn, was examined and

16   testified as follows:

17          THE COURT REPORTER:  Usual

18   stipulations?

09:15:17  19          MR. BRADFORD:  That's fine.

09:15:18  20          MR. TINDAL:  That's fine.

21          (Whereupon, an off-the-record

22   discussion was held, at which time the

23   following proceedings were had and done:)

# FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 09:17:37 | 1 | MR. TINDAL: Before we get |
| 09:17:38 | 2 | started, this is Mark Tindal, and just for |
| 09:17:40 | 3 | the record, it's 9:15 eastern time, 8:15 |
| 09:17:44 | 4 | central time. The deposition was noticed |
| 09:17:46 | 5 | and scheduled for beginning 15 minutes |
| 09:17:49 | 6 | ago, and we've been trying to track down |
| 09:17:51 | 7 | someone from Lynn Jinks' office, and we |
| 09:17:53 | 8 | believe they're going to call in soon. |
| 09:17:55 | 9 | But we do have counsel on the line for all |
| 09:17:58 | 10 | parties that are in the Federal court |
| 09:18:02 | 11 | action; is that correct, as far as |
| 09:18:04 | 12 | everyone's concerned? |
| 09:18:05 | 13 | MR. BRADFORD: Well, except |
| 09:18:06 | 14 | for the Jinks firm. They're in the |
| 09:18:09 | 15 | Federal case. |
| 09:18:09 | 16 | MR. TINDAL: Correct. |
| 09:18:11 | 17 | MR. BRADFORD: Everybody else. |
| 09:18:12 | 18 | MR. TINDAL: Ricky Lane has |
| 09:18:14 | 19 | counsel attending this deposition, and |
| 09:18:16 | 20 | Riverside Turf has counsel attending this |
| 09:18:19 | 21 | deposition. |
| 09:18:19 | 22 | MR. BRADFORD: That's true. |
| | 23 | |

## FREEDOM COURT REPORTING

EXAMINATION BY MR. TINDAL:

     Q.    Ma'am, could you state your full name for the record, please?

     A.    Mary Alice Fitzgerald.

     Q.    Ms. Fitzgerald, my name is Mark Tindal. I represent Joe McKnight. I'm going to be asking you a few questions today, okay.

     A.    Okay.

     Q.    Now, have you given a deposition before?

     A.    Yes.

     Q.    So, you know the drill. I'm going to be asking you some questions, and the court reporter is going to be taking down what I say and taking down your answers. Do you understand that?

     A.    Yes.

     Q.    Now, if I ask a question that doesn't make sense or is not clear in any way, please let me know and I'll rephrase. Otherwise, we'll assume that the question and answer, as written down by the court

# FREEDOM COURT REPORTING

Page 10

| | | |
|---|---|---|
| 09:18:52 | 1 | reporter, were understood by everyone, |
| 09:18:55 | 2 | okay. |
| 09:18:55 | 3 | A. Okay. |
| 09:18:55 | 4 | Q. All right. How long have you |
| 09:18:57 | 5 | been with Progressive? |
| 09:18:59 | 6 | A. 14 and a half years. |
| 09:19:02 | 7 | Q. Okay. So, that would take us |
| 09:19:03 | 8 | back to 1991; is that correct? |
| 09:19:06 | 9 | A. Yes. |
| 09:19:06 | 10 | Q. All right. Let's start with |
| 09:19:10 | 11 | your education, then. Where did you go to |
| 09:19:13 | 12 | college? |
| 09:19:15 | 13 | A. Kent State University. |
| 09:19:18 | 14 | Q. What was your degree in at |
| 09:19:19 | 15 | Kent State? |
| 09:19:20 | 16 | A. I don't have a degree. |
| 09:19:24 | 17 | Q. Did you finish at Kent State? |
| 09:19:27 | 18 | A. No. |
| 09:19:33 | 19 | Q. What classes did you take? |
| 09:19:38 | 20 | Okay, let me ask it this way: Did you |
| 09:19:40 | 21 | ever declare a major? |
| 09:19:41 | 22 | A. Marketing. |
| 09:19:42 | 23 | Q. Marketing, okay. |

**367 VALLEY AVENUE**
**(877) 373-3660   BIRMINGHAM, ALABAMA   (205) 397-2397**

# FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 09:19:47 | 1 | And how many years did you go |
| 09:19:48 | 2 | to Kent State? |
| 09:19:49 | 3 | A.    Three. |
| 09:19:53 | 4 | Q.    Did you have a declared major |
| 09:19:55 | 5 | in marketing the entire three years? |
| 09:19:58 | 6 | A.    Probably not. |
| 09:19:59 | 7 | Q.    All right. |
| 09:19:59 | 8 | A.    I probably didn't at first. |
| 09:20:01 | 9 | Q.    How many marketing classes do |
| 09:20:03 | 10 | you think you took? |
| 09:20:05 | 11 | A.    Three, four. |
| 09:20:09 | 12 | Q.    How close did you -- how far |
| 09:20:10 | 13 | away from obtaining your degree were you |
| 09:20:12 | 14 | when you left Kent State? |
| 09:20:17 | 15 | A.    Probably a year and a half. |
| 09:20:19 | 16 | Q.    A year and a' half. |
| 09:20:20 | 17 | Give me just a general idea of |
| 09:20:25 | 18 | the types of classes that you took while |
| 09:20:26 | 19 | you were at Kent State. |
| 09:20:29 | 20 | A.    I think just your basic |
| 09:20:32 | 21 | English, math.  It was a long time ago, so |
| 09:20:37 | 22 | I don't really remember every class I |
| 09:20:39 | 23 | took. |

# FREEDOM COURT REPORTING

```
09:20:39   1          Q.      I understand.
09:20:40   2          A.      I took business courses.
09:20:42   3          Q.      Did you take any courses that
09:20:43   4    would relate to insurance?
09:20:44   5          A.      No.
09:20:48   6          Q.      And when did you leave Kent
09:20:51   7    State?
09:20:58   8          A.      It was probably around '83,
           9    '84.
09:21:02  10          Q.      Okay.  From 19 -- what did you
09:21:05  11    do when you left Kent State?
09:21:06  12          A.      I went to Cleveland State for
09:21:09  13    a little while.  Then I worked for Sears &
09:21:14  14    Roebuck.
09:21:16  15          Q.      All right.  Let's talk about
09:21:18  16    Cleveland State for a little bit.  How
09:21:19  17    long were you there?
09:21:20  18          A.      Probably just two semesters.
09:21:22  19          Q.      What kind of classes did you
09:21:24  20    take?
09:21:28  21          A.      I took some -- a business
09:21:29  22    writing class there and a couple of
09:21:33  23    marketing classes.
```

# FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 09:21:34 | 1 | Q.    All right.  Then what did you |
| 09:21:37 | 2 | do at Sears & Roebuck? |
| 09:21:39 | 3 | A.    I was a commission salesclerk. |
| 09:21:43 | 4 | Q.    All right.  When did you leave |
| 09:21:48 | 5 | Sears & Roebuck? |
| 09:21:50 | 6 | A.    Twelve years ago. |
| 09:21:52 | 7 | Q.    So, you overlapped from |
| 09:21:54 | 8 | working at Progressive and Sears & |
| 09:21:56 | 9 | Roebuck? |
| 09:21:56 | 10 | A.    Yes. |
| 09:21:57 | 11 | Q.    All right.  Did you have any |
| 09:22:00 | 12 | other employment or education other than |
| 09:22:02 | 13 | what you've told us about? |
| 09:22:03 | 14 | A.    Yes. |
| 09:22:04 | 15 | Q.    What else do you have? |
| 09:22:05 | 16 | A.    I work at The Cue, which used |
| 09:22:09 | 17 | to be The Gund Arena.  It's now The Cue. |
| 09:22:13 | 18 | Q.    That used to be the what? |
| 09:22:15 | 19 | A.    The Gund Arena -- G-U-N-D.  It |
| 09:22:19 | 20 | is now The Cue Arena. |
| 09:22:21 | 21 | Q.    Okay.  What do you do there? |
| 09:22:21 | 22 | A.    I'm an usher. |
| 09:22:22 | 23 | Q.    An usher, okay, for just |

# FREEDOM COURT REPORTING

Page 14

| | | |
|---|---|---|
| 09:22:25 | 1 | events that are held here locally? |
| 09:22:27 | 2 | A.    Yes. |
| 09:22:27 | 3 | MR. TINDAL:  All right.  Do |
| 09:22:39 | 4 | you have, Larry, a copy of the deposition |
| 09:22:40 | 5 | notice that we sent? |
| 09:22:42 | 6 | MR. BRADFORD:  I've got it |
| 09:22:43 | 7 | somewhere.  I did an objection to it. |
| 09:22:48 | 8 | MR. HAYNES:  Do you want mine? |
| 09:22:49 | 9 | Here, you can have it. |
| 09:23:06 | 10 | MR. TINDAL:  We'll mark this |
| 09:23:08 | 11 | as Defendant's Exhibit 1, and we've been |
| 09:23:09 | 12 | putting the deponent's last name. |
| | 13 | (Defendant's Exhibit No. 1 |
| | 14 | marked for identification.) |
| 09:23:12 | 15 | Q.    (By Mr. Tindal)  I'll just ask |
| 09:23:13 | 16 | you if you've seen this document before? |
| 09:23:16 | 17 | And for some reason, I put the sticker on |
| 09:23:20 | 18 | the second page. |
| 09:23:27 | 19 | MR. BRADFORD:  I faxed it to |
| 09:23:29 | 20 | you.  She was in a meeting last week.  We |
| 09:23:31 | 21 | faxed it up to her, but -- |
| 09:23:33 | 22 | MR. TINDAL:  That's okay. |
| 09:23:35 | 23 | Let's look -- |

**367 VALLEY AVENUE**
**(877) 373-3660   BIRMINGHAM, ALABAMA   (205) 397-2397**

# FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 09:23:35 | 1 | THE WITNESS:  I don't believe |
| 09:23:35 | 2 | I read through it. |
| 09:23:36 | 3 | Q.    (By Mr. Tindal)  That's all |
| 09:23:36 | 4 | right, that's okay.  I just want to |
| 09:23:38 | 5 | focus -- |
| | 6 | A.    It's probably on my desk. |
| 09:23:38 | 7 | Q.    I'm sorry? |
| 09:23:39 | 8 | A.    It's probably on my desk at |
| 09:23:42 | 9 | work. |
| 09:23:42 | 10 | Q.    On the second page, I just |
| 09:23:43 | 11 | want to focus on those first eight items, |
| 09:23:46 | 12 | matters upon which examination is |
| 09:23:48 | 13 | requested. |
| 09:23:49 | 14 | A.    Oh, up here. |
| 09:23:50 | 15 | Q.    Could you read those to |
| 09:23:51 | 16 | yourself first and then we'll talk about |
| 09:24:10 | 17 | them? |
| 09:24:11 | 18 | MR. BRADFORD:  Do you care if |
| 09:24:12 | 19 | I answer for her? |
| 09:24:13 | 20 | MR. TINDAL:  Not at all. |
| 09:24:15 | 21 | MR. BRADFORD:  Let me tell you |
| 09:24:16 | 22 | what we did.  The person who has most |
| 09:24:20 | 23 | knowledge about the allegations of our |

# FREEDOM COURT REPORTING

09:24:21  1    lawsuit would be Larry Lackey, who's here,

09:24:23  2    who has the reason why we're filing that

09:24:25  3    claim.

09:24:26  4            I objected to No. 2 asking

09:24:27  5    about the profits of Progressive.  It's

09:24:29  6    publicly traded, and you could probably

09:24:31  7    find it out if you needed it.

09:24:32  8            Anything about the

09:24:33  9    relationship between the parties, Mary

09:24:34  10   Alice can testify about the contract with

09:24:36  11   the agents.  She's got a copy of that with

09:24:39  12   her.

09:24:39  13           You asked about any liability

09:24:40  14   insurance for Riverside Turf.  I don't

09:24:42  15   think he had any vehicles or it had any

09:24:45  16   vehicles, and we don't sell CGL coverage,

09:24:49  17   so there wouldn't be anything.

09:24:49  18           And by any independent

09:24:51  19   contractor, we don't know who those

09:24:53  20   contractors are, so we can't pull that.

09:24:57  21           If you ask about underwriting,

09:25:00  22   Mary Alice can do that.  And if you're

09:25:03  23   asking about claims, Larry Lackey here can

## FREEDOM COURT REPORTING

09:25:05  1    do that.

09:25:06  2         Q.    (By Mr. Tindal)  All right.

09:25:06  3    Do you agree with what your lawyer just

09:25:08  4    said, ma'am?

09:25:09  5         A.    Yes.

09:25:12  6         Q.    Okay.  Do you have any

09:25:13  7    understanding how long Joe McKnight has

09:25:15  8    been an agent for Progressive?

09:25:18  9         A.    I can look at the contract and

09:25:20  10   see when it was signed.

09:25:21  11        Q.    Please do.  All right.

09:25:36  12        A.    February 5th of 1998.

09:25:41  13        Q.    Do you think he has sold

09:25:46  14   insurance --

          15             MR. BRADFORD:  They must be

          16   joining us.

09:25:46  17             MR. TINDAL:  Do we have

09:25:47  18   someone joining us?

