# FREEDOM COURT REPORTING

1          IN THE UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF ALABAMA
2                  NORTHERN DIVISION
3    PROGRESSIVE SPECIALTY INSURANCE COMPANY,
4         Plaintiff,
5                          CIVIL ACTION NUMBER
     VS.
6                          2:05-CV-438-W
7    McKNIGHT AGENCY, INC.; JOE McKNIGHT; RICKY
     LANE; RIVERSIDE TURF FARM; et al.,
8
        Defendants.                 **COPY**
9
10          DEPOSITION OF LARRY LACKEY
11
           S T I P U L A T I O N S
12
13          IT IS STIPULATED AND AGREED,
14   by and between the parties through their
15   respective counsel, that the deposition
16   of:
17              LARRY LACKEY,
18   may be taken before Carol J. Reyer,
19   Commissioner, at The Courtyard Marriott,
20   4277 W. 150th Street, Cleveland, Ohio, on
21   the 21st day of November, 2005, commencing
22   at approximately 10:38 a.m.
23

## FREEDOM COURT REPORTING

1          IT IS FURTHER STIPULATED AND

2    AGREED that the signature to and reading

3    of the deposition by the witness is

4    waived, the deposition to have the same

5    force and effect as if full compliance had

6    been had with all laws and rules of Court

7    relating to the taking of depositions.

8

9          IT IS FURTHER STIPULATED AND

10   AGREED that it shall not be necessary for

11   any objections to be made by counsel to

12   any questions, except as to form or

13   leading questions, and that counsel for

14   the parties may make objections and assign

15   grounds at the time of the trial, or at

16   the time said deposition is offered in

17   evidence, or prior thereto.

18

19         IT IS FURTHER STIPULATED AND

20   AGREED that notice of the filing of the

21   transcript by the Court Reporter is hereby

22   waived.

23

# FREEDOM COURT REPORTING

```
 1              A P P E A R A N C E S
 2
       FOR PROGRESSIVE SPECIALTY INSURANCE
 3     COMPANY:
 4              R. LARRY BRADFORD
                Attorney-at-Law
 5              BRADFORD LAW FIRM
                2020 Canyon Road, Suite 100
 6              Birmingham, Alabama 35216
                (205) 871-7733
 7
 8     FOR THE DEFENDANTS:
 9              MARK E. TINDAL
                Attorney-at-Law
10              LLOYD, GRAY & WHITEHEAD
                2501 20th Place South, Suite 300
11              Birmingham, Alabama 35223
                (205) 967-8822
12
13              RANDALL S. HAYNES
                Attorney-at-Law
14              MORRIS, HAYNES & HORNSBY
                131 Main Street
15              Alexander City, Alabama 35011
                (256) 329-2000
16
17              T. RANDALL LYONS
                (via telephone)
18              Attorney-at-Law
                WEBSTER, HENRY & LYONS
19              418 Scott Street, Suite B
                Montgomery, Alabama 36101
20              (334) 264-9472
21
22
23
```

## FREEDOM COURT REPORTING

1    ALEX L. HOLTSFORD, JR.
     (via telephone)
2    Attorney-at-Law
     NIX, HOLTSFORD, GILLILAND, HIGGINS
3    & HIGGINS
     4001 Carmichael Road, Suite 300
4    Montgomery, Alabama 36103
     (334) 262-2006
5
6    NATHAN A. DICKSON, II
     (via telephone)
7    Attorney-at-Law
     JINKS, DANIEL & CROW
8    219 N. Prairie Street
     Union Springs, Alabama 36089
9    (334) 738-4225
10
     JEFFREY W. SMITH
11   (via telephone)
     Attorney-at-Law
12   SLATEN & O'CONNOR
     105 Tallapoosa Street
13   Montgomery, Alabama 36104
     (334) 396-8882
14
15   ALSO PRESENT:  LARRY LACKEY
16
17
18
19
20
21
22
23

# FREEDOM COURT REPORTING

1                          I N D E X

2    WITNESS:                                    PAGE

3         LARRY LACKEY

          Examination by Mr. Haynes              6

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

# FREEDOM COURT REPORTING

```
 1              I, Carol J. Reyer, a Court
 2    Reporter of Birmingham, Alabama, acting as
 3    Commissioner, certify that on this date,
 4    pursuant to the Federal Rules of Civil
 5    Procedure, and the foregoing stipulation
 6    of counsel, there came before me at The
 7    Courtyard Marriott, 4277 W. 150th Street,
 8    Cleveland, Ohio, on the 21st day of
 9    November, 2005, commencing at
10    approximately 10:38 a.m., LARRY LACKEY,
11    witness in the above cause, for oral
12    examination, whereupon the following
13    proceedings were had:
14                   LARRY LACKEY,
15    being first duly sworn, was examined and
16    testified as follows:
17              THE COURT REPORTER:  Usual
18    stipulations?
19              MR. BRADFORD:  That's fine.
20              MR. HAYNES:  Yes.
21    EXAMINATION BY MR. HAYNES:
22         Q.    State your name and
23    employment, occupation, please, sir.
```

