IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 2:05-CV-438-00 ) |
| THE MCKNIGHT AGENCY, INC., et al. | ) ) |
| Defendants. | ) |
| RICKY LANE, RIVERSIDE TURF FARM, | ) ) ) ) |
| Counter Claimants/Cross Claimants, | ) ) |
| v. | ) ) |
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, et al., | ) ) ) |
| Counterclaim Defendants | ) |
| THE MCKNIGHT AGENCY, INC. and JOE MCKNIGHT, | ) ) ) ) |
| Counter Claimants, | ) ) |
| v. | ) ) |
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Counterclaim Defendant. | ) |

**OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT**

The McKnight Agency, Inc. and Joe McKnight (collectively referred to as "McKnight") respectfully submit this Opposition to Progressive's Motion for Summary Judgment. For the

1

reasons set forth below, Progressive is not entitled to summary judgment. Rather, McKnight's Motion for Summary Judgment is due to be granted as to all of the claims asserted by Progressive.

## INTRODUCTION

As previously established in the summary judgment motion filed by McKnight and the motion filed by Jane Holmes, the undisputed evidence shows the Progressive auto liability policy issued to Ricky Lane for the 2004-2005 policy year is due to be reformed to reflect the intent of the parties that the limits should be $1,000,000. Following Joe McKnight's deposition each Defendant amended its answer to affirmatively plead reformation; yet Progressive's summary judgment motion does not even address this case dispositive issue. Instead, Progressive contends McKnight is liable for the additional $700,000 in limits under the policy in the event of a verdict for that amount against its insured, Lane. For the reasons set forth in McKnight's summary judgment brief and below, Progressive is not entitled to anything more than the difference in premiums between a $300,000 policy and a $1,000,000 policy for the period from March 10, 2004 to October 15, 2004 (the date Progressive actually increased Lane's limits to $1,000,000).

If the policy is reformed, as it should be, all remaining claims asserted in the various cross-claims and counterclaims would be disposed of.

**I.    NARRATIVE STATEMENT OF RELEVANT, UNDISPUTED FACTS**

McKnight adopts and incorporates the narrative statement of relevant, undisputed facts set forth in its Brief in Support of Motion for Summary Judgment. As Progressive noted in its brief, the material facts in this case are undisputed. McKnight does disagree, however, with Progressive's statement in the introductory paragraphs of its brief that McKnight acted as the agent of Lane. There is no substantial evidence of a material, disputed fact in this regard.

Progressive did not present any evidence supporting its statement that McKnight was an independent agent. Contrary to Progressive's bald, unsupported assertion, the following fcts relevant to that issue are **not** in dispute:

1. In or around 1992, McKnight began selling insurance policies on behalf of Progressive. (Exhibit F to McKnight's Summary Judgment Motion, Deposition of Joe McKnight, p. 10, lines 22-23, p. 11, lines 1-16).

2. At that time, McKnight entered into a Producer's Agreement with Progressive. (*Id.*)

3. McKnight renewed his Producer's Agreement with Progressive on February 5, 1998. (Exhibit G to McKnight's Summary Judgment Motion, Deposition of Mary Alice Fitzgerald, at Exh. 3).

4. Among other things, the Producer's Agreement gave McKnight binding authority with Progressive to issue, *inter alia*, Progressive auto liability policies with limits of $1,000,000. (*Id.*) (*See also* Exh. F., McKnight depo, p. 15, lines 10-16; Exh. G, Fitzgerald depo, p. 18, lines 11-23; p. 64, lines 3-23; p. 65, lines 1-2) (testifying McKnight has binding authority with Progressive).

5. In October 2000, three years prior to the clerical error that occurred regarding limits, McKnight sold Lane a Progressive auto liability policy with limits of $1,000,000, and McKnight bound Progressive to that coverage. (Exhibit A to McKnight's Summary Judgment Motion, Second Deposition of Ricky Lane, p. 26, lines 12-14; Exhibit B to McKnight's Summary Judgment Motion, 2000 Progressive Quote Sheet, Application, and Invoice; Exhibit C to McKnight's Summary Judgment Motion, 2000 Progressive Declarations Page).

6. In March 2003, McKnight sold Lane another Progressive auto liability insurance policy. (Exh. A, Lane depo, p. 27, lines 1-18; Exhibit E to McKnight's Summary Judgment Motion, 2003 Insurance Application, pp. 1-6).

7. In March 2004, McKnight assisted Lane in renewing his auto liability insurance coverage through Progressive. (Exh. P to McKnight's Summary Judgment Motion, Declarations Pages Dated March 10, 2004).

