IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case Number: 2:05-CV-438-W ) |
| McKNIGHT AGENCY, INC.; JOE McKNIGHT; RICKY LANE; RIVERSIDE TURF FARM; JANE HOLMES, individually and as the personal representative of the Estate of DAISY BEASLEY, deceased; YOUNG, JOHNSTON & ASSOCIATES, INC. | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**PROGRESSIVE'S MOTION IN OPPOSITION TO JANE HOLMES'
MOTION FOR SUMMARY JUDGMENT**

Comes now the plaintiff, Progressive Speciality Insurance Company ("Progressive"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and files its opposition to the defendant, Jane Holmes', individually and as a personal representative of the estate of Daisy Beasley, motion for summary judgment as follows:

Progressive filed a complaint against the defendants, as a result of a discrepancy between the amount of liability coverage requested by the named insured, Ricky Lane ("Lane"), and the amount actually procured for him by his independent agent.

Simply put, Lane requested $1 million of liability coverage from Joe McKnight ("McKnight") of the McKnight Agency, Inc. However, McKnight submitted an application for insurance to Progressive which requested $300,000 of liability limits. Progressive issued a policy to Lane which had the requested $300,000 liability limits.

Progressive has filed a complaint against McKnight and his agency, asserting in part claims for negligence and fraud. Progressive filed a motion for leave to amend its complaint on November 22, 2005 so that it could assert a related claim for indemnity based upon the producer's agreement executed by McKnight.

## POLICY BACKGROUND

Lane submitted an application for a Progressive policy on March 10, 2003. The application signed by him reflected that it would have $300,000 of liability limits. Progressive issued the policy which was in effect from March 10, 2003 to March 10, 2004. The policy and declarations page were mailed by Progressive to both Lane and McKnight. The declarations page reflects that Lane had $300,000 of liability coverage.

Progressive issued three separate endorsements to Lane on August 6, 2003. The endorsements changed the description of the insured vehicle to list Lane's 1995 International truck, added Riverside Turf as the lienholder for the truck, and changed the mailing address for the premium finance company. The declarations pages for those endorsements all reflected that the liability limits were $300,000. Progressive mailed copies of the declarations pages to Lane and McKnight.

Progressive renewed the policy for the period from March 10, 2004 to March 10, 2005. The renewal policy had liability limits of $300,000. Again, Progressive mailed the declarations pages to Lane and McKnight reflecting those limits.

The accident in which Daisy Beasley was killed occurred on July 6, 2004. After that accident, Lane discovered from Progressive that his liability limits were $300,000 instead of $1 million. He increased his liability limits to $1 million in October 2004. Lane subsequently renewed his policy for the period from March 10, 2005 to March 10, 2006 with $1 million of liability coverage.

The problem, of course, is that McKnight improperly told Lane that he had $1 million of liability coverage. McKnight also issued certificates of insurance on two occasions to Riverside Turf reflecting that Lane had $1 million of liability coverage. He submitted an invoice to Lane for the premium payment which reflected that there was $1 million of liability coverage.

STATEMENT OF UNDISPUTED FACTS.

1.   Deposition of Ricky Allen Lane.

The named insured is Ricky Lane. He was deposed on November 15, 2005. He lives in Shorterville, Alabama where he is employed as a commercial truck driver (depo., p. 23). He has difficulty in reading and writing (depo., p. 10).

Lane met with Joe McKnight around March 2003 to obtain liability coverage for his job where he hauled sod (depo., p. 27). He requested $1 million of liability coverage (depo., p. 27).

Lane recognized his signature on the application for the Progressive policy (depo., p. 32). The application is dated March 10, 2003. It is attached as Exhibit 4 to Lane's deposition. It provides that the coverage is "300 CSL".

McKnight input the application information on his computer which was online with Progressive (depo., p. 31). Lane never read the application before it was submitted to Progressive although there was nothing to prevent him from doing so (depo., p. 41).

Lane purchased a replacement truck in August 2003 (depo., p. 42). He obtained an insurance binder from McKnight at that time. McKnight faxed the binder to him at Riverside Turf (depo., p. 43).

After the accident, Lane received a letter from Progressive notifying him that he only had $300,000 of liability coverage (depo., p. 49). He discussed the letter with McKnight who was surprised that the requested limits were not procured (depo., p. 50). Lane acknowledged that he never discussed his limits directly with Progressive and was never informed by Progressive that he had $1 million of liability coverage (depo., p. 68).

