# FREEDOM COURT REPORTING

## Page 1

```
 1  IN THE UNITED STATES DISTRICT COURT
        MIDDLE DISTRICT OF ALABAMA
 2            NORTHERN DIVISION
 3  PROGRESSIVE SPECIALTY INSURANCE COMPANY,
 4     Plaintiff,
 5            CIVIL ACTION NUMBER
    VS.
 6          2:05-CV-438-W
 7  McKNIGHT AGENCY, INC.; JOE McKNIGHT; RICKY
    LANE; RIVERSIDE TURF FARM; et al.,
 8
        Defendants.
 9
10  DEPOSITION OF MARY ALICE FITZGERALD
11
        S T I P U L A T I O N S
12
13     IT IS STIPULATED AND AGREED,
14  by and between the parties through their
15  respective counsel, that the deposition
16  of:
17     MARY ALICE FITZGERALD,
18  may be taken before Carol J. Reyer,
19  Commissioner, at The Courtyard Marriott,
20  4277 W. 150th Street, Cleveland, Ohio, on
21  the 21st day of November, 2005, commencing
22  at approximately 9:15 a.m.
23
```

## Page 2

```
 1     IT IS FURTHER STIPULATED AND
 2  AGREED that the signature to and reading
 3  of the deposition by the witness is
 4  waived, the deposition to have the same
 5  force and effect as if full compliance had
 6  been had with all laws and rules of Court
 7  relating to the taking of depositions.
 8
 9     IT IS FURTHER STIPULATED AND
10  AGREED that it shall not be necessary for
11  any objections to be made by counsel to
12  any questions, except as to form or
13  leading questions, and that counsel for
14  the parties may make objections and assign
15  grounds at the time of the trial, or at
16  the time said deposition is offered in
17  evidence, or prior thereto.
18
19     IT IS FURTHER STIPULATED AND
20  AGREED that notice of the filing of the
21  transcript by the Court Reporter is hereby
22  waived.
23
```

## Page 3

```
 1            APPEARANCES
 2
    FOR PROGRESSIVE SPECIALTY INSURANCE
 3  COMPANY:
 4     R. LARRY BRADFORD
        Attorney-at-Law
 5     BRADFORD LAW FIRM
        2020 Canyon Road, Suite 100
 6     Birmingham, Alabama 35216
        (205) 871-7733
 7
 8  FOR THE DEFENDANTS:
 9     MARK E. TINDAL
        Attorney-at-Law
10     LLOYD, GRAY & WHITEHEAD
        2501 20th Place South, Suite 300
11     Birmingham, Alabama 35223
        (205) 967-8822
12
13     RANDALL S. HAYNES
        Attorney-at-Law
14     MORRIS, HAYNES & HORNSBY
        131 Main Street
15     Alexander City, Alabama 35011
        (256) 329-2000
16
17     T. RANDALL LYONS
        (via telephone)
18     Attorney-at-Law
        WEBSTER, HENRY & LYONS
19     418 Scott Street, Suite B
        Montgomery, Alabama 36101
20     (334) 264-9472
21
22
23
```

## Page 4

```
 1     ALEX L. HOLTSFORD, JR.
        (via telephone)
 2     Attorney-at-Law
        NIX, HOLTSFORD, GILLILAND, HIGGINS
 3     & HIGGINS
        4001 Carmichael Road, Suite 300
 4     Montgomery, Alabama 36103
        (334) 262-2006
 5
 6     NATHAN A. DICKSON, II
        (via telephone)
 7     Attorney-at-Law
        JINKS, DANIEL & CROW
 8     219 N. Prairie Street
        Union Springs, Alabama 36089
 9     (334) 738-4225
10
        JEFFREY W. SMITH
11     (via telephone)
        Attorney-at-Law
12     SLATEN & O'CONNOR
        105 Tallapoosa Street
13     Montgomery, Alabama 36104
        (334) 396-8882
14
15  ALSO PRESENT: LARRY LACKEY
16
17
18
19
20
21
22
23
```

