IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PROGRESSIVE SPECIALTY ) <br> INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) Case Number: 2:05CV438-00 <br> McKNIGHT AGENCY, INC.; ) <br> JOE McKNIGHT; RICKY LANE; ) <br> RIVERSIDE TURF FARM; JANE ) <br> HOLMES, individually and as the ) <br> personal representative of the Estate ) <br> of DAISY BEASLEY, deceased, ) <br> ) <br> Defendants, ) <br> ) <br> ) <br> RICKY LANE, ) <br> ) <br> Counter Claimant/Cross Claimant,) <br> ) <br> v. ) <br> ) <br> PROGRESSIVE SPECIALTY ) <br> INSURANCE COMPANY, ) <br> ) <br> Counter Claim Defendant, and ) <br> ) <br> McKNIGHT AGENCY, INC. and ) <br> JOE McKNIGHT, ) <br> ) <br> Cross Claim Defendants. ) | |

**RICKY LANE AND RIVERSIDE TURF FARMS' RESPONSE TO THE
SUMMARY JUDGMENT MOTION FILED BY DEFENDANTS McKNIGHT
AGENCY, INC. AND JOE McKNIGHT[1]**

---

[1] Summary Judgment Motions have also been filed in this case by the defendant, Jane Holmes and by the Plaintiff Progressive Specialty Insurance Company ("Progressive"). However, those respective motions do not seek Summary Judgment against any claims made by Lane or Riverside.

Come now Ricky Lane and Riverside Turf Farms and in response to the Motion for Summary Judgment filed against them by McKnight Agency, Inc. and Joe McKnight (hereinafter collectively referred to as McKnight) show to the Court as follows:

## STATEMENT OF DISPUTED/UNDISPUTED FACTS

The salient facts of this case are not in dispute. Lane and Riverside adopt by reference the "Statement of Undisputed Facts" set out in Defendant Jane Holmes' Motion for Summary Judgment. Moreover, it is clear from the "Narrative Statement of Relevant Undisputed Facts" set out in McKnight's Motion that both Lane and McKnight thought Lane was getting a liability insurance policy with limits of One Million Dollars, and that, because of a mistake made by McKnight, only $300,000.00 of limits was input into the computer.

Moreover, it is admitted by both Progressive and McKnight that McKnight received a copy of the declarations page on both the original policy and the renewal policy and failed to notice the obvious mistake. As Mr. McKnight testified, "I apparently didn't catch it at the time." (Dep. McKnight, p. 74-76).

However, there are some disputed facts relating to what Lane was given or could read and regarding the relationship between Lane and Riverside:

Ricky Lane is unable to read documents such as the application for insurance that is at issue in this case (which was on a computer screen). (Dep. Lane, p. 10, Lines 16-23). He was unable to read and understand the written test for his commercial driver's license and had to take an oral test to pass it. (Dep. Lane, p. 10, Lines 1-23).  In order to understand important documents, Lane takes them home and has his daughter read them

to him, as he did with the documents he received from McKnight and Progressive in this case. (Dep. Lane, p. 68, lines 12-19). Of course, he couldn't take documents home to be reviewed that were not given to him, and the only part of the application he was shown was the signature page. (Dep. Lane, p. 55, lines 16-20).

If Lane had been given the opportunity and could have read the computer screen containing the application, he would have seen nothing to alert him to the fact that McKnight had made the error. The only notation on the application that relates to the policy limits is this: "BI – PD 300 CSL" (Page 8 of Exhibit F to Holmes' Motion for S. J.) To suggest that Lane could have interpreted this would be absurd.

Ricky Lane never received the policies of insurance in question. (Dep. Lane, p. 65, lines 9-23). What he did receive, on two separate occasions, were documents which showed that he had limits of $1,000,000.00. (Exhibits G and H to Holmes' Motion for S. J.)

Lane was required by Federal Law to carry at least $750,000.00 of liability limits. (Dep. Lane, p. 27, lines 8-11). While Riverside would not be liable for the torts of its independent contractor, clearly Riverside had an interest in making sure that Lane was complying with the law. (Dep. McKnight, p. 29, line 23; p. 30, lines 1-7). The mere fact that Riverside has been sued in the underlying suit gives it standing to assert claims against both Progressive and McKnight.

