IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.: 2:05-CV-438-00<br>) |
| THE MCKNIGHT AGENCY, INC., et al. | )<br>) |
| Defendants. | ) |
| _____ | |
| RICKY LANE, RIVERSIDE TURF FARM, | )<br>)<br>)<br>) |
| Counter Claimants/Cross Claimants, | )<br>) |
| v. | )<br>) |
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, et al., | )<br>)<br>) |
| Counterclaim Defendants | ) |
| _____ | |
| THE MCKNIGHT AGENCY, INC. and JOE MCKNIGHT, | )<br>)<br>) |
| Counter Claimants, | )<br>) |
| v. | )<br>) |
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, | )<br>)<br>) |
| Counterclaim Defendant. | ) |

**MCKNIGHT'S AMENDED ANSWER & COUNTERCLAIM**

Defendants McKnight Agency, Inc. and Joe McKnight (collectively referred to as "McKnight") submit this Amended Answer and Counterclaim.

## AMENDED ANSWER

McKnight adopts and incorporates their previously filed Answer to the Complaint, as amended, including all affirmative defenses as if set forth fully herein. McKnight further amends the Answer to assert the following Counter Claims against Progressive.

## COUNTERCLAIM

### I. THE PARTIES

1. Counterclaim Defendant Progressive Specialty Insurance Company ("Progressive" or "Counterclaim Defendant") is an insurance company incorporated and organized under the laws of the State of Ohio, having its principal place of business in the State of Ohio.

2. Counterclaim Plaintiff Joe McKnight was an employee of the McKnight Agency at all relevant times to the Counterclaim and underlying Complaint. He is over the age of 19 years and is a resident citizen of the State of Alabama.

3. Counterclaim Plaintiff the McKnight Agency was previously incorporated in the State of Alabama with its principal place of business in Alabama. The McKnight Agency, Inc. was purchased by Young, Johnston & Associates, Inc. in December of 2004 and the agency previously known as the McKnight Agency, Inc. was dissolved.

### II.   THE FACTS

4. Progressive and McKnight entered into a Producer Agreement on February 5, 1998. (Exhibit A).

5.      The Producer Agreement requires Progressive to satisfy a number of duties including to properly handle claims. (Exh. A, Article III (B)(1)-(2)).

6.      The Producer Agreement also requires Progressive to indemnify McKnight as follows:

> A.      We [Progressive] will indemnify and hold you [McKnight] harmless for and from any liabilities, damages, judgments, actions, and expenses, including reasonable attorneys' fees (collectively, "Losses"), that you sustain due to our negligence, any acts, errors or omissions on our part, or our failure to comply with the provisions of this Agreement, including, without limitations, our failure to perform our duties set forth in Article III, provided that we are legally liable to you for such Losses.

(Exh. A, Article VIII (A)).

7.      The insured, Ricky Lane, is a truck driver engaged in interstate commerce. Under federal law, Lane is required to carry minimum limits of $750,000 in liability insurance.

8.      In October of 2000, Lane applied for and was approved by Progressive's underwriting software for an auto liability insurance policy with limits of $1,000,000.

9.      After Progressive's underwriting software approved Lane's request, McKnight sold him a Progressive auto liability insurance policy with $1,000,000 limits.

10.     In March of 2003, Lane returned to McKnight's office for the purpose of obtaining a second Progressive auto liability insurance policy with $1,000,000 limits.

11.     McKnight sold Lane a Progressive auto liability policy on March 10, 2003.

12.     There is no question both Lane and McKnight intended for a policy with limits of $1,000,000 to be issued to Lane by Progressive.

13.     During the application process, however, a clerical error was made when the limits for the policy were selected from a drop-down menu on Progressive's computerized application.

14. As a result of the clerical error, limits of $300,000 were inadvertently selected rather than the intended $1,000,000 limits.

15. Neither McKnight nor Lane noticed the inadvertent error on the application regarding the requested limits.

16. On March 10, 2004, Progressive renewed Lane's policy.

17. Because it was a renewal, no application was required.

18. As a result, the premium was paid and the previous error in limits was carried forward, without either Lane or McKnight realizing it.