09:25:49  19             MR. DICKSON:  Yeah, this is

09:25:51  20   Nathan Dickson in Union Springs.  Sorry.

09:25:54  21             MR. TINDAL:  All right, no

          22   problem.

09:25:54  23        Q.    (By Mr. Tindal)  Okay.  Do you

## FREEDOM COURT REPORTING

Page 18

| | | |
|---|---|---|
| 09:25:54 | 1 | think it's possible that Joe McKnight sold |
| 09:25:58 | 2 | Progressive policies prior to 1998? |
| 09:25:59 | 3 | A.    I don't believe so. |
| 09:26:09 | 4 | Q.    Is it your understanding that |
| 09:26:12 | 5 | Progressive has agents and producers that |
| 09:26:15 | 6 | it uses, or are they all considered -- are |
| 09:26:18 | 7 | they all one classification all over the |
| 09:26:21 | 8 | country? |
| 09:26:23 | 9 | A.    They're all one |
| 09:26:24 | 10 | classification. |
| 09:26:24 | 11 | Q.    Do they all have binding |
| 09:26:27 | 12 | authority? |
| 09:26:30 | 13 | A.    Yes, as long as they follow |
| 09:26:32 | 14 | our rules. |
| 09:26:33 | 15 | Q.    Explain what you mean by that. |
| 09:26:36 | 16 | A.    There's rules, obviously, if |
| 09:26:39 | 17 | it's an acceptable risk or an unacceptable |
| 09:26:42 | 18 | risk that they need to abide by in order |
| 09:26:45 | 19 | to bind the coverage. |
| 09:26:47 | 20 | Q.    So, as long as it is an |
| 09:26:48 | 21 | acceptable risk that complies with all of |
| 09:26:53 | 22 | the rules, an agent can bind an applicant |
| 09:26:57 | 23 | for insurance; is that correct? |

# FREEDOM COURT REPORTING

|          |    |                                              |
|----------|----|----------------------------------------------|
| 09:26:59 | 1  | A.      Yes.                                  |
|          | 2  | (Defendant's Exhibit No. 2                   |
|          | 3  | marked for identification.)                  |
| 09:27:08 | 4  | Q.    (By Mr. Tindal)  What I'll             |
| 09:27:08 | 5  | mark as Defendant's Exhibit 2 is a copy of   |
| 09:27:10 | 6  | the insurance application for March of       |
| 09:27:13 | 7  | 2003?                                        |
| 09:27:13 | 8  | MR. HAYNES:  Mark, before we                 |
| 09:27:16 | 9  | go on to that, do we have an extra copy of   |
| 09:27:18 | 10 | that producer agreement that we can have     |
| 09:27:20 | 11 | attached to this deposition?                 |
| 09:27:21 | 12 | MR. BRADFORD:  You don't need                |
| 09:27:22 | 13 | this back, do you?                           |
| 09:27:23 | 14 | THE WITNESS:  No.                            |
| 09:27:23 | 15 | MR. BRADFORD:  Okay, we'll do                |
| 09:27:26 | 16 | that.  It's got also the subsequent agent.   |
| 09:27:27 | 17 | I think that agreement is in there, and I    |
| 09:27:29 | 18 | dismissed them out because I think it was    |
| 09:27:32 | 19 | an asset purchase deal.  That may be in      |
| 09:27:34 | 20 | there as well.                               |
| 09:27:36 | 21 | MR. TINDAL:  Okay.  I'll go                  |
| 09:27:36 | 22 | ahead and mark it.                           |
| 09:27:36 | 23 | MR. BRADFORD:  And that does                 |

# FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 09:27:37 | 1 | have in there, and I don't mean to |
| 09:27:39 | 2 | interrupt you, but the rules like you |
| 09:27:42 | 3 | can't backdate a policy and those type |
| 09:27:44 | 4 | rules, but nothing that really applies to |
| 09:27:52 | 5 | this. |
| 09:27:53 | 6 | You can pull out your tab. |
| 09:28:09 | 7 | Q.    (By Mr. Tindal)  I'm going to |
| 09:28:10 | 8 | show you, Ms. Fitzgerald, what I've marked |
| 09:28:12 | 9 | as Defendant's Exhibit 2 and ask you if |
| 09:28:14 | 10 | you recognize that document? |
| 09:28:15 | 11 | A.    Yes. |
| 09:28:16 | 12 | Q.    What is that document? |
| 09:28:17 | 13 | A.    This is an application for |
| 09:28:20 | 14 | insurance. |
| 09:28:20 | 15 | Q.    And for the people that are |
| 09:28:22 | 16 | attending by phone, could you tell us what |
| 09:28:24 | 17 | the numbers are on the bottom right? |
| 09:28:28 | 18 | A.    McKnight 0095, McKnight 0094, |
| 09:28:36 | 19 | McKnight 0096, McKnight 0097, McKnight |
| 09:28:42 | 20 | 0098, McKnight 0099, and McKnight 0100. |
| 09:28:49 | 21 | Q.    Thank you. |
| 09:28:49 | 22 | And just for everyone that's |
| 09:28:52 | 23 | not able to see what we've done, our Bate |

# FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 09:28:55 | 1 | stamping had Page 1 behind Page 2, so I've |
| 09:28:58 | 2 | just moved that.  Other than that, they're |
| 09:29:00 | 3 | all in order. |
| 09:29:03 | 4 | Now, looking up here on the |
| 09:29:05 | 5 | top left of the document it says, "RR: |
| 09:29:09 | 6 | 02/03."  Do you have a copy? |
| 09:29:12 | 7 | MR. BRADFORD:  Yes, we do. |
| 09:29:15 | 8 | A.    Yes. |
| 09:29:15 | 9 | Q.    What does that mean? |
| 09:29:18 | 10 | A.    I'm sorry, was the zero, |
| 09:29:20 | 11 | three, one -- |
| 09:29:20 | 12 | Q.    The RR: 02/03. |
| 09:29:24 | 13 | A.    It's a rate revision which has |
| 09:29:27 | 14 | a date of February of '03. |
| 09:29:32 | 15 | Q.    All right.  Is it possible for |
| 09:29:33 | 16 | you to tell what version software this was |
| 09:29:39 | 17 | prepared on of the ProRater software? |
| 09:29:57 | 18 | A.    I don't believe we have a |
| 09:29:58 | 19 | version that's marked on here. |
| 09:30:11 | 20 | Q.    Okay.  Has Progressive used |
| 09:30:14 | 21 | the same software version of the ProRater |
| 09:30:16 | 22 | software for the past five years?  Has it |
| 09:30:19 | 23 | changed at all, is what I'm asking? |

# FREEDOM COURT REPORTING

Page 22

| | |
|---|---|
| 09:30:26 | 1 |
| 09:30:28 | 2 |
| 09:30:29 | 3 |
| 09:30:30 | 4 |
| 09:30:32 | 5 |
| 09:30:33 | 6 |
| 09:30:35 | 7 |
| 09:30:37 | 8 |
| 09:30:39 | 9 |
| 09:30:39 | 10 |
| 09:30:41 | 11 |
| 09:30:43 | 12 |
| 09:30:45 | 13 |
| 09:30:45 | 14 |
| 09:30:47 | 15 |
| 09:30:49 | 16 |
| 09:30:51 | 17 |
| 09:30:55 | 18 |
| 09:30:57 | 19 |
| 09:30:58 | 20 |
| 09:30:59 | 21 |
| 09:31:03 | 22 |
| 09:31:05 | 23 |

A.    Has there been a rate revision since 02 of '03; is that what you're asking?

Q.    I guess what I'm asking is it's my understanding the way the applications are filled out for the Progressive policies is it's done through computer software; is that right?