10:38:05  19
10:38:06  20
10:38:11  22
10:38:12  23

**367 VALLEY AVENUE**
**(877) 373-3660    BIRMINGHAM, ALABAMA    (205) 397-2397**

## FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 10:38:13 | 1 | A.    Larry David Lackey.  I'm |
| 10:38:15 | 2 | employed as a claims attorney for |
| 10:38:17 | 3 | Progressive Insurance Company. |
| 10:38:17 | 4 | Q.    Located where, sir? |
| 10:38:18 | 5 | A.    Birmingham, Alabama. |
| 10:38:20 | 6 | Q.    What is your area of |
| 10:38:21 | 7 | responsibility? |
| 10:38:22 | 8 | A.    I'm a claims attorney.  I have |
| 10:38:26 | 9 | duties that include a training aspect, to |
| 10:38:30 | 10 | help train claims personnel in the State |
| 10:38:32 | 11 | of Alabama.  I personally own a body of |
| .0:38:38 | 12 | claims, generally claims that are attorney |
| 10:38:42 | 13 | represented, are involved in litigation |
| 10:38:44 | 14 | that exceed an exposure of quarter of a |
| 10:38:47 | 15 | million dollars.  I also handle cases in |
| 10:38:49 | 16 | conjunction with outside counsel that may |
| 10:38:52 | 17 | involve an extra-contractual exposure to |
| 10:38:55 | 18 | Progressive.  That's kind of a framework |
| 10:38:59 | 19 | of what I do.  I do other things, too. |
| 10:39:02 | 20 | Q.    Okay.  You say, "I own a body |
| 10:39:04 | 21 | of claims."  Does that mean you have |
| 10:39:05 | 22 | responsibility for a group of claims where |
| 10:39:08 | 23 | the exposure potentially is greater than |

10:39:10  1    the threshold of 250?

10:39:12  2         A.    Yes, sir.  I'm basically a

10:39:13  3    super adjustor.

10:39:16  4         Q.    Okay.

10:39:17  5         A.    But I don't have a cape.

10:39:18  6         Q.    All right.  Yes, sir, I

10:39:19  7    understand that.

10:39:20  8              Mr. Lackey, are you the person

10:39:22  9    who called Joe McKnight when this

10:39:28  10   situation arose about the discrepancy in

10:39:31  11   the amount of the liability limits and

0:39:34  12    asked Mr. McKnight to fax to you or to the

10:39:39  13   home office the application documents from

10:39:44  14   Ricky Lane?

10:39:45  15        A.    No, sir, I am not.

10:39:46  16        Q.    Do you know who did that?

10:39:47  17        A.    I think that was Richard

10:39:49  18   Mizell.

10:39:49  19        Q.    And where is Richard Mizell

10:39:52  20   located?

10:39:52  21        A.    Richard Mizell is no longer

10:39:55  22   employed with Progressive.  At the time he

10:39:56  23   was working out of our Birmingham claims

## FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 10:39:59 | 1 | office. |
| 10:39:59 | 2 | Q.    Do you know where he works |
| 10:40:00 | 3 | now? |
| 10:40:01 | 4 | A.    I do not. |
| 10:40:02 | 5 | Q.    Do you know the circumstances |
| 10:40:03 | 6 | surrounding his separation from |
| 10:40:05 | 7 | Progressive? |
| 10:40:06 | 8 | A.    I know that Richard moved from |
| 10:40:10 | 9 | Birmingham to Florida with Progressive, |
| 10:40:12 | 10 | and he took a job within Progressive in |
| 10:40:15 | 11 | Florida.  And I understand that he moved |
| 0:40:19 | 12 | back to Alabama because he wanted to come |
| 10:40:21 | 13 | back here, and he took a job as a claims |
| 10:40:24 | 14 | manager with another company.  It was an |
| 10:40:30 | 15 | amicable separation. |
| 10:40:30 | 16 | Q.    Do you know the name of that |
| 10:40:32 | 17 | other company? |
| 10:40:32 | 18 | A.    I don't. |
| 10:40:33 | 19 | MR. BRADFORD:  He's a lawyer |
| 10:40:34 | 20 | as well. |
| 10:40:34 | 21 | Q.    Did Mr. Mizell answer to you? |
| 10:40:36 | 22 | A.    He did at one time.  During |
| 10:40:38 | 23 | the pendency of this matter, I don't |

## FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 10:40:39 | 1 | believe that he did, no. |
| 10:40:40 | 2 | Q.    Yeah, I would be interested in |
| 10:40:42 | 3 | the period from July the 6th, 2004, |
| 10:40:45 | 4 | through the end of that month. |
| 10:40:46 | 5 | A.    I am the worst person on the |
| 10:40:48 | 6 | planet with dates, but I believe the |
| 10:40:50 | 7 | answer to that is no, he did not report to |
| 10:40:53 | 8 | me. |
| 10:40:58 | 9 | Q.    Did you ever talk to Joe |
| 10:40:59 | 10 | McKnight about what happened? |
| 10:41:00 | 11 | A.    No, sir. |
| 0:41:01 | 12 | Q.    Have you ever up to this date? |
| 10:41:02 | 13 | A.    No. |
| 10:41:03 | 14 | Q.    Or Ricky Lane? |
| 10:41:04 | 15 | A.    No. |
| 10:41:05 | 16 | Q.    Did Mr. Mizell get any kind of |
| 10:41:08 | 17 | explanation or account, if you know, from |
| 10:41:12 | 18 | Joe McKnight as to what happened? |
| 10:41:13 | 19 | A.    Yes. |
| 10:41:14 | 20 | Q.    Did he get a written statement |
| 10:41:16 | 21 | or just talked to him and made notes? |
| 10:41:19 | 22 | A.    He just talked to him. |
| 10:41:21 | 23 | Q.    And what was gleaned -- what |

# FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 10:41:25 | 1 | did you glean from that conversation?  Do |
| 10:41:32 | 2 | you have any notes there in your coverage |
| 10:41:34 | 3 | file? |
| 10:41:35 | 4 | A.    Yes, sir. |
| 10:41:37 | 5 | MR. BRADFORD:  What I'm going |
| 10:41:38 | 6 | to do is let him refer to that but not |
| 10:41:40 | 7 | mark it because this is an ongoing claim |
| 10:41:43 | 8 | and it's got the underlying claim |
| 10:41:45 | 9 | information as well, but he can tell you |
| 10:41:46 | 10 | about those conversations to sort of |
| 10:41:50 | 11 | cherry pick out of this. |
| 10:41:51 | 12 | MR. HAYNES:  Well, that's fine |
| 10:41:52 | 13 | for today so we can move on, but I'd like |
| 10:41:54 | 14 | to ask you to go through that and to |
| 10:41:56 | 15 | separate it.  And it may be a good bit |
| 10:42:03 | 16 | entailed in doing that, but if you can |
| 10:42:04 | 17 | redact all that.  And it may take you a |
| 10:42:06 | 18 | while there, but I'd like to get whatever |
| 10:42:09 | 19 | portions we can -- |
| 10:42:09 | 20 | MR. BRADFORD:  Is that doable? |
| 10:42:11 | 21 | THE WITNESS:  Yes, it is. |
| 10:42:12 | 22 | MR. HAYNES:  -- that pertain |
| 10:42:13 | 23 | to the coverage.  But having said that -- |