8. In October 2004, McKnight assisted Lane in increasing the limits of his Progressive policy to $1,000,000 as originally intended in March 2003 and at the renewal in March 2004. (Exh. A, Lane depo, p. 59, lines 16-23; p. 60, lines 1-19).

9. In March 2005, Lane renewed his Progressive auto liability insurance policy with the assistance of McKnight. (Exhibit K to McKnight's Summary Judgment Motion, 2005 Renewal Declarations Page, R. Lane 12-14).

10. Progressive gave McKnight a version of Progressive's own underwriting software to install on his office computer. (*See e.g.*, Exh. F, McKnight Depo, p. 13, lines 16-19).

11. McKnight has produced business at a volume as high as $1,000,000 in annualized premiums for Progressive during the time period relevant to this lawsuit. (*Id.*, p. 18, lines 5-20).

II. ARGUMENT

    A. **PROGRESSIVE IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THE POLICY AT ISSUE IS DUE TO BE REFORMED TO REFLECT THE PARTIES' INTENT THAT THE POLICY HAVE $1,000,000 LIMITS.**

Reformation of Lane's policy to reflect the intended limits of $1,000,000 negates Progressive's claims for declaratory judgment, fraud, negligence, and its proffered claim for

indemnity.[1] As previously demonstrated by McKnight in its summary judgment motion, courts facing situations identical to this have ordered insurance policies to be reformed to reflect the true intentions of the parties at the time of the application regarding policy limits. *Southeastern Ins. Agency, Inc. v. Lumbermens Mut. Ins.*, 650 N.E.2d 1285 (Mass. App. 1995) *rev'd on other grounds*, 668 N.E.2d 347 (Mass. Aug 06, 1996); *Equity Gen. Agents, Inc. v. O'Neal*, 692 S.W.2d 789 (Ark. App. 1985); *Granite State Ins. Co. v. E.H. Bacon,* 586 S.W.2d 254 (Ark. Ct. App. 1979).

Dealing with an almost identical set of facts, the court in *Granite* held a policy was due to be reformed to provide increased limits based upon an agent's clerical error while filling out the application. *Granite*, 586 S.W.2d at 254. In *Granite*, the court held the undisputed evidence showed the insured requested a fire insurance policy with limits of $55,000.00 for a particular building. *Id.* The insurance agent admitted to making a clerical error when typing the application, resulting in a request for limits of $5,500.00 rather than the intended $55,000.00 limits. *Id.* There was no dispute the previous coverage on the building had been $55,000.00. *Id.* at 255. There was no dispute the insured instructed the agent to again procure coverage with limits of $55,000.00 on the same building. *Id.* at 255. There was no dispute the agent was a general agent as he had binding authority from the insurance company. *Id.*

The *Granite* court found the agent had "simply made a mistake, which was not intended, and admits the fact" he intended to request coverage with limits of $55,000.00. *Id.* at 256. The court also found the evidence indicated the insurer would have issued the policy for $55,000.00,

---

[1] By referring to the indemnity claim and/or by citing to legal authority demonstrating Progressive is not entitled to indemnity, McKnight does not waive any of the arguments asserted in the opposition to Progressive's Motion For Leave to assert this count beyond the Court's deadline for amending the pleadings. McKnight expressly reserves any and all arguments asserted in the opposition to Progressive's Motion For Leave.

rather than $5,500.00, except for the clerical error. *Id.* Based on these facts, the court found the policy was due to be reformed:

> The evidence clearly indicates that the risks such as Mr. Bacon's [insured] motel are of a class that Granite State [insurer] was accustomed to writing; and is the type of risk, according to Mr. Boyles, which the company actively solicited. **Granite State was not drawn into a contract of insurance against a risk which it ordinarily does not insure against.**

*Id.* 256 (emphasis added).

After the court awarded the insured the limits that were intended, $55,000, the insurer then sought indemnity from the agent for the additional $49,500.00 owed to the insured under the policy. *Id.* at 254. The court denied the request for indemnity, because (1) there was no evidence of "collusion or bad faith" on the agent's part and (2) the insurer would have issued the policy for the full $55,000.00 but for the clerical error. *Id.* The court only ordered the agent to pay to the insurer $540.00 for the additional premiums due on the increased amount of coverage of the reformed policy. *Id.* at 254.