2. <u>Deposition of Joe McKnight.</u>

Joe McKnight was deposed on October 28, 2005. He has had a license to sell property and casualty insurance since 1992 (depo., p. 8). He started McKnight Agency at that time (depo., p. 9).

McKnight Agency is an independent agency. It sells for several different insurers, including Progressive, and has brokerage contracts with other agencies (depo., p. 10). He entered into a producer's agreement with Progressive which allowed him to sell commercial auto insurance for it (depo., p. 11).

McKnight knows the owners of Riverside Turf. He knows that they require their drivers to have $1 million of liability coverage and that it sold products in several southeastern states (depo., p. 22).

McKnight met with Lane on March 10, 2003 to prepare an application for liability coverage (depo., p. 28). McKnight billed Lane for $1 million of liability coverage (depo., p. 30). He understood that Lane wanted that amount of coverage (depo., p. 31).

Progressive provides a software program which McKnight used in obtaining the underwriting information and determining the premium and payment plan (depo., p. 14). The software automatically runs a retail credit report on the insured and a motor vehicle report to check the insured's driving history (depo., p. 15).

The Progressive policy which became effective March 10, 2003 only had $300,000 of liability coverage. McKnight believes that he simply clicked on the computer screen to request $300,000 instead of $1 million of liability coverage (depo., p. 33). It was a mistake

on his part (id). McKnight acknowledged that he received the agent's copy of the Progressive policy which showed $300,000 of liability coverage (depo., p. 38).

McKnight sent a certificate of insurance to Riverside Turf on March 10, 2003. It reflected that Lane had $1 million of liability coverage (depo., p. 39).

Lane renewed his Progressive policy on March 8, 2004 (depo., p. 46). The renewal policy reflected that Lane had $300,000 of liability coverage, but McKnight still assumed that he was obtaining $1 million of coverage (depo., p. 49). McKnight issued another certificate of insurance to Riverside Turf on March 10, 2004 reflecting that Lane's renewal policy had $1 million of liability coverage (depo., p. 51).

After Lane's accident, McKnight reviewed his policyholder file and saw that the agent's copy of the policy reflected that Lane had $300,000 of liability coverage (depo., p. 54). He disclosed this information to Lane (depo., p. 55).

In conclusion, McKnight testified that Lane would have qualified for $1 million of coverage except for McKnight's mistake in obtaining the appropriate limits (depo., p. 63). McKnight does not fault Progressive for the improper procurement of the coverage limits requested by Lane (depo., p. 69-70).

McKnight was familiar with Progressive's software package and had been using it for approximately seven years before he submitted the application for Lane (depo., p. 71). He knew how to accurately use the software program and he never had any prior problems with it (depo., p. 71).

McKnight received from Progressive a copy of Lane's policy which became effective March 10, 2003. It disclosed that Lane's liability limits were $300,000, but McKnight never contacted Progressive concerning this discrepancy (depo., p. 74-75). He also received a copy of the renewal policy which became effective March 10, 2004. It again disclosed that Lane had $300,000 of liability coverage (depo., p. 76).

Further, McKnight had access to Progressive's website which it maintains for its agents. He could have determined Lane's liability limits at any time within a minute or so after accessing the website (depo., p. 78-80).

3.      Deposition of Raymond Morris, Jr.

Raymond Morris was deposed on November 18, 2005. He is the general partner for the lienholder, Riverside Turf (depo., p. 17). He is responsible for handling insurance matters for that company (depo., p. 18).

Riverside Turf does not own any of its own trucks (depo., p. 38). It requires its drivers to obtain their own liability coverage (depo., p. 38). He requests his drivers to obtain a certificate of insurance for it to confirm that the driver has liability coverage (depo., p. 41). Riverside Turf loaned money to Lane for his purchase of the 1995 International truck. It was listed as a lienholder on the Progressive policy (depo., p. 46).

Riverside Turf received a certificate of insurance from McKnight in March 2003 reflecting that Lane had $1 million of liability coverage (depo., p. 50, 59). It received another certificate of insurance in March 2004 from McKnight reflecting that Lane had $1 million of liability coverage (depo., p. 63-64).

4.  Deposition of Mary Alice Fitzgerald.

Mary Alice Fitzgerald was deposed on November 21, 2005. She is employed by Progressive as a customer service manager in its Cleveland, Ohio office (depo., p. 56).