**367 VALLEY AVENUE**
(877) 373-3660   **BIRMINGHAM, ALABAMA**   (205) 397-2397

**FREEDOM COURT REPORTING**

Page 61

```
10:13:19  1            MR. BRADFORD: Yeah, I mean.
10:13:21  2            THE WITNESS: There's not
10:13:22  3     really a rule that we have that's written
10:13:24  4     regarding that.
10:13:26  5        Q.  (By Mr. Haynes) Okay. Well,
10:13:27  6     I mean, you recognize, Ms. Fitzgerald, for
10:13:29  7     example, that where a mistake is made,
10:13:33  8     albeit an honest mistake, but a mistake
10:13:36  9     nonetheless, that that could subject an
10:13:39 10     insured, your insured to liability,
10:13:42 11     administratively or civilly or possibly
10:13:45 12     even criminally, for failure to comply
10:13:47 13     with the Federal rules or laws as to
10:13:50 14     financial responsibilities? You
10:13:52 15     understand that, don't you?
10:13:53 16        A.  Correct.
10:13:54 17        Q.  And is there a company
10:14:02 18     unwritten procedure of how you at
10:14:04 19     Progressive will respond?
10:14:11 20        A.  I don't know what the question
10:14:12 21     is.
10:14:13 22        Q.  Well, I've changed it from a
10:14:15 23     written company rule, and you've told me
```

Page 62

```
10:14:17  1     there isn't one?
10:14:19  2        A.  Correct.
10:14:19  3        Q.  Now I'm asking you is there an
10:14:21  4     unwritten policy as to how Progressive
10:14:23  5     would respond to that situation where your
10:14:25  6     agent in Abbeville, Alabama or Sandusky,
10:14:29  7     Ohio or wherever, where that agent makes
10:14:31  8     an honest mistake and he clicks the wrong
10:14:34  9     box? Is there an unwritten policy of how
10:14:37 10     Progressive will respond?
10:14:38 11        A.  Well, I think Progressive
10:14:40 12     always wants to do the right thing, and,
10:14:43 13     you know, definitely by following the
10:14:47 14     rules, you know, making sure that
10:14:50 15     everything is done fair.
10:14:51 16        Q.  Okay. So, it's a fairness
10:14:53 17     matter as far as the company is concerned?
10:14:57 18        A.  Being fair to our agents along
10:14:59 19     with being fair to our insureds.
10:15:07 20        Q.  Okay. Let's look at Exhibit
10:15:08 21     3, the folder that contained the producer
10:15:11 22     agreement.
10:15:16 23        A.  I don't know. Does he need to
```

Page 63

```
10:15:18  1     see it first?
         2            (Whereupon, an off-the-record
         3     discussion was held, at which time the
         4     following proceedings were had and done:)
10:15:37  5            MR. HAYNES: Let's look first
10:15:42  6     at -- and we're going to attach this to
10:15:44  7     our deposition, aren't we, Ms. Court
10:15:46  8     Reporter?
10:15:47  9            THE COURT REPORTER: Yes, sir.
10:15:48 10        Q.  (By Mr. Haynes) And let's
10:15:49 11     look first at Article II, Section A, which
10:15:51 12     is on Page 12 of this multi-page exhibit.
10:15:58 13     I'm going to come around here. And I
10:16:00 14     apologize for leaning over you, but that's
         15     the only way to do it.
         16            (Whereupon, an off-the-record
         17     discussion was held, at which time the
         18     following proceedings were had and done:)
10:17:21 19        Q.  (By Mr. Haynes) Ms.
10:17:21 20     Fitzgerald, I'm going to stand between you
10:17:23 21     and your lawyer and point, then.
10:17:25 22            First of all, we're looking at
10:17:27 23     the producers agreement dated February 5
```

Page 64

```
10:17:30  1     of '98. Do you see that?
10:17:31  2        A.  Yes.
10:17:32  3        Q.  And the designated producer is
10:17:33  4     the McKnight Agency from Abbeville
10:17:37  5     Alabama; is that right?
10:17:38  6        A.  Correct.
10:17:38  7        Q.  Under Article II, the heading
10:17:40  8     is authority. Do you see that?
10:17:42  9        A.  Yes.
10:17:42 10        Q.  It states there that you have
10:17:44 11     the authority to solicit, provide quotes,
10:17:48 12     receive applications, bind coverage in
10:17:52 13     Alabama; is that right?
10:17:55 14        A.  It does read that.
10:17:56 15        Q.  Okay. And I left out some
10:17:58 16     other things about collect premiums, but
10:18:00 17     it states that the McKnight Agency has the
10:18:03 18     authority to bind coverage in the State of
10:18:06 19     Alabama; is that right?
10:18:08 20        A.  Right.
10:18:09 21        Q.  Okay. So, we can agree that
10:18:12 22     Mr. McKnight did have the authority
10:18:13 23     pursuant to the producers agreement,
```

16 (Pages 61 to 64)