## STANDARD FOR SUMMARY JUDGMENT

Lane and Riverside agree that the Summary Judgment Standard set out in the respective briefs submitted by Holmes and McKnight contain correct statements of the law.

3

## ARGUMENT

### 1. Lane's claims for Misrepresentation and Suppression against McKnight are not due to be dismissed.

Lane went to McKnight for the purpose of obtaining liability and cargo insurance. They both agree that the liability limits of this policy were supposed to be $1,000,000.00. McKnight told Lane that he had procured for him a $1,000,000.00 policy and gave him written documents that confirmed this. Unknown to Lane, McKnight made a mistake which has put this in question. This possible $700,000.00 shortfall in coverage for Lane has caused him much worry, has resulted in the filing of this lawsuit and has required Lane to employ attorneys to represent him in this action.

Under Alabama law in order to prove fraud, the plaintiff must prove that the defendant made "a false representation concerning a material existing fact," that he relied "on the false representation," and was "damaged . . . as a proximate result of the reliance. *Carter v. Innisfree Hotel, Inc.*, 661 So.2d 1174 (Ala. 1995). *Plantation South Condominium Ass'n, Inc. v. Profile Management Corp., Inc.*, WL 1178669, *4 (Ala. Civ. App., 2001).

All of these elements are present here. Lane went to McKnight and was told by McKnight that he had obtained for Lane limits of $1,000,000.00. That representation was untrue. It is irrelevant that McKnight might have made a merely negligent mistake. Misrepresentation can, and often is, committed negligently. McKnight admitted that he received two separate declarations pages which clearly showed the discrepancy, but he failed to correct it either time. (Dep. McKnight, p. 74-76). It is clear that Lane relied on

what McKnight told him. Otherwise he would have gone elsewhere to obtain the requisite limits.

If this Court reforms the insurance contract to provide limits of $1,000,000.00, as Holmes, McKnight and Lane have all asked it to do, Lane's cause of action for misrepresentation against McKnight would not be affected. What McKnight represented to Lane that he had obtained for him was a policy with liability limits of $1,000,000.00, not a questionable policy that would require reformation by this Court in order for Lane to be protected by the policy McKnight represented.

    2.  **Lane's claims for negligence against McKnight are valid, whether or not this Court reforms the contract; McKnight had a duty to Lane to procure $1,000,000.00 of liability coverage; and there is no evidence in this case that Lane was contributorily negligent.**

As Progressive so articulately pointed out in its Memorandum brief, McKnight has liability to Lane if Lane requested him to procure $1 million of liability insurance but he negligently failed to do so.[2] To reiterate:

> "Similarly, McKnight has liability to Lane if he was requested to procure $1 million of liability insurance but negligently failed to do so. Highlands Underwriters Insurance Company v. Elegante Ins., Inc., 361 So. 2d 1061 (Ala. 1978); Northington v. Dairyland Insurance Company, 445 So. 2d 283 (Ala. 1984). An independent agent is usually deemed to be the agent of the insured. Ala. Code Sec. 27-7-1. In Washington National Insurance Company v. Strickland, 491 So.2d 872 (Ala. 1985), the court noted that an agent who failed to obtain appropriate insurance coverage could be sued by the insured for either breach of contract or in tort for breach of his duty to use reasonable skill, care, and diligence in obtaining coverage.
> Numerous cases in Alabama have found liability on the part of the agent where he fails to obtain the coverage requested by an insured. Lewis v. Donald G Roberts and Automobile Insurance Company, 630 So.2d 355 (Ala. 1993) (holding that agent becomes liable for any damage resulting from failure to procure

---

[2] Lane asks this Court's indulgence for his repetition of Progressive's brief, but the point is too well made there not to be reinforced here.

5

appropriate coverage); Montz v. Meed and Charles, Inc., 557 So. 2d 1 (Ala. 1987), holding that agent must exercise reasonable skill, care, and diligence in effecting coverage).