19. On July 6, 2004, Lane was involved in an automobile accident resulting in the death of Daisy Beasley.

20. On or about July 7, 2004, Lane called Progressive to report the accident.

21. During a subsequent telephone conversation between Lane and Progressive in the weeks following the July 7, 2004 accident, the clerical error in the application was first discovered by the adjuster investigating the claim.

22. According to Larry Lackey, one of Progressive's claims attorneys, after Progressive learned of the clerical error, its factual investigation surrounding the March 10, 2003 application consisted only of (1) a telephone conversation with Joe McKnight and (2) review of materials received from counsel for co-defendant Jane Holmes.

23. On September 27, 2004, Holmes filed a lawsuit in Pike County, Alabama against Lane, Riverside Turf, and other defendants related to the fatal auto accident.

24. McKnight was not named as a defendant to the Pike County lawsuit.

25. In October of 2004, after the fatal accident, Lane returned to McKnight's agency for the purpose of increasing the limits on his policy to $1,000,000.

26.     In October of 2004, with knowledge of Lane's involvement in the accident, Progressive's underwriting software automatically approved Lane's request to increase the limits on his auto liability policy to $1,000,000.

27.     Progressive did in fact increase the limits on Lane's policy and Lane paid an additional premium for the increase in limits for the period of October 2004 through the end of the policy year on March 10, 2005.

28.     According to Lackey, Progressive next hired outside counsel to prepare a legal opinion and then filed this lawsuit on July 5, 2005 without conducting any further factual investigation into Lane's claim.

29.     During discovery, it became apparent Lane and McKnight both intended for a Progressive auto liability insurance policy with limits $1,000,000 to be issued to Lane.

30.     Discovery also revealed that but for the above referenced clerical error, Lane would have automatically qualified for a Progressive policy limits of $1,000,000.

31.     During his deposition, Lane testified that he was willing to pay whatever premiums Progressive required for an auto liability insurance policy with limits of $1,000,000.

32.     Had Progressive investigated the facts surrounding the March 10, 2003 application, either Progressive (or one of its lawyers) would have, or should have, realized the policy is due to be reformed and Progressive is entitled to an additional premium in the amount of approximately $1,700.

33.     Instead of reforming the policy to reflect the intent of the parties (i.e., to have an auto liability insurance policy with limits of $1,000,000 issued to Lane by Progressive) Progressive filed this lawsuit naming Joe McKnight and the McKnight Agency as defendants.

34. In its Complaint, as amended, Progressive requests the Court to enter an Order determining whether Lane is entitled to coverage of $300,000 or $1,000,000 and, if so, determining whether McKnight is liable for the $700,000 difference.

35. McKnight has not been named in a lawsuit by Lane or Riverside Turf.

36. After Progressive filed this lawsuit, Lane and Riverside Turf both filed Cross-Claims against McKnight requesting compensatory and punitive damages.

37. As a result of Progressive's filing of this lawsuit without conducting a sufficient factual investigation, McKnight has been damaged in the form of, *inter alia*, attorney fees, costs, litigation expenses (all of which continue to increase), and exposure to claims for compensatory and punitive damages by Lane and Riverside.

## **COUNT I**

38. McKnight re-alleges paragraphs 1-37 of the Counterclaim as if set forth fully herein.

39. Progressive and McKnight entered into a Producer Agreement on February 5, 1998. (Exh. A).

40. Under the Producer Agreement, Progressive is obligated to indemnify McKnight and to pay any damages, liabilities, expenses, including attorneys' fees, due to Progressive's own negligence, acts, errors, omissions, or failure to comply with the duties set forth in Article III, including the duty to properly handle claims. (Exh. A, Art. III(B)(2); Exh. A, Article VIII (A)).

41. Progressive is contractually obligated under the Producer Agreement to adjust Lane's claim properly.

42. Progressive breached its duty and breached the Producer's Agreement by failing to properly adjust or arrange for the adjustment of Lane's claim for benefits in the amount of $1,000,000.

43. Progressive failed to properly investigate the matters surrounding the sale of the policy to Lane by McKnight prior to filing its lawsuit against McKnight and Lane.

44. As a result of Progressive's actions and breach of the Producer Agreement, McKnight has been damaged as described herein including, but not limited to, legal fees, costs, litigation expenses (all of which continue to increase), and exposure to claim for compensatory and punitive damages by Lane and Riverside Turf.