A.    Correct.

Q.    Is there's an online hookup between the agent and Progressive's home office; is that right?

A.    Correct.

Q.    It's my understanding that there's software that the agents have to download onto their computer or upload onto their computer to be able to pull up on-screen applications; is that right?

A.    Correct.

Q.    Has that software changed at all since March of 2003?

A.    I don't know if there's been a rate revision since then.

# FREEDOM COURT REPORTING

Page 23

| | | |
|---|---|---|
| 09:31:06 | 1 | Q.    Okay.  So, when you say a rate |
| 09:31:07 | 2 | revision, that's what I'm talking about a |
| 09:31:09 | 3 | software change? |
| 09:31:10 | 4 | A.    Yes. |
| 09:31:11 | 5 | Q.    Okay.  If there has been a |
| 09:31:12 | 6 | rate revision, who would know that? |
| 09:31:16 | 7 | A.    It's easy to find out.  I just |
| 09:31:18 | 8 | didn't look at it before I came here. |
| 09:31:20 | 9 | Q.    That's fine. |
| 09:31:24 | 10 | If there has been a change in |
| 09:31:26 | 11 | the rate revision or the software since |
| 09:31:29 | 12 | March of 2003, would Progressive still |
| 09:31:33 | 13 | have the old rate revision? |
| 09:31:41 | 14 | A.    I would say yes. |
| 09:31:42 | 15 | Q.    They wouldn't throw away their |
| 09:31:44 | 16 | old software, is what I'm asking? |
| 09:31:46 | 17 | A.    No.  Hopefully it's on a disc, |
| 09:31:47 | 18 | yes. |
| 09:31:50 | 19 | Q.    Okay.  What is your |
| 09:31:50 | 20 | understanding of how the underwriting is |
| 09:31:54 | 21 | done for an application that's done with |
| 09:31:56 | 22 | this rate revision? |
| 09:32:02 | 23 | A.    By who? |

# FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 09:32:04 | 1 | Q.    Let's say you're an agent and |
| 09:32:07 | 2 | you are filling out an application for me |
| 09:32:09 | 3 | and you fill out all the information and |
| 09:32:11 | 4 | you hit the upload button.  Explain how |
| 09:32:16 | 5 | underwriting is done. |
| 09:32:17 | 6 | A.    After -- by who again, I would |
| 09:32:20 | 7 | ask? |
| 09:32:20 | 8 | MR. BRADFORD:  You're talking |
| 09:32:21 | 9 | about by Progressive? |
| 09:32:22 | 10 | Q.    By Progressive. |
| | 11 | A.    By Progressive? |
| 09:32:23 | 12 | Q.    Yes. |
| 09:32:24 | 13 | A.    Oh, Progressive would then |
| 09:32:26 | 14 | look at the information that was sent in |
| 09:32:28 | 15 | in the sense if it's an acceptable risk. |
| 09:32:31 | 16 | Q.    And that's done by the |
| 09:32:32 | 17 | software; is that right? |
| 09:32:33 | 18 | A.    The software automatically |
| 09:32:34 | 19 | goes through, and it'll tell us -- it |
| 09:32:37 | 20 | would actually tell the agent if it was |
| 09:32:39 | 21 | not acceptable, or if in some cases maybe |
| 09:32:44 | 22 | a driver has too many points that it's not |
| 09:32:47 | 23 | acceptable with the type of vehicle or the |

# FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 09:32:49 | 1 | limits that they would want. |
| 09:32:51 | 2 | Q.    Okay. |
| 09:32:51 | 3 | A.    But when it comes into |
| 09:32:56 | 4 | Progressive, then, it checks the drivers, |
| 09:33:04 | 5 | and that's pretty much, I mean, the basic |
| 09:33:06 | 6 | thing there.  It's the information that |
| 09:33:08 | 7 | comes from the agent that we're using. |
| 09:33:10 | 8 | Q.    Right. |
| 09:33:11 | 9 | Whatever information is input, |
| 09:33:14 | 10 | the software looks at it to determine if |
| 09:33:16 | 11 | it's an acceptable risk; is that right? |
| 09:33:20 | 12 | There's not a human being that does |
| 09:33:22 | 13 | anything up here in Cleveland as far as |
| 09:33:25 | 14 | underwriting?  It's all done by the |
| 09:33:27 | 15 | software, is what I'm asking? |
| 09:33:28 | 16 | A.    By the software, their raters, |
| 09:33:31 | 17 | their people. |
| 09:33:31 | 18 | Q.    If you look at what I've |
| 09:33:33 | 19 | marked as Exhibit 2 that I've got an extra |
| 09:33:35 | 20 | copy of, can you tell how many points this |
| 09:33:39 | 21 | applicant has at that time? |
| 09:33:40 | 22 | A.    Yes. |
| 09:33:42 | 23 | Q.    How many points? |

# FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 09:33:43 | 1 | A.    Five. |
| 09:33:43 | 2 | Q.    And you're looking at McKnight |
| 09:33:46 | 3 | 0094; is that correct? |
| 09:33:49 | 4 | MR. BRADFORD:  The Bate stamp |
| 09:33:50 | 5 | number. |
| 09:33:50 | 6 | A.    Oh, I don't know.  004, yes. |
| 09:33:54 | 7 | Q.    0094? |
| 09:33:56 | 8 | A.    0094, yes. |
| 09:33:58 | 9 | Q.    And that's Ricky Lane's |
| 09:34:00 | 10 | application, correct? |
| 09:34:10 | 11 | A.    I'm not sure where you put the |
| 09:34:12 | 12 | front page.  It should be right on here. |
| 09:34:27 | 13 | Oh, here it is.  Ricky Lane. |
| 09:34:34 | 14 | Q.    Okay.  And looking at the |
| 09:34:35 | 15 | second page of the application where it |
| 09:34:37 | 16 | says point development? |
| 09:34:39 | 17 | A.    Yes. |
| 09:34:39 | 18 | Q.    And then it says 35 months, |
| 09:34:42 | 19 | the last 35 months.  Could you explain |
| 09:34:43 | 20 | what that means, please? |
| 09:34:45 | 21 | A.    That's actually where we go in |
| 09:34:47 | 22 | and look at the points that somebody has |
| 09:34:49 | 23 | on their driver's license for the last 35 |

# FREEDOM COURT REPORTING

09:34:52  1  months.