# FREEDOM COURT REPORTING

|  |  |  |
|---|---|---|
| 10:42:15 | 1 | MR. BRADFORD:  We can do it. |
|  | 2 | MR. HAYNES:  Okay. |
| 10:42:17 | 3 | THE WITNESS:  In his |
| 10:42:17 | 4 | conversation with Richard, he basically |
| 10:42:19 | 5 | told him that -- |
| 10:42:21 | 6 | Q.    (By Mr. Haynes)  Joe McKnight |
| 10:42:22 | 7 | being "him"? |
| 10:42:23 | 8 | A.    Yes, sir.  Joe McKnight told |
| 10:42:25 | 9 | Richard Mizell that the policy should be a |
| 10:42:28 | 10 | million-dollar policy, that he had no |
| 10:42:29 | 11 | explanation for why it showed as $300,000 |
| .0:42:33 | 12 | other than he possibly input the wrong |
| 10:42:35 | 13 | information when he took the application. |
| 10:42:37 | 14 | Q.    What was the date that |
| 10:42:40 | 15 | Mr. McKnight said that? |
| 10:42:41 | 16 | A.    7-14 of '04. |
| 10:42:46 | 17 | Q.    Okay.  The bottom line was he |
| 10:42:47 | 18 | said he had no explanation why it wasn't a |
| 10:42:50 | 19 | million dollars except possibly his error |
| 10:42:52 | 20 | in inputting the information.  Does that |
| 10:42:56 | 21 | summarize it? |
| 10:42:56 | 22 | A.    That's what our file reflects |
| 10:42:58 | 23 | that he told Richard. |

## FREEDOM COURT REPORTING

Page 13

| | | |
|---|---|---|
| 10:42:59 | 1 | Q.    And any other information that |
| 10:43:06 | 2 | you gleaned from that document? |
| 10:43:07 | 3 | A.    About that issue? |
| 10:43:08 | 4 | Q.    Yes, sir, about that issue. |
| 10:43:10 | 5 | A.    No, sir. |
| 10:43:15 | 6 | Q.    Was any consideration given, |
| 10:43:18 | 7 | Mr. Lackey, to affording $1 million of |
| 10:43:21 | 8 | coverage to Mr. Lane in view of the fact |
| 10:43:25 | 9 | that he is facing this wrongful death |
| 10:43:27 | 10 | claim in the state court of Pike -- in the |
| 10:43:30 | 11 | circuit court of Pike County? |
| 0:43:31 | 12 | A.    Yes. |
| 10:43:32 | 13 | Q.    Under the circumstances |
| 10:43:34 | 14 | indicating liability on his part? |
| 10:43:35 | 15 | A.    Yes, and that's the main |
| 10:43:36 | 16 | reason why we filed this declaratory |
| 10:43:39 | 17 | judgment action, is to determine whether |
| 10:43:40 | 18 | or not Progressive owes a million or if |
| 10:43:43 | 19 | Progressive owes $300,000; and whether or |
| 10:43:44 | 20 | not if Progressive does owe a million |
| 10:43:47 | 21 | dollars in coverage, if we are due to be |
| 10:43:50 | 22 | indemnified by the agent for the |
| 10:43:52 | 23 | additional 700,000. |

**367 VALLEY AVENUE**
**(877) 373-3660   BIRMINGHAM, ALABAMA   (205) 397-2397**

## FREEDOM COURT REPORTING

Page 14

```
10:43:54   1        Q.     Whose decision was it to file
10:43:56   2   the declaratory judgment as opposed to
10:44:01   3   going ahead and affording the coverage?
10:44:01   4        A.     There were many people
10:44:01   5   involved in that decision.  Britt
10:44:05   6   McClellan is the head of claims for the
10:44:07   7   State of Alabama.
10:44:09   8        Q.     Where is he located?
10:44:11   9        A.     He is in Birmingham.  He also
10:44:13  10   works out of Huntsville.
10:44:18  11        Q.     Any others?
 0:44:19  12        A.     Jerry Iwler.
10:44:21  13        Q.     Title?
10:44:21  14        A.     Jerry Iwler is also a claims
10:44:23  15   attorney for our commercial auto division.
10:44:31  16        Q.     Where is he located?
10:44:33  17        A.     He's here in Cleveland, Ohio.
10:44:39  18               And it was referred to me for
10:44:41  19   review as well, and I'm actually the
10:44:42  20   person who referred it to Larry Bradford
10:44:45  21   for filing of declaratory judgment action.
10:44:50  22        Q.     Mr. Lackey, would Progressive
10:44:59  23   somehow release its right to indemnity if
```