The facts of this case mirror those in *Granite*. As in *Granite*, McKnight is a general agent for Progressive with binding authority to issue auto liability policies with limits of $1,000,000. (Exh. F, McKnight depo, p. 15, lines 10-16; Exh. G, Fitzgerald depo, p. 18, lines 11-23; p. 64, lines 3-23; p. 65, lines 1-2). McKnight admitted a clerical or typographical error was made (as in *Granite*) when $300,000 limits were requested on the application instead of the $1,000,000 McKnight selected from the drop-down menu on Progressive's underwriting software. (Exh. F, McKnight depo, p. 45, lines 21-23; p. 46, lines 1-2). As in *Granite*, McKnight previously sold to Lane a Progressive policy in 2000 with $1,000,000 limits and Progressive accepted that risk. (Exh. A, Lane depo, p. 12, lines 1-23; p. 26, lines 12-20). As in *Granite*, it is undisputed both McKnight and Lane intended the policy to provide limits of

6

$1,000,000. As in *Granite*, Progressive admitted it would have issued Lane an auto liability policy with limits of $1,000,000 but for the clerical error.[2] (Exh. G, Fitzgerald depo, p. 55, lines 4-13).

As in *Granite*, Lane's policy for 2004-05 is due to be reformed to reflect the intent of the parties that the policy provide $1,000,000 limits. *See also Southeastern Ins. Agency, Inc. v. Lumbermens Mut. Ins.*, 650 N.E.2d 1285 (Mass. App. 1995) *rev'd on other grounds*, 668 N.E.2d 347 (Mass. Aug 06, 1996)(court determined policy should be reformed to reflect intended policy limits where both agent and insured intended higher limits -- carrier was **not entitled** to recover from the agent the difference it paid where insurer would have agreed to higher limits in the first place); *Equity Gen. Agents, Inc. v. O'Neal*, 692 S.W.2d 789 (Ark. App. 1985)(court reformed policy to provide coverage on two vehicles where only one was insured by mistake; it was undisputed insured and agent intended coverage and but for an error, the insurer would have issued coverage).

Progressive cites an Alabama case which supports McKnight's position.[3] *Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*, 361 So.2d 1060 (Ala. 1978). In *Elegante*, the insurer removed the "Elegante Inn" owner from the policy as the named insured when the policy was mistakenly endorsed over to a third party. *Id.* The owner had leased the premises to another individual for a five-year term, but it was agreed that the owner would maintain the insurance on the building, and the lessee would have no interest in the insurance proceeds. *Id.* The agent mistakenly transferred the policy to the lessee. *Id.* The owner learned of the mistake only *after*

---

[2] In fact, Progressive did issue $1 million in coverage to Lane several months after Lane's July of 2004 accident. (Exh. K, 2005 Renewal Declarations Page, R. Lane 12-14), and renewed that coverage again in the amount of $1,000,000 for the 2005-06 policy year.

[3] Progressive cited *Elegante* in its brief for the proposition McKnight is liable to Lane for negligent procurement.

7

the building was destroyed by a fire. *Id.* The owner of Elegante Inn filed a declaratory judgment action against the insurer seeking reformation of the policy to list the property owner as the insured. *Id.* The court reformed the policy to reflect the name of the property owner after finding the parties intended to insure the owner of the property and the parties believed the owner was insured on the basis of mutual mistake. *Id.* at 1063. The court determined the insurance company was liable to the property owner. *Id.* The court **did not** rule the agent was liable to the insurance company for any amount. *See generally, Id.*

In this case, it is undisputed McKnight (Progressive's agent) and Lane both intended the policy to have limits of $1,000,000 and both believed the limits were $1,000,000 until after the accident. As in *Elegante*, Lane's policy is due to be reformed to reflect the true intent of the parties.

### B. MCKNIGHT IS PROGRESSIVE'S AGENT.

One of the factors courts often consider in determining if an insurance policy should be reformed is whether the insurance agent is considered an independent or soliciting agent (making him an agent of the insured) or a general agent (making him an agent of the insurance company). Progressive states in its brief McKnight is an independent agent[4] rather than a general agent for Progressive. This unsupported conclusion asserted by Progressive does not create a guenuie issue of material fact. Based on the undisputed evidence in this case, Progressive's statement clearly is incorrect. According to the Alabama Supreme Court:

> The test to determine whether a person is a general agent or merely a soliciting agent is whether the agent has the power to bind the insurer to the agent's contract of insurance or to issue policies or to accept risks. If an agent has the actual authority to do these things, he is considered a general agent and may bind his insurance company by oral contract, or by waiving certain policy or application provisions.

---

[4] Progressive does not cite to any evidence of record in this case supporting this statement.