Progressive entered into a producer's agreement with McKnight on February 5, 1998 (depo., p. 17). The agreement provides that McKnight has authority to provide quotes, receive applications, and bind coverage in Alabama (depo., p. 64). He did not have authority to bind coverage on inaccurate information according to the terms of the agreement (depo., p. 65).

Further, Article VIII of the producer's agreement contains an indemnification provision. It requires the agent to hold Progressive harmless from any liabilities or losses due to any acts, errors or omissions on the agent's part (depo., p. 71-72).

Progressive would have sent the policy and declarations page for the March 2003 policy to Lane. A copy of the declarations page would also have been mailed by Progressive to McKnight as the agent (depo., p. 36).

Progressive also issued declarations pages on August 6, 2003 to change the description of the insured vehicle, add a lienholder, and change the address for the premium finance company (depo., p. 39-41). Riverside Turf as the lienholder also would have received the declarations page which showed $300,000 of liability coverage (depo., p. 42). The Progressive policy was renewed in March 2004. A copy of the declarations page showing the $300,000 limits would have been mailed by Progressive at that there to Lane, McKnight, and Riverside Turf (depo., p. 44-45).

I. **SUMMARY JUDGMENT STANDARD.**

Summary judgment is proper when the evidence presented shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ala. R. Civ. P. 56(c)(3). The moving party must present, in support of its motion, evidence that will be admissible at trial. Rule 56(e) Ala. R. Civ. P. The burden of proof is on the party moving for summary judgment to make a prime facie showing that no genuine issue of material fact exists. *See,* Jordan v. General Motors Corp., 581 So.2d 835, 836 (Ala. 1991).

If the moving party makes a prime facie showing that no genuine issue of material fact exists, then the burden shifts to the non-moving party to rebut that showing by presenting substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin Co., 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is "of such weight and quality that fair minded persons in the exercise of impartial judgment can

reasonably infer the existence of the facts sought to be proved." West v. Founders Life Assurance Co. of Fl., 547 So.2d 870, 871 (Ala. 1989).

## II. ARGUMENT.

### A. The defendant does not have standing to enforce or reform a contract between Progressive and its insured and, therefore, her motion for summary judgment is due to be denied.

The defendant, Jane Holmes, individually and as the personal representative of the estate of Daisy Beasley, deceased, does not have standing to enforce or reform a contract between Progressive and its insured.

Alabama courts have held that third persons do not have rights under contract between others unless the contracting parties intend that the third person receive a direct benefit enforceable in court. Russell v. Birmingham Oxygen Service, Inc., 408 So.2d 90 (Ala. 1981). A party claiming to be a third-party beneficiary of a contract must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as a opposed to an incidental, benefit upon the third party. Weather's Auto Glass, Inc. v. Alfa Mutual Insurance Company, 619 So.2d 1328 (Ala. 1993). An injured party can bring an action against the insurer only after he has recovered a judgment against the insured and only if the insured was covered against the loss or damage at the time the injured party's right of action arose against the insured tort-feasor. State Farm Mutual Automobile Insurance Company v. Brown, 894 So.2d 643 (Ala. 2004).

In this case, Holmes requests that the court enforce or reform the contract between Progressive and Lane. She also requests that the court increase Progressive's liability limits from $300,000 to $1 million. However, Holmes does not have standing to request these remedies from the court.

It is clear based on the case law that Holmes is not a third-party beneficiary to the contract between Progressive and Lane. She is not an intended beneficiary of the contract. In fact, Alabama case law precludes direct actions by an injured party against the tortfeasor's insurance carrier. See, State Farm Mutual Automobile Insurance Company v. Brown, 894 So.2d 643 (Ala. 2004).

Therefore, Holmes does not have standing to request that the court enforce or reform the contract between Progressive and Lane. Holmes' motion for summary judgment is due to be denied.

**B.  Progressive's policy is not due to be reformed because it is undisputed that McKnight Agency's representative, Joe McKnight, made a unilateral mistake.**

Notwithstanding the fact that Holmes can not seek the remedies she is requesting from the court, Progressive's policy is not due to be reformed because McKnight Agency's representative, Joe McKnight ("McKnight"), made a unilateral mistake. There is not any evidence that Ricky Lane ("Lane") made any mistakes in procuring Progressive's policy.

Alabama law provides that the only grounds for reformation are provided by Code of Alabama 1975, §8-1-2 which provides:

> When through fraud, a *mutual mistake of the parties* or mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intentions of the parties, it may be revised by court on the application of the party aggrieved so as to express the intention, so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value.