**FREEDOM COURT REPORTING**

Page 65

```
10:18:16  1   Exhibit 3, to bind coverage, true?
10:18:19  2      A.  Correct.
10:18:23  3      Q.  Let's flip over to -- no, not
10:18:32  4   flip over. Let's go down to Paragraph B
10:18:34  5   where it says you have no authority to and
10:18:37  6   you will not bind us on insurance
10:18:41  7   coverage, oh, based on information you
10:18:56  8   knew or had reason to know is false or --
10:19:01  9          MR. BRADFORD:  Inaccurate.
10:19:02 10      Q.  -- inaccurate?
10:19:03 11      A.  Correct.
10:19:04 12      Q.  Okay. There is no issue here,
10:19:07 13   is there, Ms. Fitzgerald, that Ricky
10:19:12 14   Lane's coverage was based on faulty or
10:19:18 15   false or inaccurate information, is there?
10:19:24 16      A.  I believe they gave us -- we
10:19:27 17   rated it on the information that they gave
10:19:29 18   us.
10:19:29 19      Q.  Okay. And that information
10:19:31 20   given you, Progressive is not questioning
10:19:33 21   that information, is it?
10:19:35 22      A.  I don't believe so.
10:19:36 23      Q.  Okay. And the reason I ask
```

Page 66

```
10:19:37  1   you that is not to try to trick you, but
10:19:40  2   someone has suggested that Ricky Lane's
10:19:44  3   driving record was so poor that he never
10:19:47  4   qualified to get a million dollars' worth
10:19:50  5   of commercial auto liability insurance,
10:19:52  6   but that somehow the agent tried to
10:19:54  7   subvert the system, telling Riverside
10:19:56  8   there was a million dollars of coverage
10:19:57  9   when, in fact, he never qualified for a
10:20:00 10   million, but that's not true, is it?
10:20:03 11      A.  Not to my knowledge.
10:20:05 12      Q.  Okay, fair enough.
10:20:09 13          And I broke my glasses at the
10:20:12 14   Alabama/Auburn game.
10:20:14 15          MR. BRADFORD:  Throwing them?
10:20:18 16      Q.  That's accurate. So, I've got
10:20:18 17   a pair that I picked up at the Birmingham
10:20:22 18   Airport, so I'm having -- I'm fumbling
10:20:24 19   around, ladies and gentlemen.
10:20:25 20          Okay. Let's look over to
10:20:27 21   Article III.
10:20:30 22          And let me stipulate I'm glad
10:20:33 23   Tommy Yearout is not here and
```

Page 67

```
10:20:36  1   participating in this deposition, being a
10:20:37  2   former Auburn player.
10:20:39  3          MR. BRADFORD:  Exactly.
10:20:47  4      Q.  All right. Let's look at
10:20:48  5   Article III under the McKnight Agency's
10:20:51  6   duties. It states that you will comply
10:20:56  7   with all applicable laws relating to the
10:20:58  8   sale of insurance coverages pursuant to
10:21:01  9   this agreement. Do you read that?
10:21:03 10      A.  Yes.
10:21:10 11      Q.  And an agent would have a duty
10:21:12 12   to comply with both Federal and state law
10:21:16 13   relating to minimum limits or financial
10:21:19 14   responsibility, wouldn't he?
10:21:20 15      A.  Correct.
10:21:23 16      Q.  And not only would the law of
10:21:26 17   the particular jurisdiction tell the agent
10:21:28 18   what to do, but Progressive has now put a
10:21:31 19   contractual obligation on its agents to
10:21:34 20   comply with the laws?
10:21:39 21          MR. TINDAL:  Object to the
10:21:54 22   form.
         23      A.  Yes.
```

Page 68

```
10:21:55  1      Q.  Ms. Fitzgerald, did you ever
10:22:00  2   have an occasion to talk to Joe McKnight
10:22:05  3   or anyone on his staff about how this
10:22:08  4   error happened about the amount of Ricky
10:22:10  5   Lane's coverage?
10:22:12  6      A.  No.
10:22:13  7      Q.  Do you know whether someone
10:22:15  8   else from the home office ever had the
10:22:17  9   occasion to talk to Mr. McKnight or his
10:22:19 10   staff?
10:22:19 11          MR. BRADFORD:  Larry Lackey is
10:22:21 12   -- I mean, I don't have any quarrel if you
10:22:22 13   ask her that. You can ask Larry that as
10:22:24 14   well. He might be able to give you some
10:22:27 15   information.
10:22:27 16      A.  I don't know.
10:22:28 17      Q.  The same questions with
10:22:29 18   respect to the insured, Mr. Lane, did you
10:22:32 19   or someone on your staff ever talk to
10:22:34 20   Ricky Lane?
10:22:35 21      A.  No.
10:22:57 22      Q.  I don't know that it matters,
10:22:58 23   but are we seeing in your file that
```

17 (Pages 65 to 68)

**367 VALLEY AVENUE**
(877) 373-3660    **BIRMINGHAM, ALABAMA**    (205) 397-2397