*Progressive's Memorandum Brief, pages 8-9*

Lane thanks Progressive for correctly pointing out McKnight's liability to him; notwithstanding his gratitude, however, Lane must also take this opportunity to point out to the Court (even though Progressive has not moved for summary judgment on this issue) that Progressive is also liable for the negligence of McKnight under generally accepted principals of agency. An independent insurance agent with binding authority is also an agent for the company. *Watson v. Prudential Insurance Company of America*, 399 So. 2d 285 (Ala. 1981) In fact, Progressive cites this very case in its brief as a correct statement of the law. Progressive does argue in its brief, however, that McKnight failed to submit "accurate" information to Progressive, thus presumptively negating this agency. This is not the case here. As stated under oath in the deposition of Mary Alice Fitzgerald, Progressive's corporate representative:

> Q. Okay. There is no issue here, is there, Ms. Fitzgerald, that Ricky Lane's coverage was based on faulty or false or inaccurate information, is there?
>
> A. I believe they gave us – we rated it on the information that they gave us.
>
> Q. Okay. And that information given you, Progressive is not questioning that information, is it?
>
> A. I don't believe so.

*Deposition of Mary Alice Fitzgerald*, p. 65

6

As pointed out above, the fact that this insurance policy is due to be reformed to express the intentions of the parties does not absolve McKnight (or its principal Progressive) from liability for McKnight's negligence.

Finally, with respect to the liability of McKnight to Lane, McKnight asserts that Lane was contributorily negligent. At this posture of the case, not only is this assertion not appropriate for summary judgment; to the contrary, there is absolutely no evidence that Lane could have known that Progressive had only issued him a $300,000.00 policy; thus there is no evidence of contributory negligence. As stated in the previous section of this response, Lane never received a policy; he did receive both verbal and written assurances that he had $1 million of coverage, and the one document that he arguably could have seen that might have alerted him to this fact, the application, was on a computer screen which he was never shown, and which if he had seen, would not possibly have understood.

C. **RIVERSIDE TURF HAS VALID CLAIMS AGAINST McKNIGHT**

1. **Riverside Turf has standing to pursue these claims**

Riverside's claims against McKnight are not derivative of Lane's claims. McKnight made direct representations to Riverside and assumed a duty directly to it. McKnight sent to Riverside a certificate of insurance showing Lane's liability insurance limits at $1,000,000.00. Because of the relationship between Lane and McKnight, McKnight had a strong interest in making sure that its drivers were adequately insured and that they were complying with federal law. Because of McKnight's admitted mistake, Riverside, like Lane, now faces a $700,000.00 shortfall. For the same reasons

7

set out above, relative to Lane's claims, Riverside has been damaged because of the negligence and misrepresentation of McKnight.

Moreover, McKnight caused Riverside to be shown as a loss payee on the insurance policy. McKnight certainly knew of the relationship between Lane and Riverside, was aware of Riverside's security interest in the truck, and undertook duties directly to Riverside. Riverside's tort claims against McKnight are not based on its status as a third party beneficiary to the insurance contract.

Riverside's claims against McKnight are not derivative of the injury to Lane, they are claims for injury done directly to it. See *Boykin v. Arthur Andersen & Co.*, 639 So.2d 504 (Ala. 1994).

### 2. Riverside is entitled to sue McKnight for negligence.

As stated above, Riverside's claims against McKnight are not derivative, they are made for misrepresentation and negligence committed directly against Riverside. The elements of a cause of action for negligence have been set out in hundreds of cases. They are "(1) duty, (2) breach of duty, (3) proximate cause, and (4) injury." *Albert v. Hsu*, 602 So.2d 895, 897 (Ala. 1992), *Army Aviation Center Federal Credit Union v. Johnson*, 716 So.2d 1250, 1255 (Ala. Civ. App. 1998). As pointed out earlier in this brief, as well in Progressive's brief, there is a long line of cases in Alabama which hold that an insurance agent is liable for his negligence where he undertakes to obtain coverage but fails to do so. *Lewis v. Donald G. Roberts and Automobile Insurance Company, supra; Montz v. Meed and Charles, Inc., supra.*

In this case McKnight undertook to obtain for Lane, at Lane's request, liability limits of $1,000,000.00. However, when McKnight undertook to do this, he

knew that Riverside was also relying on him to accomplish this. Further, McKnight sent to Riverside documents which confirmed the $1,000,000.00 limits. McKnight undertook a legal duty to Riverside, as well as to Lane, to procure a policy with the requested limits. His failure to do so constitutes a breach of that duty and Riverside has been damaged by that breach.