Wherefore, McKnight demands judgment against Progressive for (1) any amounts which McKnight may be ordered to pay to any party to this lawsuit, (2) McKnight's attorney fees, litigation costs, and expenses associated with the defense of this lawsuit.

## COUNT II

45. McKnight re-alleges paragraphs 1-44 of the Counterclaim as if set forth fully herein.

46. Progressive owed McKnight a duty to properly adjust Lane's claim for benefits.

47. Progressive breached the duty it owes to McKnight as set forth in this Counterclaim.

48. As a proximate result of Progressive's actions, McKnight has been damaged as described herein including, but not limited to, legal fees, costs, litigation expenses, and exposure to claim for compensatory and punitive damages by Lane and Riverside Turf.

Wherefore, McKnight demands judgment against Progressive for (1) any amounts which McKnight may be ordered to pay to any party to this lawsuit, (2) McKnight's attorney fees, litigation costs, and expenses associated with the defense of this lawsuit.

## COUNT III

49. McKnight re-alleges paragraphs 1-48 of the Counterclaim as if set forth fully herein.

50. Progressive and McKnight entered into a Producer Agreement on February 5, 1998. (Exh. A).

51. Under the Producer Agreement, Progressive agrees to indemnify McKnight and to pay any damages, liabilities, expenses, including attorneys' fees, due to Progressive's own negligence, acts, errors, omissions, or failure to comply with the duties set forth in Article III, including the duty to properly handle claims, including the claim by Lane for benefits in the amount of $1,000,000. (Exh. A, Art. III(B)(2); Exh. A, Article VIII (A)).

52. McKnight fully performed under the Producer Agreement with Progressive.

53. Progressive failed to perform its part and has breached the Producer Agreement with McKnight by failing to fulfill all its duties in the Producer Agreement, including but not limited to those duties set forth in Article III of the Producer Agreement, and by failing to fulfill its obligation to indemnify McKnight under Article VIII.

54. As a proximate result of Progressive's breach of the Producer Agreement, , McKnight has been damaged as described herein including, but not limited to, legal fees, costs, litigation expenses (all of which continue to increase), and exposure to claim for compensatory and punitive damages by Lane and Riverside Turf.

Wherefore, McKnight demands judgment against Progressive for (1) any amounts which McKnight may be ordered to pay to any party to this lawsuit, (2) McKnight's attorney fees, litigation costs, and expenses associated with the defense of this lawsuit.

                *s/Erin E. May*
Stephen E. Whitehead
Mark E. Tindal
Erin E. May
Attorneys for Joe McKnight and The McKnight Agency

**OF COUNSEL:**
LLOYD, GRAY, & WHITEHEAD, P.C.
2501 Twentieth Place South, Suite 300
Birmingham, Alabama 35223
Telephone - (205) 967-8822
Facsimile - (205) 967-2380

**CERTIFICATE OF SERVICE**

   I hereby certify that a true and correct copy of the above and foregoing has been served upon the following via electronic filing on this the 28th day of December, 2005.

Randy Haynes
Morris, Haynes & Hornsby
P.O. Box 1660
Alexander City, Alabama 35011

T. Randall Lyons
Webster, Henry & Lyons, P.C
Post Office Box 239
Montgomery, Alabama 36101

Christina D. Crow
Lynn W. Jinks, III
Nathan A. Dickson, II
Jinks, Daniel & Crow
P.O. Box 350
Union Springs, Alabama 36089

Larry Bradford
Bradford Law Firm, P.C.
2020 Canyon Road, Suite 100
Birmingham, Alabama 35216

**Courtesy Copy sent to the following:**
G. Thomas Yearout
Yearout, Spina & Lavelle, P.C.
1500 Urban Center Drive, Suite 450
Birmingham, Alabama 35242

Jay Tuley
Alex Holtsford
Nix, Holtsford, Gilliland, Higgins & Higgins, P.C.
P.O. box 4128
Montgomery, Alabama 36103-4128

Jeffery W. Smith
Slaten & O'Connor
P.O. Box 1110
Montgomery, Alabama 36101

                 *s/Erin E. May*
                 OF COUNSEL