09:34:52  2      Q.    Now, you also -- Progressive's

09:34:54  3  software also looks at credit rating; is

09:34:57  4  that correct?

09:34:58  5      A.    Correct.

09:34:58  6      Q.    And that's whatever the credit

09:35:01  7  rating was at that particular point in

09:35:02  8  time, correct?

09:35:03  9      A.    Correct.

09:35:07  10     Q.    Do you know what Progressive's

09:35:10  11  requirements are -- is there a minimum or

09:35:13  12  a maximum number of points an applicant

09:35:15  13  can have before they would qualify for a

09:35:17  14  policy with $1 million limits?

09:35:21  15     A.    Can you ask that one more

09:35:23  16  time?

09:35:23  17     Q.    Certainly.

09:35:24  18         Joe McKnight testified that if

09:35:26  19  an applicant has, he thought, over six

09:35:30  20  points, according to Progressive's system,

09:35:33  21  he or she would not qualify for a policy

09:35:36  22  with $1 million limits, they could only

09:35:38  23  purchase a policy with $500,000 limits.

# FREEDOM COURT REPORTING

Page 28

```
09:35:42   1   Is that correct?
09:35:42   2        A.    Yes.
09:35:43   3        Q.    Has that been the case since
09:35:47   4   March of 2003 up until the present?
09:35:49   5        A.    Yes.
09:35:56   6        Q.    And I don't have an extra
09:35:57   7   copy, so what I'm going to show you is
09:36:00   8   what was marked as Exhibit 1 to Ricky
09:36:02   9   Lane's deposition.
09:36:13  10             MR. BRADFORD:  I've got a copy
09:36:14  11   in front of me.
09:36:21  12        Q.    If you look at the top right,
09:36:22  13   there's a No. 10 that's circled.  Do you
09:36:24  14   see that?
09:36:26  15        A.    Yes.
09:36:29  16        Q.    And they go all the way to the
09:36:31  17   one that has the No. 26 circled, just so
09:36:34  18   you know what I'm referring to.  Just look
09:36:36  19   through these and let me know if you
09:36:38  20   recognize these documents.
09:36:50  21        A.    I don't know what No. 12 is.
09:36:53  22        Q.    And you're referring to what
09:36:55  23   says an invoice from the McKnight Agency;
```

# FREEDOM COURT REPORTING

Page 29

| | | |
|---|---|---|
| 09:36:59 | 1 | is that correct? |
| 09:36:59 | 2 | A.    Yes.  And 22 is something I've |
| 09:37:28 | 3 | not really seen, nor 23. |
| 09:37:39 | 4 | Q.    22 and 23 are what look like |
| 09:37:42 | 5 | fax cover sheets? |
| 09:37:43 | 6 | A.    Yes. |
| 09:37:52 | 7 | And 25, the message |
| 09:37:54 | 8 | confirmation, that's not something from |
| 09:37:56 | 9 | our company. |
| 09:38:05 | 10 | Q.    All right.  Having reviewed |
| 09:38:06 | 11 | those documents, is it your understanding |
| 09:38:07 | 12 | that Progressive issued an insurance |
| 09:38:10 | 13 | policy to Ricky Lane in the year 2000? |
| 09:38:29 | 14 | A.    Yes. |
| 09:38:29 | 15 | Q.    And is it your understanding |
| 09:38:31 | 16 | that the limits for that policy were $1 |
| 09:38:33 | 17 | million? |
| 09:38:36 | 18 | A.    Yes. |
| 09:38:47 | 19 | Q.    And looking at the one that |
| 09:38:48 | 20 | has the No. 19 circled at the top right? |
| 09:38:56 | 21 | A.    Yes, okay. |
| 09:38:59 | 22 | Q.    The $1 million policy covered |
| 09:39:03 | 23 | a 1990 International tractor; is that |

## FREEDOM COURT REPORTING

|          |    |                                           |
|----------|----|-------------------------------------------|
| 09:39:05 | 1  | correct?                                  |
| 09:39:08 | 2  | A.    Yes.                                |
| 09:39:20 | 3  | Q.    Thank you.                          |
|          | 4  | (Defendant's Exhibit No. 3                |
|          | 5  | marked for identification.)               |
| 09:39:35 | 6  | MR. TINDAL:  I need to mark               |
| 09:39:37 | 7  | the contract.                             |
| 09:39:37 | 8  | MR. BRADFORD:  Here it is.                |
| 09:39:40 | 9  | This has got some other agency documents, |
| 09:39:42 | 10 | but I don't think it's any problem if we  |
| 09:39:44 | 11 | just mark it the entire defendant's       |
| 09:40:42 | 12 | exhibit.  What do you need?               |
| 09:40:44 | 13 | MR. TINDAL:  I'm just seeing              |
| 09:40:45 | 14 | the style.  Four and then Fitzgerald.     |
| 09:40:48 | 15 | MR. BRADFORD:  Yeah,                      |
| 09:40:50 | 16 | Fitzgerald.                               |
| 09:41:04 | 17 | MR. TINDAL:  This doesn't have            |
| 09:41:05 | 18 | to be on the record.                      |
|          | 19 | (Whereupon, an off-the-record             |
|          | 20 | discussion was held, at which time the    |
|          | 21 | following proceedings were had and done:) |
|          | 22 | (Defendant's Exhibit No. 4                |
|          | 23 | marked for identification.)               |

# FREEDOM COURT REPORTING

Page 31

| | | |
|---|---|---|
| 09:41:08 | 1 | Q.    (By Mr. Tindal)  Ms. |
| 09:41:09 | 2 | Fitzgerald, I've marked a two-page |
| 09:41:11 | 3 | document there Exhibit No. 4.  I'm going |
| 09:41:13 | 4 | to ask you to see if you can tell us if |
| 09:41:15 | 5 | you recognize that document? |
| 09:41:16 | 6 | A.    Yes. |
| 09:41:16 | 7 | Q.    What is that, please? |
| 09:41:18 | 8 | A.    It's a declarations page. |
| 09:41:22 | 9 | Q.    For who? |
| 09:41:23 | 10 | A.    For Ricky Lane. |
| 09:41:24 | 11 | Q.    For what year? |
| 09:41:30 | 12 | A.    It's showing a period of March |
| 09:41:33 | 13 | 10, 2004, to March 10, 2005. |
| 09:41:38 | 14 | Q.    And that is for the |
| 09:41:40 | 15 | Progressive policy that was issued to him; |
| 09:41:42 | 16 | is that right? |
| 09:41:42 | 17 | A.    Yes. |
| 09:41:42 | 18 | Q.    And what are the limits on |
| 09:41:45 | 19 | that policy? |
| 09:41:49 | 20 | A.    One million combined single |
| 09:41:53 | 21 | limit. |
| 09:41:54 | 22 | MR. BRADFORD:  This is an |
| 09:41:55 | 23 | endorsement, though. |

## FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 09:41:57 | 1 | THE WITNESS:  Right.  It's a |
| 09:41:58 | 2 | dec -- |
| 09:41:59 | 3 | MR. BRADFORD:  Yeah, but it's |
| 09:42:00 | 4 | a dec page for October 16, '04. |
| 09:42:05 | 5 | MR. TINDAL:  Okay, I |
| 09:42:05 | 6 | understand.  You're right. |
| 09:42:09 | 7 | Q.    (By Mr. Tindal)  Is it your |
| 09:42:10 | 8 | understanding that sometime around October |
| 09:42:12 | 9 | of 2004 Ricky Lane had the limits for the |
| 09:42:16 | 10 | Progressive policy moved to $1 million? |
| 09:42:22 | 11 | A.    Yes. |
| 09:42:23 | 12 | Q.    Does that document reflect the |
| 09:42:25 | 13 | change? |
| 09:42:28 | 14 | A.    It reflects that he has one |
| 09:42:30 | 15 | million. |
| 09:42:31 | 16 | Q.    All right.  Does it tell you |
| 09:42:32 | 17 | how much the premiums are? |
| 09:42:33 | 18 | A.    Yes. |
| 09:42:33 | 19 | Q.    Does it tell you how much the |
| 09:42:38 | 20 | premiums are for the entire year or just |
| 09:42:40 | 21 | for a certain period of time? |
| 09:42:45 | 22 | A.    It will be effective from when |
| 09:42:46 | 23 | the endorsement was done. |

# FREEDOM COURT REPORTING

| | |
|---|---|
| 09:42:48  1 | Q. So -- |
| 09:42:49  2 | A. It's prorated. |
| 09:42:49  3 | Q. Okay. That's -- from October |
| 09:42:52  4 | 14 until the end of the policy year? |
| 09:42:54  5 | A. October 16th till March 10th, |
| 09:42:59  6 | 2005. |
| 09:42:59  7 | Q. Based on that document, you |
| 09:43:01  8 | can determine how much the premiums were |
| 09:43:05  9 | for that period of time, correct? |
| 09:43:07  10 | A. Yes. |
| 09:43:07  11 | Q. Then you could also |
| 09:43:10  12 | extrapolate from that to figure out how |
| 09:43:11  13 | much the premiums were if you had gone all |
| 09:43:15  14 | the way back to March of 2004? |
| 09:43:19  15 | MR. BRADFORD: You mean |
| 09:43:20  16 | backdate the change? |
| 09:43:23  17 | MR. TINDAL: No, not backdate |
| 09:43:25  18 | the change. I'm saying -- |
| 09:43:25  19 | MR. BRADFORD: How much it |
| 09:43:27  20 | initially was at that policy period? |
| 09:43:29  21 | MR. TINDAL: Yeah. |
| 09:43:30  22 | MR. BRADFORD: We've got that. |
| 23 | MR. TINDAL: Oh, you do |

# FREEDOM COURT REPORTING

```
 1   have --

 2          MR. BRADFORD:  I mean, we've

 3   got the dec page for 3-10-04 to 3-10-05

 4   when it's 300,000.

 5          Q.    (By Mr. Tindal)  I'm asking --

 6   Okay.  What I'm asking is from that

 7   document that you're looking at, Exhibit

 8   4, --

 9          A.    Yes.

10          Q.    -- that shows a prorated

11   amount of premiums for a million-dollar

12   policy from October 16 to March 10 of

13   2005, could you do the math from that

14   document and look back in time and see how

15   much the premiums would have been had it

16   been a million dollars the entire time?

17          A.    I can't do the math by looking

18   at this.  There is a way to actually

19   figure it out, I mean, in our computers,

20   but not from this sheet.

21          Q.    Okay.  Thank you.

22          MR. HAYNES:  What was the

23   number for the producer agreement in the
```

## FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 09:44:37 | 1 | documents produced?  What exhibit number |
| 09:44:39 | 2 | did y'all make that? |
| 09:44:41 | 3 | MR. TINDAL:  Three, I believe. |
| 09:44:42 | 4 | MR. BRADFORD:  It is three. |
| 09:45:28 | 5 | Q.    (By Mr. Tindal)  When |
| 09:45:29 | 6 | Progressive sends documents to one of its |
| 09:45:32 | 7 | insureds, I'm assuming that the insured |
| 09:45:39 | 8 | copy goes to whatever address is put on |
| 09:45:41 | 9 | the application; is that correct? |
| 09:45:42 | 10 | A.    Whatever address is provided |
| 09:45:44 | 11 | to us, correct. |
| 09:45:46 | 12 | Q.    Who else would receive a copy |
| 09:45:48 | 13 | of any documents that were sent to the |
| 09:45:50 | 14 | insured? |
| 09:45:50 | 15 | A.    The agent. |
| 09:45:53 | 16 | MR. BRADFORD:  You're talking |
| 09:45:54 | 17 | about like a dec sheet or something like |
| 09:45:55 | 18 | this as opposed to just a bill? |
| 09:45:58 | 19 | Q.    Yeah, let's talk about a |
| 09:46:00 | 20 | declarations page and a policy.  Do those |
| 09:46:02 | 21 | two go together? |
| 09:46:03 | 22 | A.    A declarations page and a |
| 09:46:05 | 23 | policy? |