## FREEDOM COURT REPORTING

Page 15

| | | |
|---|---|---|
| 10:45:03 | 1 | it afforded the million dollars' coverage |
| 10:45:04 | 2 | as opposed to filing a declaratory |
| 10:45:07 | 3 | judgment? |
| 10:45:07 | 4 | MR. BRADFORD: Object only to |
| 10:45:08 | 5 | the extent that that may be a legal |
| 10:45:10 | 6 | conclusion, but I'll let him answer. |
| 10:45:12 | 7 | A. It's my understanding that |
| 10:45:13 | 8 | that's possible. A claim could be made |
| 10:45:15 | 9 | that that would be a voluntary payment. |
| 10:45:30 | 10 | Q. Have there been any other |
| 10:45:32 | 11 | conversations with Joe McKnight by |
| 0:45:34 | 12 | Progressive that you know about aside from |
| 10:45:35 | 13 | the one you referred to on July 14, 2004, |
| 10:45:38 | 14 | about the issue of the amount of limits? |
| 10:45:41 | 15 | A. There may have been other |
| 10:45:43 | 16 | conversations with him. |
| 10:45:47 | 17 | Q. Well, I would ask that you go |
| 10:45:48 | 18 | through the notes, even though it may take |
| 10:45:51 | 19 | a couple of minutes, and see if there's |
| 10:45:53 | 20 | some others. |
| | 21 | A. Okay. |
| 10:46:06 | 22 | Q. While you're looking, |
| 10:46:08 | 23 | McClellan and Jerry Iwler, are they still |

# FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 10:46:10 | 1 | both employed by Progressive? |
| 10:46:12 | 2 | A.    Yes. |
| 10:47:24 | 3 | Richard Mizell called the |
| 10:47:27 | 4 | McKnight Agency on 7-12-04.  He did not |
| 10:47:29 | 5 | speak with Joe McKnight that day, but he |
| 10:47:35 | 6 | was attempting to reach him at that time, |
| 10:47:38 | 7 | and also to determine whether or not there |
| 10:47:39 | 8 | was any umbrella policy or excess |
| 10:47:42 | 9 | coverage. |
| 10:47:54 | 10 | Q.    Did that notation indicate |
| 10:47:55 | 11 | that he talked to any of Mr. McKnight's |
| 0:47:59 | 12 | staff, or just that he left a message? |
| 10:48:05 | 13 | A.    Virginia is the first name of |
| 10:48:07 | 14 | the person he talked with. |
| 10:48:13 | 15 | MR. TINDAL:  And that was July |
| 10:48:14 | 16 | 12? |
| 10:48:14 | 17 | THE WITNESS:  Yes. |
| 10:48:19 | 18 | MR. TINDAL:  And the first one |
| 10:48:20 | 19 | you talked about was July 14? |
| 10:48:23 | 20 | MR. HAYNES:  Correct. |
| 10:48:24 | 21 | THE WITNESS:  Yes.  Richard |
| 10:48:43 | 22 | received a faxed application from the |
| 10:48:45 | 23 | agent on 7-15. |

## FREEDOM COURT REPORTING

Page 17

10:48:47  1     Q.    (By Mr. Haynes)   That had been

10:48:47  2  requested in the 7-14 conversation,

10:48:49  3  correct?

10:48:50  4     A.    I'm sure it was.

10:49:01  5           Okay.  On 7-15, he also

10:49:03  6  received the certificate of insurance that

10:49:05  7  Joe McKnight provided for Riverside, but I

10:49:08  8  believe that that may have come from an

10:49:12  9  attorney representing one of the parties.

10:49:14  10  I'm not sure if that came from McKnight or

10:49:17  11  not.

10:49:17  12     Q.    Okay.

10:49:18  13     A.    There's no indication of where

10:49:19  14  it came from.  It just states that he

10:49:21  15  received it by fax.

10:49:22  16     Q.    Okay.  And why do you say or

10:49:24  17  how do you know it came from an attorney

10:49:25  18  as opposed to -- because there was no

10:49:28  19  litigation at that point.

10:49:30  20     A.    There's a prior note where

10:49:33  21  Richard called -- it just states called

10:49:39  22  attorney and receipt, advised she would

10:49:41  23  see about refaxing, and he's talking about

## FREEDOM COURT REPORTING

10:49:44  1   the certificate of coverage.

10:49:45  2       Q.   Well, do you know who that

10:49:46  3   lawyer or attorney is?  I don't believe

10:49:54  4   the underlying case was filed until late

10:49:58  5   September.  I could be in error, but I'm

10:50:00  6   fairly sure I'm right on that.

10:50:57  7       A.   Larry Morris.

10:50:58  8       Q.   Okay.  Larry Morris faxed the

10:51:01  9   certificate of coverage from Riverside?

10:51:04  10       A.   I don't know if that's where

10:51:06  11   Richard got it or if it came from the

0:51:08  12   agent, but I know that he's referencing an

10:51:15  13   attorney, and that's the only one that I

10:51:17  14   see at that point.

15       (Whereupon, an off-the-record

16   discussion was held, at which time the

17   following proceedings were had and done:)

10:51:37  18       Q.   (By Mr. Haynes)  Okay.  Did

10:51:38  19   you see -- go through and I'll let you --

10:51:40  20   Mr. Lackey, if you see any other

10:51:43  21   references to conversations between

10:51:45  22   Mr. Mizell and Mr. McKnight or their

10:51:48  23   staffs.

## FREEDOM COURT REPORTING

10:52:27  1         A.     I don't see any other

10:52:27  2  references to conversations with

10:52:29  3  Mr. McKnight, but, again, we'll provide

10:52:32  4  this to you.

10:52:32  5         Q.     Okay, I understand that.

10:52:33  6             Do you know if Progressive

10:52:36  7  consulted any outside attorneys about its

10:52:40  8  responsibilities in this particular

10:52:42  9  situation before you assigned the case to

10:52:45  10  Mr. Bradford for the filing of the

10:52:47  11  declaratory judgment?

10:52:48  12             MR. BRADFORD:  Go ahead and

10:52:49  13  answer that, but don't go into any

10:52:51  14  conversations with that outside counsel,

10:52:53  15  but you can tell him who it is.

10:52:55  16         A.     Yes, we did.

10:52:56  17         Q.     And did you get a report from

10:52:58  18  the lawyer?

10:52:59  19         A.     Yes.

10:52:59  20         Q.     And who was the lawyer?

10:53:01  21         A.     Mark Hart.