*McGhee v. Paramount Life Ins. Co.*, 385 So.2d 969, 973 (Ala. 1980)(citations omitted). As noted above and in Progressive's own supporting brief, "it is undisputed McKnight had binding authority." (Progressive's Memorandum Brief in Support of its Summary Judgment Motion, p. 9). Based upon this statement alone, there can be no dispute McKnight acted as Progressive's general agent at all times relevant to this matter.

Even if Progressive had not conceded this point, the undisputed evidence developed by the parties in this case during discovery demonstrates McKnight acted as Progressive's agent at all material times. For example:

- McKnight has sold insurance for Progressive since 1992 (Exh F, McKnight Depo, p. 10, lines 22-23, p. 11, lines 1-16).

- McKnight and Progressive entered into a Producer's Agreement which, *inter alia*, expressly gives McKnight binding authority (Exh G, Fitzgerald Depo at Exh. 3).

- McKnight assisted Lane in procuring auto liability insurance on four separate occasions, each time either selling or renewing a Progressive policy (Exhibits B, P, E, K to McKnight's Summary Judgment Motion).

- McKnight was provided with software for installation on McKnight's office computer which conducts all of Progressive's underwriting. (*See e.g.*, Exh. F, McKnight Depo, p. 13, lines 16-19). Once McKnight inputs the insured's data into the computer, McKnight is told if the insured meets the Progressive criteria and is permitted to bind Progressive. (Exh G, Fitzgerald Depo, p. 24, lines 1-23; p. 25, line 1). Here it is undisputed Lane met the criteria for $1,000,000 in coverage. (*Id.*, p. 55, lines 4-13).

- McKnight has produced business at a volume as high as $1,000,000 in annualized premiums for Progressive during the time period relevant to this lawsuit. (*Id.*, p. 18, lines 5-20).

There is no dispute of material fact as to whether McKnight is Progressive's agent. McKnight's status as a general agent with binding authority supports the argument the policy in this case is due to be reformed. *See e.g., Washington Nat'l Ins. Co. v Strickland,* 491 So.2d 872 (Ala. 1985).

### C. MCKNIGHT IS NOT LIABLE TO PROGRESSIVE FOR INDEMNITY BEYOND THE DIFFERENCE IN PREMIUMS.

Other than collecting additional premiums due for increased limits, an insurance company is not entitled to indemnity from its own agent when (1) an insurance policy is due to be reformed based upon a clerical error or mutual mistake, (2) the insurance company admits it would have issued the insurance policy to the insured as requested but for the clerical error or mutual mistake, and (3) the insurance agent had the authority to bind the insurance company for the type and amount of insurance requested by the insured. *Southeastern Ins. Agency, Inc. v. Lumbermens Mut. Ins.*, 650 N.E.2d 1285 (Mass. App. 1995) *rev'd on other grounds*, 668 N.E.2d 347 (Mass. Aug 06, 1996); *Equity Gen. Agents, Inc. v. O'Neal*, 692 S.W.2d 789 (Ark. App. 1985); *Granite State Ins. Co. v. E.H. Bacon,* 586 S.W.2d 254 (Ark. Ct. App. 1979).

In *Granite*, based on facts almost identical to those here, the court determined the insurer was not entitled to indemnification from its agent because: (1) the insurance agent had authority to bind the insurance company for the type and amount of insurance as requested by the insured (McKnight meets this criteria); (2) the insurance company admitted it would have issued the policy as intended but for the clerical error in the application (Progressive admits this); (3) the agent testified it was a mistake or a clerical error to select $5,500 instead of $55,000, thus there was no evidence of collusion or bad faith between the insured and the agent (McKnight testified $300,000 limits were issued by mutual mistake or clerical error); and (4) the type of risk was one the insurance company was accustomed to writing and actively solicited (Progressive admits this and actually approved Lane for an auto liability policy with limits of $1,000,000 on three separate occasions). *Id.* at 255-56. The court in *Granite* held the agent's alleged negligence was of no concern as to whether the insurer was due indemnity from the agent and only awarded the

10

insurer $540.00 from its agent for the additional premiums due on the increased amount of coverage. *Id.* at 254-55.

Based on the reasoning in *Granite* and other similar cases previously cited by McKnight, the most Progressive may recover from McKnight is the amount of premiums calculated on the increase in liability limits. *Lumbermens,* 650 N.E.2d at 1289 (holding insurance company not entitled to indemnity for amounts paid in excess of stated policy limit or for attorney's fees, but could have recovered additional premiums it would have received based upon increased policy limits if it had requested them).