The burden of proof required for reformation of a contract is "clear and convincing" evidence. American and Foreign Insurance Company v. Tee Jay's Manufacturing Company, Inc., 699 So.2d 1226 (Ala.1997). Alabama courts have held that reformation or revision because of a unilateral mistake is not authorized absent fraud or inequitable conduct. American Liberty Insurance Company of Birmingham v. Leonard, 115 So.2d 470, 474 (Ala.1959). The definition of "mutual mistake" is found in *Restatement (Second) of Contracts* §152 (1981) which defines it as "mutual misunderstanding concerning a basic assumption on which the contract was made." EBSCO Industries, Inc. v. Royal Insurance Company of America, 775 So.2d 128, 131 (Ala.2000).

In this case, Lane met with McKnight around March 2003 to obtain liability coverage for his job where he hauls sod (Ricky Lane depo., p. 27). He requested $1 million of liability coverage. Id.

Progressive provides a software program which McKnight used in obtaining the underwriting information in determining the premium and payment plan. (Joe McKnight depo., p. 14). The software automatically runs a retail credit report on the insured and a motor vehicle report to check the insured's driving history. Id. at 15.

Here, McKnight believes that he simply clicked on the computer screen to request $300,000 instead of $1 million of liability coverage. Id. at 33. **It was a mistake on his part.** Id. McKnight acknowledged that he received the agent's copy of the Progressive policy which showed $300,000 of liability coverage. Id. at 38.

McKnight was familiar with Progressive's software package and had been using it for approximately seven years before he submitted the application for Lane. Id. at 71. He knew how to accurately use the software program and he never had any problems with it. Id. at 71. McKnight does not fault Progressive for the improper procurement of the coverage limits requested from Lane. Id. at 69-70. Further, McKnight had access to Progressive's website which it maintains for its agents. He could have determined Lane's liability limits at any time within a minute or so after accessing the website. Id. at 78-80.

The court in EBSCO Industries, Inc. v. Royal Insurance Company of America, 775 So.2d 128, held that reformation is not proper where a unilateral mistake occurred. EBSCO purchased the assets of Luxor Corporation ("Luxor") from Luxor's parent corporation Education Publishing Corporation ("Educational"). Id. at 129. Before the sale, Luxor had been insured on polices held by Educational. Id. In September 1992, Educational informed Royal Insurance Company ("Royal") of the sale and requested that Royal "endorse all policies to show the sale and adjust the premium accordingly." Id. Royal subsequently removed Luxor's name from all Educational's policies except its "national liability policy." Id. Because of a clerical error made by Royal, Luxor's name was never removed from the

policy and Luxor remained listed on the policy as an insured entity. Id.

Subsequently, a wrongful death lawsuit was filed against EBSCO. EBSCO requested that Luxor defend it. Id. Luxor did not know that it had products-liability coverage. Id.

Royal argued that Luxor was listed as an insured after the sale only by mistake and that the contract should be reformed to state that Luxor was no longer an insured. Id. 130. The trial court agreed with Royal and reformed the policy so that it did not name Luxor as an insured. Id. at 131.

The Alabama Supreme Court held that the parties made no claim of fraud nor did any party claim that Luxor knew of the mistake by Royal. Id. Royal claimed that the mistake was mutual, but both Luxor and EBSCO contended that was a unilateral mistake. Id. The court concluded, "We find no evidence that both Luxor and Royal made a mistake. On the contrary, both Luxor and Royal appear to have agreed that Luxor would no longer be covered by this policy. Royal concedes that its own error caused Luxor to remain named as an **insured** on the policy. Id. Therefore, the mistake was unilateral not mutual. The case was reversed and remanded holding that Royal was responsible for the entire amount. Id. at 132.

The court in <u>American and Foreign Insurance Company v. Tee Jay's Manufacturing Company, Inc</u>., 699 So.2d 1226 (Ala.1997) held that the allegedly mistaken inclusion of business income loss provision in a commercial property policy was not subject to reformation. American and Foreign Insurance Company ("A and F") mistakenly included business loss coverage for Tee Jay's. Id. at 1228. A and F emphasized that Tee Jay's did not

pay a premium for this coverage at the beginning of the policy. Id. A and F argued that inclusion of the express business income loss coverage terms of the policy was a clerical error. Id.