### 3. Riverside Turf has a direct action against McKnight for fraud

At the outset, Riverside agrees with Lane, Holmes (the Plaintiff in the underlying case, and McKnight that the contract is due to be reformed to express the intent of the parties. However, as stated above, that in no way erases Riverside's cause of action against McKnight for fraud. This Court's ruling on the issue of reformation will, of course, affect the amount of damages that might be claimed by Riverside, or Lane, but regardless of what that ruling is, they still have damages. As stated above, what McKnight represented that he had obtained was a policy with liability limits of $1,000,000.00, not a questionable policy that would require reformation by this Court to provide those limits. As pointed out in the preceding section of this brief, Riverside's fraud claims are not derivative of Lane's claims, but based on misrepresentations made directly to Riverside, and upon which Riverside relied to its detriment.

### CONCLUSION

It is undisputed that McKnight made a mistake when he keyed in $300,000.00 for the limits of this insurance policy instead of the requested and agreed upon $1,000,000.00. It is undisputed that he told both Lane and Riverside that he had procured for Lane a policy with limits of $1,000,000.00. Neither Lane nor Riverside ever saw any document except those that contained the figure of $1,000,000.00. Both Lane

9

and Riverside were damaged by the negligence and fraud of McKnight, who at the time was a binding agent for Progressive. The motion for Summary Judgment filed by McKnight with respect to the claims asserted by them is due to be denied.

/s/ Lynn W. Jinks, III
One of the Attorneys for
Ricky Lane and
Riverside Turf Farm

OF COUNSEL:

JINKS, DANIEL & CROW, P.C.
P. O. Box 350
Union Springs, AL  36089
(334) 738-4225
(334) 738-4229 *fax*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been served upon the following via e-filing and by placing a copy of same in the United States Mail, postage prepaid, and properly addressed on this the 16th day of December, 2005 as follows:

**Attorney for Plaintiff, Progressive Specialty Insurance Company**
R. Larry Bradford, Esq.
BRADFORD LAW FIRM, P.C.
2020 Canyon Road; Suite 100
Birmingham, AL  35216
(205) 871-7733
(205) 871-7387 *fax*

**Attorneys for Plaintiff, Jane Holmes, individually
and as Personal Representative of the Estate of Daisy Beasley, Plaintiff**
Randall Haynes, Esq.
Larry W. Morris, Esq.
MORRIS, HAYNES & HORNSBY
Post Office Box 1660
Alexander City, Alabama  35011-1660
(256) 329-2000
(256) 329-2015 *fax*

**Attorneys for Defendant, Riverside Turf**
Jay S. Tuley, Esq.
Alex L. Holtsford, Jr., Esq.
NIX, HOLTSFORD, GILLILAND, HIGGINS& HITSON, P.C.
Post Office Box 4128
Montgomery, AL 36103-4128
(334) 215-8585
(334) 215-7101 *fax*

**Attorney for Defendant, Riverside Turf**
Randall Lyons, Esq.
Webster, Henry & Lyons, P.C.
418 Scott Street
P. O. Box 239
Montgomery, AL 36101-0239
(334) 264-9472
(334) 264-9599 *fax*

**Attorneys for Defendant Joe McKnight**
Stephen Whitehead, Esq.
Mark E. Dindal, Esq.
Erin E. May, Esq.
LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place South, Suite 300
Birmingham, AL 35223
(205) 967-8822
(205) 967-2380 *fax*

**Attorney for Excel Carriers**
G. Thomas Yearout, Esq.
YEAROUT, SPINA & LAVELLE, P.C.
1500 Urban Center Drive, Suite 450
Birmingham, AL 35242
(205) 298-1800
(205) 298-1802 *fax*

Jeffrey W. Smith, Esq.
SLATEN & O'CONNOR, P.C.
105 Tallapoosa Street, Suite 101
Montgomery, AL 36104
(334) 396-8882
(334) 396-8880 *fax*

/s/ Lynn W. Jinks, III
OF COUNSEL