## FREEDOM COURT REPORTING

Page 36

| | | |
|---|---|---|
| 09:46:05 | 1 | Q. Would those be sent at the |
| 09:46:06 | 2 | same time? |
| 09:46:07 | 3 | A. For the new business, correct. |
| 09:46:08 | 4 | Q. All right. So, let's say in |
| 09:46:10 | 5 | March of 2003 when Ricky Lane got the |
| 09:46:16 | 6 | policy from the application that he |
| 09:46:18 | 7 | submitted at Joe McKnight's office, all |
| 09:46:20 | 8 | right, that's what I'm talking about right |
| 09:46:22 | 9 | now, okay? |
| 09:46:23 | 10 | A. Okay. |
| 09:46:23 | 11 | Q. After that was submitted and |
| 09:46:25 | 12 | approved, a policy and a declarations page |
| 09:46:28 | 13 | would have been sent; is that right? |
| 09:46:29 | 14 | A. Correct. |
| 09:46:29 | 15 | Q. And it would have gone to |
| 09:46:31 | 16 | Ricky Lane, correct? |
| 09:46:32 | 17 | A. Correct. |
| 09:46:32 | 18 | Q. And it would have also gone to |
| 09:46:34 | 19 | Joe McKnight, correct? |
| 09:46:35 | 20 | A. Joe McKnight would receive the |
| 09:46:37 | 21 | dec pages, but not the policy jacket. |
| 09:46:39 | 22 | Q. Okay. Does Progressive use |
| 09:46:42 | 23 | its own address as the return address on |

# FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 09:46:46 | 1 | envelopes that are sent to the insureds, |
| 09:46:50 | 2 | or does it use the agent's? |
| 09:46:53 | 3 | A.    Uses the agent's. |
| 09:46:53 | 4 | Q.    Okay.  Why is that done? |
| 09:46:54 | 5 | A.    Because the agent is the one |
| 09:46:56 | 6 | who should actually know where their |
| 09:46:58 | 7 | insured is at and to make sure that |
| 09:47:04 | 8 | they're getting the correct information so |
| 09:47:06 | 9 | they could forward it on to them. |
| 09:47:09 | 10 | Q.    Is there any other reason that |
| 09:47:13 | 11 | Progressive would send it such as handling |
| 09:47:16 | 12 | improper addresses, something like that? |
| 09:47:18 | 13 | Does that make sense?  If there's an |
| 09:47:20 | 14 | incorrect -- is one of the reasons that |
| 09:47:22 | 15 | Progressive puts the agent's address on |
| 09:47:24 | 16 | the return address is so if the insured's |
| 09:47:27 | 17 | address is put down incorrectly it will go |
| 09:47:30 | 18 | to the agent? |
| 09:47:32 | 19 | A.    Correct, so that they would |
| 09:47:32 | 20 | get the information to their insureds. |
| 09:47:35 | 21 | Q.    They would be in a better |
| 09:47:36 | 22 | position to find the insured than |
| 09:47:38 | 23 | Progressive would if it was sent to the |

## FREEDOM COURT REPORTING

Page 38

| | | |
|---|---|---|
| 09:47:40 | 1 | wrong address, correct? |
| 09:47:41 | 2 | A. Correct. |
| | 3 | (Defendant's Exhibit No. 5 |
| | 4 | marked for identification.) |
| 09:47:47 | 5 | Q. (By Mr. Tindal) And I'll mark |
| 09:47:48 | 6 | as Exhibit 5 a document that's McKnight |
| 09:47:52 | 7 | 0077, which I'll tell you is the March 10, |
| 09:47:55 | 8 | 2003, declarations page and ask you if |
| 09:48:05 | 9 | recognize that? |
| 09:48:05 | 10 | A. Yes. |
| 09:48:06 | 11 | Q. And let me ask you if 0078 and |
| 09:48:12 | 12 | 0079 should go with that document? |
| 09:48:24 | 13 | MR. BRADFORD: Mark, I don't |
| 09:48:24 | 14 | have any quarrel with that. She did bring |
| 09:48:27 | 15 | certified copies of all of these that look |
| 09:48:31 | 16 | like maybe a little bit better than the |
| 09:48:31 | 17 | fax copies. |
| 09:48:34 | 18 | MR. TINDAL: Can we mark |
| 09:48:35 | 19 | those? |
| 09:48:36 | 20 | MR. BRADFORD: If you'd rather |
| 09:48:37 | 21 | mark those, you're certainly welcome to do |
| 09:48:38 | 22 | that. |
| 09:48:38 | 23 | THE WITNESS: Yes, yes. |

# FREEDOM COURT REPORTING

Page 39

1              (Defendant's Exhibit No. 6

2              marked for identification.)

09:48:50  3              MR. TINDAL:  Here's No. 6, and

09:48:52  4    we can mark it however you want to do it.

09:48:53  5    Do you want to put all of them as one?

09:48:55  6              MR. BRADFORD:  Well, that may

09:48:56  7    be just as easy.  Everything's certified.

09:49:00  8    I'm going to just put her whole file as

09:49:04  9    Exhibit 6.

10              MR. TINDAL:  That's great.

09:49:04  11             MR. BRADFORD:  And that way

09:49:05  12   you've got a certified app, a certified

09:49:08  13   dec page and a copy of the policy jacket.

09:49:11  14   Is that fair?

09:49:13  15             MR. TINDAL:  All right.  We're

09:49:15  16   going to put it in a -- keep it in this

09:49:17  17   folder?

09:49:20  18             MR. BRADFORD:  That's fine

09:49:20  19   with me.

09:49:36  20        Q.   (By Mr. Tindal)  All right.

09:49:36  21   Looking in your documents here, we've got

09:49:38  22   a declarations page that's dated August 6

09:49:42  23   of 2003; is that correct?

# FREEDOM COURT REPORTING

09:49:50   1          A.      Yes.

09:49:50   2          Q.      All right.  Is it your

09:49:51   3    understanding that the declarations page

09:49:55   4    was sent due to a change in the insured

09:49:59   5    vehicle?

09:50:07   6          A.      If this was the one that came

09:50:09   7    after this, yes.

09:50:10   8          MR. BRADFORD:  Mark, do you

09:50:11   9    care if I say one thing just to clear it

09:50:14   10   up?

09:50:14   11         MR. TINDAL:  Go right ahead.

09:50:15   12         MR. BRADFORD:  I think there's

09:50:16   13   three of them dated --

09:50:18   14         MR. TINDAL:  I'm aware of

09:50:19   15   that, yes.

           16         MR. BRADFORD:  Okay.

09:50:20   17         Q.      (By Mr. Tindal)  Then looking

09:50:21   18   on the second page, it has nothing listed

09:50:23   19   as the lienholder, correct?

09:50:25   20         A.      Correct.

09:50:25   21         Q.      It does have a premium finance

09:50:27   22   company listed, correct?

09:50:28   23         A.      Correct.