10:53:03  22         Q.     Okay.  What is the date of

10:53:05  23  that consultation with Mark Hart, or the

## FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 10:53:07 | 1 | date of his report, however you can -- |
| | 2 | MR. BRADFORD: Can I tell you? |
| | 3 | MR. HAYNES: Yeah. |
| 10:53:27 | 4 | MR. BRADFORD: September 30, |
| 10:53:29 | 5 | '04. |
| 10:53:32 | 6 | MR. HAYNES: Now, I can be |
| 10:53:33 | 7 | corrected, but I believe we would be |
| 10:53:34 | 8 | entitled to that, wouldn't we? |
| 10:53:37 | 9 | MR. BRADFORD: Only if we |
| 10:53:38 | 10 | raise advice of counsel as a defense. |
| 10:53:41 | 11 | Otherwise, it's attorney-client privilege. |
| 0:53:43 | 12 | MR. HAYNES: Are you raising |
| 10:53:45 | 13 | that? |
| 10:53:45 | 14 | MR. BRADFORD: No, we're not. |
| 10:53:47 | 15 | MR. HAYNES: I'm not saying I |
| 10:53:48 | 16 | agree with you. I honestly don't know. |
| 10:53:49 | 17 | MR. BRADFORD: I think I'm |
| 10:53:50 | 18 | right because we do it all the time like |
| 10:53:53 | 19 | this. |
| 10:53:53 | 20 | Q. (By Mr. Haynes) Okay. So, |
| 10:53:53 | 21 | Mr. Lackey, what happened, as I understand |
| 10:53:55 | 22 | it, is that Mr. Mizell was handling this |
| 10:53:59 | 23 | file for Progressive? |

## FREEDOM COURT REPORTING

| | | |
|---|---|---|
| 10:54:00 | 1 | A.    Yes. |
| 10:54:00 | 2 | Q.    And he apparently had at least |
| 10:54:03 | 3 | one conversation with Joe McKnight, and he |
| 10:54:07 | 4 | obtained some information apparently from |
| 10:54:12 | 5 | -- maybe even from my law partner, but |
| 10:54:13 | 6 | from various sources, and then at some |
| 10:54:15 | 7 | point he assigned it or requested an |
| 10:54:18 | 8 | opinion from an outside lawyer, being Mark |
| 10:54:20 | 9 | Hart; is that right? |
| 10:54:23 | 10 | A.    Yes. |
| 10:54:23 | 11 | Q.    And then ultimately |
| .0:54:26 | 12 | Progressive decided to go the declaratory |
| 10:54:29 | 13 | judgment route; is that right? |
| 10:54:30 | 14 | A.    Yes. |
| 10:54:30 | 15 | Q.    And is there -- has Joe |
| 10:54:35 | 16 | McKnight been put on notice that |
| 10:54:38 | 17 | Progressive intends to assert its rights |
| 10:54:40 | 18 | of indemnity with respect to this case and |
| 10:54:44 | 19 | this claim?  I mean, obviously I can read |
| 10:54:48 | 20 | what's in the declaratory judgment and |
| 10:54:50 | 21 | that's a claim there, but is there some |
| 10:54:53 | 22 | other notice to him by letter? |
| 10:54:55 | 23 | A.    If there has been any other |

### 367 VALLEY AVENUE
### (877) 373-3660   BIRMINGHAM, ALABAMA   (205) 397-2397

# FREEDOM COURT REPORTING

Page 22

10:54:57  1    notice to him, then that would have come

10:54:59  2    from our attorney.

10:55:02  3             Q.      Okay.

10:55:02  4             A.      It would not have been sent by

10:55:04  5    me.

10:55:27  6             MR. HAYNES:  All right.

10:55:27  7    That's all I have at this point.  Thank

10:55:29  8    you, sir.

10:55:30  9             MR. TINDAL:  No questions.

10:55:34  10            MR. HOLTSFORD:  No questions

10:55:34  11   from Alex Holtsford.

          12

          13            FURTHER DEPONENT SAITH NOT

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

## FREEDOM COURT REPORTING

1          C E R T I F I C A T E

2

3    STATE OF ALABAMA:

4    JEFFERSON COUNTY:

5

6        I hereby certify that the above and

7    foregoing deposition was taken down by me

8    in stenotype, and the questions and answers

9    thereto were reduced to typewriting under

10   my supervision, and that the foregoing

11   represents a true and correct transcript of

12   the deposition given by said witness upon

13   said hearing.

14       I further certify that I am neither of

15   counsel nor kin to the parties to the

16   action, nor am I in any way interested in

17   the result of said cause.