Progressive's reliance on *Progressive Cas. Ins. Co. v. Blythe*, 350 So.2d 1062 (Ala. Civ. App. 1977), also is misplaced. Progressive contends this case supports its position McKnight is liable to Progressive for McKnight's alleged improper behavior. Progressive's reading of this opinion is overbroad. First, *Blythe* did not involve a situation where reformation was at issue. For this reason alone, the Court should hold *Blythe* is not applicable.

Aside from the fact *Blythe* did not involve reformation, that case is easily distinguishable. *Blythe* involved a third-party suit by Progressive against an independent or soliciting agent (i.e., an agent without binding authority, unlike McKnight). *Blythe*, 350 So.2d 1062 (Ala. Civ. App. 1977). The basis of the lawsuit was the agent's admitted forgery of the insured's signature on the portion of an insurance application dealing with rejection of uninsured motorist coverage. *Id.* at 1063. Since the signature was forged, the rejection of the coverage was ineffective and Progressive was required to pay a claim for benefits under the uninsured motorist coverage portion of the policy. *Id.* The court determined that since the soliciting agent admitted he forged the signature with the intent to lead Progressive to believe it was authentic, the agent was liable

11

to Progressive for damages caused by his **intentional** misrepresentation and submission of inaccurate information. *Id.*

Here, Progressive concedes the request for $300,000 limits instead of the intended $1,000,000 limits was not an intentional act. (Progressive's Motion for Summary Judgment, p. 5). Further, contrary to *Blythe,* submission of inaccurate information is not at issue in this case. During her deposition, Progressive's corporate representative testified that Progressive is not taking the position that it was provided false or inaccurate information on Lane:

### Fitzgerald Testimony

Q. Let's go down to Paragraph B [of the Producer's Agreement] where it says you have no authority to and you will not bind us on insurance coverage, oh, based on information you knew or had reason to know is false or –

Mr. Bradford: Inaccurate.

Q. -- inaccurate?

[Fitzgerald] A. Correct.

Q. Okay. There is no issue here, is there, Ms. Fitzgerald, that Ricky Lane's coverage was based on faulty or false or inaccurate information, is there?

[Fitzgerald] A. I believe they gave us – we rated it on the information that they gave us.

Q. Okay. And that information given you, Progressive is not questioning that information, is it?

[Fitzgerald] A. I don't believe so.

(Exh. G, Fitzgerald depo, p. 65, lines 4-22).

**D. THE PRODUCER AGREEMENT REQUIRES PROGRESSIVE INDEMNIFY MCKNIGHT AND, THEREFORE, PROGRESSIVE IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE INDEMNITY ISSUE.**

The Producer Agreement between Progressive and McKnight requires Progressive to defend and indemnify McKnight[5] due to, *inter alia*, Progressive's negligence, any acts, errors or omissions of Progressive, or Progressive's failure to comply with its duties as set forth in the Producer Agreement, including Article III (B)(2), which requires Progressive to properly handle claims. (Exh. G, Fitzgerald Depo, at Exh. 3, Article III (B)(1)-(2)). The Producer Agreement also requires Progressive to indemnify McKnight as follows:

> A. We [Progressive] will indemnify and hold you [McKnight] harmless for and from any liabilities, damages, judgments, actions, and expenses, including reasonable attorneys' fees (collectively, "Losses"), that you sustain due to our negligence, any acts, errors or omissions on our part, or our failure to comply with the provisions of this Agreement, including, without limitations, our failure to perform our duties set forth in Article III, provided that we are legally liable to you for such Losses.

(*Id.*, Article VIII (A)).

It was not until sometime after the July 6, 2004 accident that the clerical error in the application was first discovered by the adjuster investigating the claim. (Exh. F, McKnight Depo, p. 54, lines 3-13; p. 55, lines 1-6). According to Larry Lackey, one of Progressive's claim attorneys, after Progressive learned of the clerical error, its factual investigation surrounding the March 10, 2003 application consisted only of (1) a telephone conversation with Joe McKnight where he informed Progressive it was intended that Lane's policy have limits of $1,000,000, and (2) review of materials received from counsel for co-defendant Jane Holmes. (Exhibit B to McKnight's Motion for Leave to Amend Answer, Larry Lackey's Deposition, p. 9, lines 9-22; p.

---

[5] As stated above, by addressing the indemnity issue, McKnight does not waive any of the arguments set forth in its opposition to Progressive's Motion For Leave to amend its complaint beyond the deadline set forth in the Court's Scheduling Order.