The trial court dismissed A and F's counterclaim for reformation noting that if clerical errors or mistakes as alleged by the defendants under the undisputed facts of the case can form the basis of the reformation of a contract, then there would never be a contract or contract provision, no matter how clear that would be safe from attack. A clerical error exists where "Smyth" is substituted for "Smith" or where "221.1 acres" is typed as "22.11 acres" A unilateral mistake will not suffice. Id. at 1229. (citing, American Liberty Co. v. Leonard, 115 So.2d 470 (Ala.1959)). The Alabama Supreme Court affirmed the trial court's dismissal of A and F's counterclaim for reformation and adopted that portion of its order. Id.

In this case, it is undisputed that McKnight made an error when procuring the coverage for Lane.

> Q. I guess something similar is what happened here. You intended to click $1 million worth of liability insurance but apparently you clicked $300,000. Is that what happened?
>
> A. Apparently so, yes, sir.
>
> Q. But just to dispense with why it happened, it was simply a mistake, apparently, on your part; is that right?
>
> A. That's correct.

(Joe McKnight depo., p. 33)

McKnight was asked whether he blamed Progressive or its representatives for the improper procurement of Lane's policy:

> Q. So you don't believe that Progressive did anything wrong in obtaining this policy?
>
> A. No, sir.
>
> Q. At the time that you obtained the policy originally for Ricky Lane in 2003 and 2004, did you have any conversations whatsoever with any of Progressive's representatives about the policy?
>
> A. Not to my knowledge.
>
> (Joe McKnight depo., p. 70)
>
> Q. You knew how to do it correctly?
>
> A. Yes, sir.
>
> (Joe McKnight depo., p. 70).

Without question, McKnight made a mistake in procuring the insurance coverage for Lane. McKnight admits that he made a mistake. McKnight's attorneys have attempted to characterize it as a "software error" which is absurd. "But by virtue of an unexplained error with the drop down menu selection, limits of $300,000 where inadvertently input." (McKnight Agency's brief in support of motion for summary judgment, p. 2) (Note 1). There is no evidence of any software error with Progressive's software.

16

Additionally, there is no evidence of any fraud or mistake by Lane. There is no evidence that Lane knew of the mistake by McKnight. Lane simply met with McKnight around March 2003 to obtain liability coverage for his job. (Rick Lane depo., p.27). He requested $1 million of liability coverage. Id. at 27. After the accident, Lane discovered that he only had $300,000 in liability coverage. Id. at 49.

There is no clear and convincing evidence in this case of any mutual mistake by McKnight and Lane. The substantial evidence in this case is that McKnight made a **unilateral** mistake. McKnight concedes he made a mistake.

But for McKnight's mistake, Lane's policy of insurance with Progressive would have provided liability limits in the amount of $1 million. The defendants have not proven by clear and convincing evidence of any mutual mistake of the parties and, therefore, reformation of Progressive's policy is due to be denied.

### III.   CONCLUSION.

Holmes' motion for summary judgment is due to be denied in its entirety. Progressive's policy should not be enforced or reformed to reflect higher policy limits because Holmes does not have standing to assert those remedies. Additionally, McKnight made an unilateral mistake. It was not a mutual mistake by the parties. It was not a "software error" as alleged by some defendants. Progressive requests that the court deny Holmes' motion for summary judgment.

   /s/ R. Larry Bradford
R. Larry Bradford, Attorney for Plaintiff,
Progressive Specialty Insurance Company
Attorney Bar Code: BRA039

   /s/ Shane T. Sears
Shane T. Sears, Attorney for Plaintiff,
Progressive Specialty Insurance Company
Attorney Bar Code: SEA026

OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road
Suite 100
Birmingham, AL 35216
(205)871-7733

**CERTIFICATE OF SERVICE**

  I hereby certify that I have this the 16th day of December, 2005, served a copy of the foregoing to all attorneys of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows:

Erin E. May, Esq.
Stephen E. Whitehead, Esq.
Mark E. Tindal, Esq.
Lloyd, Gray, & Whitehead, P.C.
2501 Twentieth Place South, Suite 300
Birmingham, Alabama 35223

Randy Haynes, Esq.
Larry W. Morris, Esq.
Morris, Haynes & Hornsby
P.O. Box 1660
Alexander City, Alabama 35011

Christina D. Crow, Esq.
Jinks, Daniel & Crow
P.O. Box 350
Union Springs, Alabama 36089

            /s/ R. Larry Bradford
            OF COUNSEL