# FREEDOM COURT REPORTING

Page 41

| | |
|---|---|
| 09:50:30 | 1 |
| 09:50:32 | 2 |
| 09:50:35 | 3 |
| 09:50:35 | 4 |
| 09:50:36 | 5 |
| 09:50:39 | 6 |
| 09:50:41 | 7 |
| 09:50:44 | 8 |
| 09:50:45 | 9 |
| 09:50:47 | 10 |
| 09:50:48 | 11 |
| 09:50:51 | 12 |
| 09:50:53 | 13 |
| 09:50:54 | 14 |
| 09:50:57 | 15 |
| 09:50:58 | 16 |
| 09:51:00 | 17 |
| 09:51:04 | 18 |
| 09:51:06 | 19 |
| 09:51:08 | 20 |
| 09:51:10 | 21 |
| 09:51:12 | 22 |
| 09:51:14 | 23 |

        Q.     And then we have another one
that's also dated August 6 of 2003,
correct?
        A.     Correct.
        Q.     And are the front two pages
the same -- I mean, are the first pages of
each of these documents identical?
        A.     No, not identical.
        Q.     What's different?
        A.     Where it's telling you the
reason for the insurance endorsement.
        Q.     Which is -- how is the second
one different?
        A.     It tells you loss payee 01
added.
        Q.     All right.  So, we flip to the
second page of that document, and it has
-- what is different on the second page?
        A.     A loss payee, or on here it
reads lienholder, vehicle one added.
        Q.     And I'm sorry, could you read
the -- I know the document says what it
says, but could you read it?

## 367 VALLEY AVENUE
## (877) 373-3660   BIRMINGHAM, ALABAMA   (205) 397-2397

# FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 09:51:16 | 1 | A.     Riverside Turf, 11969 State |
| 09:51:20 | 2 | Highway 10 E., Shorterville, Alabama |
| 09:51:26 | 3 | 36373. |
| 09:51:28 | 4 | Q.     All right.  So, would the |
| 09:51:31 | 5 | lienholder, as of August 6, 2003, receive |
| 09:51:40 | 6 | any documents from Progressive? |
| 09:51:53 | 7 | A.     Yes. |
| 09:51:53 | 8 | Q.     What would they receive, say, |
| 09:51:56 | 9 | first of all in August of 2003? |
| 09:52:03 | 10 | A.     They'll receive a dec page. |
| 09:52:04 | 11 | Q.     And it would be sent to that |
| 09:52:06 | 12 | address that you just read to us? |
| 09:52:08 | 13 | A.     Yes. |
| 09:52:08 | 14 | Q.     And would the dec page be |
| 09:52:10 | 15 | identical to the first page of the |
| 09:52:11 | 16 | document you're looking at? |
| 09:52:13 | 17 | A.     I believe so. |
| 09:52:17 | 18 | Q.     Thank you.  I'll put these |
| 09:52:18 | 19 | back. |
| 09:52:29 | 20 | MR. BRADFORD:  Did you notice |
| 09:52:30 | 21 | those are really different dates, even |
| 09:52:32 | 22 | though they're all effective August 6? |
| 09:52:36 | 23 | MR. TINDAL:  How can you tell? |

# FREEDOM COURT REPORTING

09:52:37    1            MR. BRADFORD:  I didn't find

09:52:38    2    out until this morning, but I'll show you.

09:52:40    3    There's three of them, and they're like a

09:52:43    4    week apart, but if you look --

09:52:43    5            MR. TINDAL:  The third one I

09:52:45    6    have never seen.

09:52:46    7            MR. BRADFORD:  If you look,

09:52:47    8    it's got like 03223 on the second page

09:52:50    9    under date, and that means 2003.

            10            Is that the Julien (sp) date?

09:52:54   11            THE WITNESS:  That's the

09:52:55   12    Julien (sp) date.

09:52:56   13            MR. BRADFORD:  223rd day.

           14            MR. TINDAL:  It's the 23rd of

           15    August, and this one is the year?

09:52:59   16            MR. BRADFORD:  It's the 223rd

09:53:01   17    day of the year.

09:53:03   18            MR. TINDAL:  Oh.

09:53:04   19            MR. BRADFORD:  And, so, even

09:53:05   20    though they're all -- you've got three

09:53:06   21    endorsements effective August 6, they're

09:53:08   22    all -- each of the three are approximately

09:53:10   23    a week apart.

## FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 09:53:11 | 1 | MR. TINDAL:  The first two |
| 09:53:12 | 2 | digits are the year, the last three digits |
| 09:53:15 | 3 | are the day of the year? |
| | 4 | MR. BRADFORD:  Right. |
| 09:53:17 | 5 | THE WITNESS:  Correct. |
| 09:53:17 | 6 | Q.    (By Mr. Tindal)  And tell me |
| 09:53:18 | 7 | what the third August 2003 declarations |
| 09:53:23 | 8 | page is about. |
| 09:53:25 | 9 | A.    They changed the address of |
| 09:53:26 | 10 | the premium finance company. |
| 09:53:28 | 11 | Q.    All right.  Do they go in this |
| 09:53:38 | 12 | order? |
| 09:53:44 | 13 | A.    Yes. |
| 09:53:52 | 14 | Q.    All right.  The next document |
| 09:53:54 | 15 | we have is a March 2004 declarations page; |
| 09:53:58 | 16 | is that correct? |
| 09:54:07 | 17 | A.    This is the renewal policy. |
| 09:54:08 | 18 | Q.    Okay.  So, that would have |
| 09:54:10 | 19 | been done sometime around March 10 of |
| 09:54:12 | 20 | 2004, correct? |
| 09:54:14 | 21 | A.    Correct. |
| 09:54:15 | 22 | Q.    Who all would have received |
| 09:54:17 | 23 | this declarations page? |

# FREEDOM COURT REPORTING

Page 45

| | | |
|---|---|---|
| 09:54:22 | 1 | A.    The insured, being Ricky Lane; |
| 09:54:25 | 2 | the agent, McKnight Agency; the |
| 09:54:29 | 3 | lienholder, Riverside Turf; and the |
| 09:54:35 | 4 | outside premium finance company also |
| 09:54:37 | 5 | receives notification. |
| 09:54:47 | 6 | Q.    I show you the next one, and |
| 09:54:49 | 7 | tell me what this is that's in your file. |
| 09:54:57 | 8 | A.    This is an endorsement. |
| 09:55:00 | 9 | Q.    For what policy year? |
| 09:55:02 | 10 | A.    For Ricky Lane for March 10, |
| 09:55:07 | 11 | 2004, to March 10th, 2005. |
| 09:55:13 | 12 | Q.    And that would have been sent |
| 09:55:15 | 13 | along with -- or when would that have been |
| 09:55:18 | 14 | sent? |
| 09:55:24 | 15 | A.    October -- it's printed on |
| 09:55:26 | 16 | October 16th, so it's sent on October |
| 09:55:28 | 17 | 17th. |
| 09:55:30 | 18 | Q.    Why was that document sent, to |
| 09:55:32 | 19 | your knowledge? |
| 09:55:36 | 20 | A.    It says that the coverage has |
| 09:55:38 | 21 | changed. |
| 09:55:38 | 22 | Q.    All right.  How would it have |
| 09:55:39 | 23 | changed?  Is this when it was increased to |