18

19

20

21                    *Carol J. Reyer*

22

23

**367 VALLEY AVENUE**
**(877) 373-3660   BIRMINGHAM, ALABAMA   (205) 397-2397**

# FREEDOM COURT REPORTING

Page 23

| A | | | | |
|---|---|---|---|---|
| **account** 10:17 | **arose** 8:10 | **called** 8:9 16:3 | 13:6 | **declaratory** |
| **acting** 6:2 | **aside** 15:12 | 17:21,21 | **consultation** | 13:16 14:2,21 |
| **action** 1:5 13:17 | **asked** 8:12 | **Canyon** 3:5 | 19:23 | 15:2 19:11 |
| 14:21 | **aspect** 7:9 | **cape** 8:5 | **consulted** 19:7 | 21:12,20 |
| **additional** | **assert** 21:17 | **Carmichael** 4:3 | **conversation** | **Defendants** 1:8 |
| 13:23 | **assign** 2:14 | **Carol** 1:18 6:1 | 11:1 12:4 17:2 | 3:8 |
| **adjustor** 8:3 | **assigned** 19:9 | **case** 18:4 19:9 | 21:3 | **defense** 20:10 |
| **advice** 20:10 | 21:7 | 21:18 | **conversations** | **DEPONENT** |
| **advised** 17:22 | **attempting** 16:6 | **cases** 7:15 | 11:10 15:11 | 22:13 |
| **afforded** 15:1 | **attorney** 7:2,8 | **cause** 6:11 | 15:16 18:21 | **deposition** 1:10 |
| **affording** 13:7 | 7:12 14:15 | **certificate** 17:6 | 19:2,14 | 1:15 2:3,4,16 |
| 14:3 | 17:9,17,22 | 18:1,9 | **correct** 16:20 | **depositions** 2:7 |
| **Agency** 1:7 | 18:3,13 22:2 | **certify** 6:3 | 17:3 | **determine** |
| 16:4 | **attorneys** 19:7 | **cherry** 11:11 | **corrected** 20:7 | 13:17 16:7 |
| **agent** 13:22 | **Attorney-at-...** | **circuit** 13:11 | **counsel** 1:15 | **DICKSON** 4:6 |
| 16:23 18:12 | 3:4,9,13,18 | **circumstances** | 2:11,13 6:6 | **discrepancy** |
| **agree** 20:16 | 4:2,7,11 | 9:5 13:13 | 7:16 19:14 | 8:10 |
| **AGREED** 1:13 | **attorney-client** | **City** 3:15 | 20:10 | **discussion** |
| 2:2,10,20 | 20:11 | **Civil** 1:5 6:4 | **County** 13:11 | 18:16 |
| **ahead** 14:3 | **auto** 14:15 | **claim** 11:7,8 | **couple** 15:19 | **DISTRICT** 1:1 |
| 19:12 | **a.m** 1:22 6:10 | 13:10 15:8 | **court** 1:2 6:21 | 1:1 |
| **al** 1:7 | | 21:19,21 | 6:1,17 13:10 | **division** 1:2 |
| **Alabama** 1:1 | B | **claims** 7:2,8,10 | 13:11 | 14:15 |
| 3:6,11,15,19 | **B** 3:19 | 7:12,12,21,22 | **Courtyard** 1:19 | **doable** 11:20 |
| 4:4,8,13 6:2 | **back** 9:12,13 | 8:23 9:13 14:6 | 6:7 | **document** 13:2 |
| 7:5,11 9:12 | **basically** 8:2 | 14:14 | **coverage** 11:2 | **documents** 8:13 |
| 14:7 | 12:4 | **Cleveland** 1:20 | 11:23 13:8,21 | **doing** 11:16 |
| **Alex** 4:1 22:11 | **believe** 10:1,6 | 6:8 14:17 | 14:3 15:1 16:9 | **dollars** 7:15 |
| **Alexander** 3:15 | 17:8 18:3 20:7 | **come** 9:12 17:8 | 18:1,9 | 12:19 13:21 |
| **amicable** 9:15 | **Birmingham** | 22:1 | **CROW** 4:7 | 15:1 |
| **amount** 8:11 | 3:6,11 6:2 7:5 | **commencing** | | **due** 13:21 |
| 15:14 | 8:23 9:9 14:9 | 1:21 6:9 | D | **duly** 6:15 |
| **answer** 9:21 | **bit** 11:15 | **commercial** | **D** 5:1 | **duties** 7:9 |
| 10:7 15:6 | **body** 7:11,20 | 14:15 | **DANIEL** 4:7 | |
| 19:13 | **bottom** 12:17 | **Commissioner** | **date** 6:3 10:12 | E |
| **apparently** | **Bradford** 3:4,5 | 1:19 6:3 | 12:14 19:22 | **E** 3:1,1,9 5:1 |
| 21:2,4 | 6:19 9:19 11:5 | **company** 1:3 | 20:1 | **effect** 2:5 |
| **application** | 11:20 12:1 | 3:3 7:3 9:14 | **dates** 10:6 | **employed** 7:2 |
| 8:13 12:13 | 14:20 15:4 | 9:17 | **David** 7:1 | 8:22 16:1 |
| 16:22 | 19:10,12 20:2 | **compliance** 2:5 | **day** 1:21 6:8 | **employment** |
| **approximately** | 20:4,9,14,17 | **conclusion** 15:6 | 16:5 | 6:23 |
| 1:22 6:10 | **Britt** 14:5 | **conjunction** | **death** 13:9 | **entailed** 11:16 |
| **area** 7:6 | | 7:16 | **decided** 21:12 | **entitled** 20:8 |
| | C | **consideration** | **decision** 14:1,5 | **error** 12:19 |
| | **C** 3:1 | | | |

## 367 VALLEY AVENUE

FREEDOM COURT REPORTING

Page 24

18:5
et 1:7
evidence 2:17
examination
  5:3 6:12,21
examined 6:15
exceed 7:14
excess 16:8
explanation
  10:17 12:11
  12:18
exposure 7:14
  7:17,23
extent 15:5
extra-contrac...
  7:17

**F**
facing 13:9
fact 13:8
fairly 18:6
FARM 1:7
fax 8:12 17:15
faxed 16:22
  18:8
Federal 6:4
file 11:3 12:22
  14:1 20:23
filed 13:16 18:4
filing 2:20
  14:21 15:2
  19:10
fine 6:19 11:12
FIRM 3:5
first 6:15 16:13
  16:18
Florida 9:9,11
following 6:12
  18:17
follows 6:16
force 2:5
foregoing 6:5
form 2:12
framework

7:18
full 2:5
FURTHER 2:1
  2:9,19 22:13

**G**
generally 7:12
GILLILAND
  4:2
given 13:6
glean 11:1
gleaned 10:23
  13:2
go 11:14 15:17
  18:19 19:12
  19:13 21:12
going 11:5 14:3
good 11:15
GRAY 3:10
greater 7:23
grounds 2:15
group 7:22