13, lines 1-5; p. 17, lines 5-23; p.18, lines 1-14; p. 21, lines 2-14).  According to Lackey, Progressive next hired outside counsel to prepare a legal opinion and then filed this lawsuit on July 5, 2005 without conducting any further factual investigation into Lane's claim for benefits. (Exh. B to McKnight's Motion for Leave, p. 21, lines 2-14).  Progressive never undertook to investigate and discover that a mutual mistake and/or clerical error had occurred that would justify there being a policy with $1,000,000 limits.  It never asked Lane or McKnight to simply pay the difference in premium owed.

During discovery, it became apparent Lane and McKnight both intended for a Progressive auto liability insurance policy with limits $1,000,000 to be issued to Lane.  (*Id.*) Discovery also revealed that, but for the clerical error, Lane would have automatically qualified for a Progressive policy with limits of $1,000,000.  (Exh. G, Fitzgerald depo, p. 55, lines 4-13).

During his deposition, Lane testified that he was willing to pay whatever premiums Progressive required for an auto liability insurance policy with limits of $1,000,000. (Exh. A, Lane depo, p. 38, lines 7-21; p. 62, lines 19-23; p. 63, lines 1-15).  Had Progressive investigated the facts surrounding the March 10, 2003 application, Progressive would have, or should have, realized the policy is due to be reformed[6] and Progressive simply is entitled to an additional premium for the increased limits from March 10, 2004 through October 15, 2004 (the date Progressive actually increased the limits on the policy to $1,000,000).

Instead of reforming the policy to reflect the intent of the parties for Lane to have a Progressive auto liability insurance policy with limits of $1,000,000, Progressive filed this lawsuit naming Joe McKnight and the McKnight Agency as defendants.  After Progressive filed this lawsuit, Lane and Riverside Turf both filed Cross-Claims against McKnight requesting

---

[6] Again, counsel for each defendant amended their respective answers following Joe McKnight's deposition to affirmatively plead reformation.

14

compensatory and punitive damages. As a result of Progressive filing this lawsuit without conducting a sufficient factual investigation into Lane's claim, McKnight has been damaged. Based upon its breach of the Producer Agreement by failing to fully investigate Lane's claim that he purchased a policy with $1,000,000 limits, Progressive is bound to indemnify McKnight. Therefore, Progressive's claim for indemnity is due to be dismissed and its Motion for Summary Judgment denied.

## CONCLUSION

Based on the foregoing, Defendants Joe McKnight and the McKnight Agency respectfully request this Court enter an Order (1) reforming the policy at issue to reflect the intent of the parties to have limits of $1,000,000, (2) denying Progressive's Motion for Summary Judgment, (3) dismissing all cross-claims against McKnight, and (4) granting McKnight's Motion for Summary Judgment in its entirety.

Respectfully submitted,

*s/Mark E. Tindal*
Stephen E. Whitehead
Mark E. Tindal
Erin E. May
Attorneys for Joe McKnight and The McKnight Agency

**OF COUNSEL:**
LLOYD, GRAY, & WHITEHEAD, P.C.
2501 Twentieth Place South, Suite 300
Birmingham, Alabama 35223
Telephone - (205) 967-8822
Facsimile - (205) 967-2380

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing has been served upon the following via electronic filing on this the $\underline{16^{th}}$ day of December, 2005.

Randy Haynes
Morris, Haynes & Hornsby
P.O. Box 1660
Alexander City, Alabama 35011

T. Randall Lyons
Webster, Henry & Lyons, P.C
Post Office Box 239
Montgomery, Alabama 36101

Christina D. Crow
Lynn W. Jinks, III
Nathan A. Dickson, II
Jinks, Daniel & Crow
P.O. Box 350
Union Springs, Alabama 36089

Larry Bradford
Bradford Law Firm, P.C.
2020 Canyon Road, Suite 100
Birmingham, Alabama 35216

**Courtesy Copy sent to the following:**
G. Thomas Yearout
Yearout, Spina & Lavelle, P.C.
1500 Urban Center Drive, Suite 450
Birmingham, Alabama 35242

Jay Tuley
Alex Holtsford
Nix, Holtsford, Gilliland, Higgins & Higgins, P.C.
P.O. box 4128
Montgomery, Alabama 36103-4128

Jeffery W. Smith
Slaten & O'Connor
P.O. Box 1110
Montgomery, Alabama 36101

*s/Mark E. Tindal*
OF COUNSEL