**H**
handle 7:15
handling 20:22
happened
  10:10,18
  20:21
Hart 19:21,23
  21:9
Haynes 3:13,14
  5:3 6:20,21
  11:12,22 12:2
  12:6 16:20
  17:1 18:18
  20:3,6,12,15
  20:20 22:6
head 14:6
held 18:16
help 7:10
HENRY 3:18
HIGGINS 4:2,3
Holtsford 4:1,2
  22:10,11

home 8:13
honestly 20:16
HORNSBY
  3:14
Huntsville
  14:10

**I**
II 4:6
include 7:9
indemnified
  13:22
indemnity
  14:23 21:18
indicate 16:10
indicating
  13:14
indication
  17:13
information
  11:9 12:13,20
  13:1 21:4
input 12:12
inputting 12:20
insurance 1:3
  3:2 7:3 17:6
intends 21:17
interested 10:2
involve 7:17
involved 7:13
  14:5
issue 13:3,4
  15:14
Iwler 14:12,14
  15:23

**J**
J 1:18 6:1
JEFFREY 4:10
Jerry 14:12,14
  15:23
JINKS 4:7
job 9:10,13
Joe 1:7 8:9 10:9
  10:18 12:6,8

15:11 16:5
  17:7 21:3,15
JR 4:1
judgment 13:17
  14:2,21 15:3
  19:11 21:13
  21:20
July 10:3 15:13
  16:15,19

**K**
kind 7:18 10:16
know 8:16 9:2,5
  9:8,16 10:17
  15:12 17:17
  18:2,10,12
  19:6 20:16

**L**
L 1:11 4:1
Lackey 1:10,17
  4:15 5:3 6:10
  6:14 7:1 8:8
  13:7 14:22
  18:20 20:21
Lane 1:7 8:14
  10:14 13:8
Larry 1:10,17
  3:4 4:15 5:3
  6:10,14 7:1
  14:20 18:7,8
late 18:4
law 3:5 21:5
laws 2:6
lawyer 9:19
  18:3 19:18,20
  21:8
leading 2:13
left 16:12
legal 15:5
letter 21:22
liability 8:11
  13:14
limits 8:11
  15:14

line 12:17
litigation 7:13
  17:19
LLOYD 3:10
located 7:4 8:20
  14:8,16
longer 8:21
looking 15:22
LYONS 3:17
  3:18

**M**
main 3:14
  13:15
manager 9:14
mark 3:9 11:7
  19:21,23 21:8
Marriott 1:19
  6:7
matter 9:23
McClellan 14:6
  15:23
McKNIGHT
  1:7,7 8:9,12
  10:10,18 12:6
  12:8,15 15:11
  16:4,5 17:7,10
  18:22 19:3
  21:3,16
McKnight's
  16:11
mean 7:21
  21:19
message 16:12
MIDDLE 1:1
million 7:15
  12:19 13:7,18
  13:20 15:1
million-dollar
  12:10
minutes 15:19
Mizell 8:18,19
  8:21 9:21
  10:16 12:9

FREEDOM COURT REPORTING

16:3 18:22 20:22
**Montgomery** 3:19 4:4,13
**month** 10:4
**Morris** 3:14 18:7,8
**move** 11:13
**moved** 9:8,11

___

**N**

**N** 1:11 3:1 4:8 5:1
**name** 6:22 9:16 16:13
**NATHAN** 4:6
**necessary** 2:10
**NIX** 4:2
**NORTHERN** 1:2
**notation** 16:10
**note** 17:20
**notes** 10:21 11:2 15:18
**notice** 2:20 21:16,22 22:1
**November** 1:21 6:9
**NUMBER** 1:5

___

**O**

**O** 1:11
**Object** 15:4
**objections** 2:11 2:14
**obtained** 21:4
**obviously** 21:19
**occupation** 6:23
**offered** 2:16
**office** 8:13 9:1
**off-the-record** 18:15
**Ohio** 1:20 6:8 14:17

**Okay** 7:20 8:4 12:2,17 15:21 17:5,12,16 18:8,18 19:5 19:22 20:20 22:3
**ongoing** 11:7
**opinion** 21:8
**opposed** 14:2 15:2 17:18
**oral** 6:11
**outside** 7:16 19:7,14 21:8
**owe** 13:20
**owes** 13:18,19
**O'CONNOR** 4:12

___

**P**

**P** 1:11 3:1,1
**PAGE** 5:2
**part** 13:14
**particular** 19:8
**parties** 1:14 2:14 17:9
**partner** 21:5
**payment** 15:9
**pendency** 9:23
**people** 14:4
**period** 10:3
**person** 8:8 10:5 14:20 16:14
**personally** 7:11
**personnel** 7:10
**pertain** 11:22
**pick** 11:11
**Pike** 13:10,11
**Place** 3:10
**Plaintiff** 1:4
**planet** 10:6
**please** 6:23
**point** 17:19 18:14 21:7 22:7

**policy** 12:9,10 16:8
**portions** 11:19
**possible** 15:8
**possibly** 12:12 12:19
**potentially** 7:23
**Prairie** 4:8
**PRESENT** 4:15
**prior** 2:17 17:20
**privilege** 20:11
**Procedure** 6:5
**proceedings** 6:13 18:17
**Progressive** 1:3 3:2 7:3,18 8:22 9:7,9,10 13:18,19,20 14:22 15:12 16:1 19:6 20:23 21:12 21:17
**provide** 19:3
**provided** 17:7
**pursuant** 6:4
**put** 21:16

___

**Q**

**quarter** 7:14
**questions** 2:12 2:13 22:9,10

___

**R**

**R** 3:1,4
**raise** 20:10
**raising** 20:12
**RANDALL** 3:13,17
**reach** 16:6
**read** 21:19
**reading** 2:2
**reason** 13:16
**receipt** 17:22
**received** 16:22

17:6,15
**redact** 11:17
**refaxing** 17:23
**refer** 11:6
**references** 18:21 19:2
**referencing** 18:12
**referred** 14:18 14:20 15:13
**reflects** 12:22
**relating** 2:7
**release** 14:23
**report** 10:7 19:17 20:1
**Reporter** 2:21 6:2,17
**represented** 7:13
**representing** 17:9
**requested** 17:2 21:7
**respect** 21:18
**respective** 1:15
**responsibilities** 19:8
**responsibility** 7:7,22
**review** 14:19
**Reyer** 1:18 6:1
**Richard** 8:17 8:19,21 9:8 12:4,9,23 16:3 16:21 17:21 18:11
**Ricky** 1:7 8:14 10:14
**right** 8:6 14:23 18:6 20:18 21:9,13 22:6
**rights** 21:17
**Riverside** 1:7 17:7 18:9

**Road** 3:5 4:3
**route** 21:13
**rules** 2:6 6:4

___

**S**

**S** 1:11,11 3:1,13
**SAITH** 22:13
**saying** 20:15
**Scott** 3:19
**see** 15:19 17:23 18:14,19,20 19:1
**sent** 22:4
**separate** 11:15
**separation** 9:6 9:15
**September** 18:5 20:4
**showed** 12:11
**signature** 2:2
**sir** 6:23 7:4 8:2 8:6,15 10:11 11:4 12:8 13:4 13:5 22:8
**situation** 8:10 19:9
**SLATEN** 4:12
**SMITH** 4:10
**sort** 11:10
**sources** 21:6
**South** 3:10
**speak** 16:5
**SPECIALTY** 1:3 3:2
**Springs** 4:8
**staff** 16:12
**staffs** 18:23
**state** 6:22 7:10 13:10 14:7
**statement** 10:20
**states** 1:1 17:14 17:21
**STIPULATED** 1:13 2:1,9,19

**367 VALLEY AVENUE**
**(877) 373-3660  BIRMINGHAM, ALABAMA  (205) 397-2397**

**FREEDOM COURT REPORTING**

| | | | |
|---|---|---|---|
| stipulation 6:5 | **Title** 14:13 | 12:3 16:17,21 | **262-2006** 4:4 |
| stipulations | **today** 11:13 | **working** 8:23 | **264-9472** 3:20 |
| 6:18 | **told** 12:5,8,23 | **works** 9:2 14:10 | **3** |
| **Street** 1:20 3:14 | **train** 7:10 | **worst** 10:5 | **30** 20:4 |
| 3:19 4:8,12 | **training** 7:9 | **wouldn't** 20:8 | **300** 3:10 4:3 |
| 6:7 | **transcript** 2:21 | **written** 10:20 | **329-2000** 3:15 |
| **Suite** 3:5,10,19 | **trial** 2:15 | **wrong** 12:12 | **334** 3:20 4:4,9 |
| 4:3 | **TURF** 1:7 | **wrongful** 13:9 | 4:13 |
| **summarize** | **U** | **X** | **35011** 3:15 |
| 12:21 | **U** 1:11 | **X** 5:1 | **35216** 3:6 |
| **super** 8:3 | **ultimately** | **Y** | **35223** 3:11 |
| **sure** 17:4,10 | 21:11 | **Yeah** 10:2 20:3 | **36089** 4:8 |
| 18:6 | **umbrella** 16:8 | **$** | **36101** 3:19 |
| **surrounding** | **underlying** | **$1** 13:7 | **36103** 4:4 |
| 9:6 | 11:8 18:4 | **$300,000** 12:11 | **36104** 4:13 |
| **sworn** 6:15 | **understand** 8:7 | 13:19 | **396-8882** 4:13 |
| **T** | 9:11 19:5 | **0** | **4** |
| **T** 1:11,11 3:17 | 20:21 | **04** 12:16 20:5 | **4001** 4:3 |
| **take** 11:17 | **understanding** | **1** | **418** 3:19 |
| 15:18 | 15:7 | **10:38** 1:22 6:10 | **4277** 1:20 6:7 |
| **taken** 1:18 | **Union** 4:8 | **100** 3:5 | **6** |
| **talk** 10:9 | **UNITED** 1:1 | **105** 4:12 | **6** 5:3 |
| **talked** 10:21,22 | **Usual** 6:17 | **12** 16:16 | **6th** 10:3 |
| 16:11,14,19 | **V** | **131** 3:14 | **7** |
| **talking** 17:23 | **various** 21:6 | **14** 15:13 16:19 | **7-12-04** 16:4 |
| **Tallapoosa** | **view** 13:8 | **150th** 1:20 6:7 | **7-14** 12:16 17:2 |
| 4:12 | **Virginia** 16:13 | **2** | **7-15** 16:23 17:5 |
| **telephone** 3:17 | **voluntary** 15:9 | **2:05-CV-438-...** | **700,000** 13:23 |
| 4:1,6,11 | **VS** 1:5 | 1:6 | **738-4225** 4:9 |
| **tell** 11:9 19:15 | **W** | **20th** 3:10 | **8** |
| 20:2 | **W** 1:20 4:10 6:7 | **2004** 10:3 15:13 | **871-7733** 3:6 |
| **testified** 6:16 | **waived** 2:4,22 | **2005** 1:21 6:9 | **9** |
| **Thank** 22:7 | **wanted** 9:12 | **2020** 3:5 | **967-8822** 3:11 |
| **thereto** 2:17 | **wasn't** 12:18 | **205** 3:6,11 | |
| **things** 7:19 | **WEBSTER** | **21st** 1:21 6:8 | |
| **think** 8:17 | 3:18 | **219** 4:8 | |
| 20:17 | **we'll** 19:3 | **250** 8:1 | |
| **threshold** 8:1 | **we're** 20:14 | **2501** 3:10 | |
| **time** 2:15,16 | **WHITEHEAD** | **256** 3:15 | |
| 8:22 9:22 16:6 | 3:10 | | |
| 18:16 20:18 | **witness** 2:3 5:2 | | |
| **TINDAL** 3:9 | 6:11 11:21 | | |
| 16:15,18 22:9 | | | |

**367 VALLEY AVENUE**
**(877) 373-3660  BIRMINGHAM, ALABAMA  (205) 397-2397**