IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No.: 2:05-CV-438-00 |
| THE MCKNIGHT AGENCY, INC., et al. | ) ) ) |
| Defendants. | ) |
| THE MCKNIGHT AGENCY, INC. and JOE MCKNIGHT, | ) ) ) ) |
| Counter Claimants, | ) ) |
| v. | ) ) |
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Counterclaim Defendant. | ) |

## DEFENDANTS' FINAL AMENDED ANSWER AND FINAL COUNTERCLAIM

Without waiving any substantive or procedural deficiencies regarding Plaintiff's Final Amended Complaint ("Complaint"), Defendants McKnight Agency, Inc. and Joe McKnight (collectively referred to as "Defendants") submit the following Final Amended Answer and affirmative defenses, and Final Amended Counterclaim.

## FIRST DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief may be granted.

1

## SECOND DEFENSE

Each count of the Plaintiff's Complaint fails to state a claim upon which relief may be granted.

## THIRD DEFENSE

Defendants respond to the specific allegations of Plaintiff's Complaint as follows:

## PARTIES AND JURISDICTIONAL ALLEGATIONS

1.      Upon information and belief, admitted.

2.      Defendants admit the McKnight Agency, Inc. was previously incorporated in the state of Alabama with its principal place of business in Alabama.  The McKnight Agency, Inc. was purchased by Young, Johnston & Associates, Inc. in November of 2004 and the agency previously known as the McKnight Agency, Inc. was dissolved.

3.      Upon information and belief, admitted.

4.      Upon information and belief, admitted.

5.      Upon information and belief, admitted.

6.      Defendants admit this Court has diversity jurisdiction over this lawsuit but deny Plaintiff is entitled to any of the relief requested against them.

## POLICY

7.      Defendants admit the McKnight Agency, Inc. sold the insurance policy at issue in this lawsuit on behalf of Progressive.  Defendants deny any and all allegations of wrongdoing against them in this paragraph.  Defendants reserve the right to supplement this response.

8.      Defendants admit an application was submitted to Progressive on or about March 10, 2003 for insurance coverage for Ricky Lane.  Defendants state, however, the application

speaks for itself. Defendants admit Exhibit A appears to be a copy of the March 10, 2003 application for insurance signed by Ricky Lane and submitted to Progressive.

9. Upon information and belief, Defendants admit Progressive issued a policy of commercial automobile insurance to Lane consistent with the terms of the applications signed by Lane and submitted to Progressive. Defendants state the policy and declarations page speak for themselves. Defendants admit Exhibit B appears to be a copy of the declarations page sent to Lane in or around March 2003.

10. Upon information and belief, Defendants admit Progressive renewed the subject insurance policy for the time period from March 10, 2004 to March 10, 2005. Defendants admit the subject policy is numbered CA 01722685-1. Defendants admit the renewal policy was also issued in the amount of $300,000 CSL coverage for bodily injury and property damage. Defendants admit Exhibit C appears to be a copy of the declarations page for the renewal policy sent to Lane in or around March 2004.

11. Defendants admit a certificate of insurance was provided to Riverside Turf Farm on or about March 10, 2004 and state that the certificate of insurance speaks for itself.

## **ACCIDENT**

12. Upon information and belief, admitted. Defendants admit Exhibit D appears to be a copy of the Complaint in the underlying lawsuit.

13. Defendants, upon information and belief, admit Lane was driving the 1995 International 940 truck insured by Progressive at the time of the accident and, apparently, was hauling a load for Riverside Turf. Upon information and belief, Defendants admit Lane is being defended by Progressive for the allegations of the lawsuit against him. Upon information and belief, Defendants admit Lane is contending he requested $1,000,000.00 of liability coverage but

Defendants deny any allegations of wrongdoing against them. Defendants admit Lane and his employer were provided many documents, including documents signed by Lane, showing coverage in the amount of $300,000.00.

14. Defendants admit Lane requested $1 million of liability coverage. Defendants admit that a clerical error resulted in only $300,000 in liability limits being requested from Progressive. All other allegations of this paragraph are denied.

## COUNT ONE

15. Defendants restate and incorporate by reference their responses to the allegations in paragraphs 1 – 16 above.

16. Defendants deny any and all allegations of wrongdoing against them in this paragraph.

17. Denied.

## COUNT TWO

18. Defendants restate and incorporate by reference their responses to the allegations in paragraphs 1 – 17 above.

19. Defendants deny any and all allegations of wrongdoing against them in this paragraph.

20. Denied.

## COUNT THREE

21. Defendants restate and incorporate by reference their responses to the allegations in paragraphs 1 – 20 above.

22. Admitted.

23. Defendants state the agreement speaks for itself. Otherwise, Defendants are not required to respond to the allegations of this paragraph. To the extent a response is required, any allegations are denied.

24. Defendants admit Lane requested $1 million of liability coverage. Defendants admit that a clerical error resulted in only $300,000 in liability limits being requested from Progressive. All other allegations in this paragraph are denied.

25. Upon information and belief, Defendants admit Progressive provided Defendants with copies of the documents cited in this paragraph. Defendants state the documents speak for themselves. All other allegations in this paragraph are denied.

26. Defendants state the agreement speaks for itself. Otherwise, Defendants are not required to respond to the allegations of this paragraph. To the extent a response is required, any allegations are denied.

## REQUESTED RELIEF

1. Defendants are not required to respond to this paragraph. To the extent a response is required, any allegations are denied.

. 2. Defendants are not required to respond to the allegations of this paragraph. To the extent a response is required, any allegations are denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff lacks standing to bring these claims.

### SECOND AFFIRMATIVE DEFENSE

Defendants plead the applicable statutes of limitations to the extent they may apply.

**THIRD AFFIRMATIVE DEFENSE**

Defendants aver they are not guilty of the matters and things alleged in Plaintiff's Complaint and, further, Plaintiff's claims are barred in whole or in part because Defendants never engaged in or intended to engage in any conduct to harm Plaintiff whatsoever.

**FOURTH AFFIRMATIVE DEFENSE**

Defendants plead waiver, estoppel, release, unclean hands, res judicata, payment, and collateral estoppel to the extent they may apply.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff has not suffered any injury or damage because of any act or omission by the Defendants or by any person or entity under their control.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred by the doctrines of accord and satisfaction, ratification, consent, mistake, mutual mistake, fraud, and acquiescence.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred by failure of consideration.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred by the defense of laches.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred by the defenses of contributory negligence and/or comparative negligence and by the defense of assumption of the risk.

**TENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred by the doctrine of *In pari delicto.*

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are not ripe.

**TWELFTH AFFIRMATIVE DEFENSE**

Defendants deny they are guilty of any conduct entitling Plaintiff to recover punitive damages.

**THIRTEENTH AFFIRMATIVE DEFENSE**

The alleged damages about which Plaintiff complain arose as a result of acts or omissions of others over whom Defendants had no control.  If Defendants were negligent in the manner provided by Plaintiff, which is denied, the acts or omissions of others were a superseding and intervening cause of any damages suffered by Plaintiff.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Defendants plead the general issue and state they are not guilty of the matters and things charged.

**FIFTEENTH AFFIRMATIVE DEFENSE**

The allegations of the Complaint and each count therein are untrue.

**SIXTEENTH AFFIRMATIVE DEFENSE**

The subject transactions at issue in this case were arms-length transactions.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

The damages asserted on behalf of the Plaintiff are the result of an intervening and/or superseding cause.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

The Complaint contains a misjoinder of parties and is due to be dismissed.

### NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be subject to binding arbitration and therefore should be dismissed.

### TWENTIETH AFFIRMATIVE DEFENSE

Defendants deny any misrepresentation or suppression of material fact to any party.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Defendants deny any present intent to deceive at the time any allegedly incorrect statements were made or material facts were suppressed.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Defendants deny any reasonable or justifiable reliance by any person and/or entity on any alleged material misrepresentations or suppressions.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Defendant breached no duty owed to Plaintiff.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the merger doctrine and the parol evidence rule.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff failed to mitigate its damages.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Defendants owed Plaintiff no duty.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Defendants deny they were aware of any material facts that Plaintiff alleges were misrepresented and/or suppressed.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Defendants reserve any additional and further defenses as may constitute an avoidance or affirmative defense as may be revealed during discovery or upon receipt of additional information. Plaintiff's claims are or may be barred by the Statute of Repose and/or the Rule of Repose.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

Plaintiff is not a real party in interest, by assignment, or otherwise.

### THIRTIETH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to a declaratory judgment.

### THIRTY-FIRST AFFIRMATIVE DEFENSE

No justiciable controversy exists between Plaintiff and these Defendants.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff has no legally protected interest at this time.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff has suffered no damages and has failed to prove or even allege it is certain to suffer any damages allegedly due to the acts and omissions of these Defendants.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims have not accrued.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff has not proven or even alleged an immediate or imminently threatening injury.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff has not proven or even alleged it will suffer hardship absent a ruling by the Court.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff has not suffered an injury in fact.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

Defendants reserve the right to amend their answer.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

Anything not specifically admitted herein and which is not otherwise clear from these responses is denied.

## FINAL COUNTERCLAIM

McKnight further amends the Answer to assert the following Counter Claims against Progressive.

### I. THE PARTIES

1. Counterclaim Defendant Progressive Specialty Insurance Company ("Progressive" or "Counterclaim Defendant") is an insurance company incorporated and organized under the laws of the State of Ohio, having its principal place of business in the State of Ohio.

2. Counterclaim Plaintiff Joe McKnight was an employee of the McKnight Agency at all relevant times to the Counterclaim and underlying Complaint. He is over the age of 19 years and is a resident citizen of the State of Alabama.

3. Counterclaim Plaintiff the McKnight Agency was previously incorporated in the State of Alabama with its principal place of business in Alabama. The McKnight Agency, Inc. was purchased by Young, Johnston & Associates, Inc. in December of 2004 and the agency previously known as the McKnight Agency, Inc. was dissolved.

## II.  THE FACTS

4. Progressive and McKnight entered into a Producer Agreement on February 5, 1998. (Exhibit A).

5. The Producer Agreement requires Progressive to satisfy a number of duties including to properly handle claims.  (Exh. A, Article III (B)(1)-(2)).

6. The Producer Agreement also requires Progressive to indemnify McKnight as follows:

> A.  We [Progressive] will indemnify and hold you [McKnight] harmless for and from any liabilities, damages, judgments, actions, and expenses, including reasonable attorneys' fees (collectively, "Losses"), that you sustain due to our negligence, any acts, errors or omissions on our part, or our failure to comply with the provisions of this Agreement, including, without limitations, our failure to perform our duties set forth in Article III, provided that we are legally liable to you for such Losses.

(Exh. A, Article VIII (A)).

7. The insured, Ricky Lane, is a truck driver engaged in interstate commerce.  Under federal law, Lane is required to carry minimum limits of $750,000 in liability insurance.

8. In October of 2000, Lane applied for and was approved by Progressive's underwriting software for an auto liability insurance policy with limits of $1,000,000.

9. After Progressive's underwriting software approved Lane's request, McKnight sold him a Progressive auto liability insurance policy with $1,000,000 limits.

10. In March of 2003, Lane returned to McKnight's office for the purpose of obtaining a second Progressive auto liability insurance policy with $1,000,000 limits.

11. McKnight sold Lane a Progressive auto liability policy on March 10, 2003.

12. There is no question both Lane and McKnight intended for a policy with limits of $1,000,000 to be issued to Lane by Progressive.

13. During the application process, however, a clerical error was made when the limits for the policy were selected from a drop-down menu on Progressive's computerized application.

14. As a result of the clerical error, limits of $300,000 were inadvertently selected rather than the intended $1,000,000 limits.

15. Neither McKnight nor Lane noticed the inadvertent error on the application regarding the requested limits.

16. On March 10, 2004, Progressive renewed Lane's policy.

17. Because it was a renewal, no application was required.

18. As a result, the premium was paid and the previous error in limits was carried forward, without either Lane or McKnight realizing it.

19. On July 6, 2004, Lane was involved in an automobile accident resulting in the death of Daisy Beasley.

20. On or about July 7, 2004, Lane called Progressive to report the accident.

21. During a subsequent telephone conversation between Lane and Progressive in the weeks following the July 7, 2004 accident, the clerical error in the application was first discovered by the adjuster investigating the claim.

22. According to Larry Lackey, one of Progressive's claims attorneys, after Progressive learned of the clerical error, its factual investigation surrounding the March 10, 2003 application consisted only of (1) a telephone conversation with Joe McKnight and (2) review of materials received from counsel for co-defendant Jane Holmes.

23. On September 27, 2004, Holmes filed a lawsuit in Pike County, Alabama against Lane, Riverside Turf, and other defendants related to the fatal auto accident.

24. McKnight was not named as a defendant to the Pike County lawsuit.

25. In October of 2004, after the fatal accident, Lane returned to McKnight's agency for the purpose of increasing the limits on his policy to $1,000,000.

26. In October of 2004, with knowledge of Lane's involvement in the accident, Progressive's underwriting software automatically approved Lane's request to increase the limits on his auto liability policy to $1,000,000.

27. Progressive did in fact increase the limits on Lane's policy and Lane paid an additional premium for the increase in limits for the period of October 2004 through the end of the policy year on March 10, 2005.

28. According to Lackey, Progressive next hired outside counsel to prepare a legal opinion and then filed this lawsuit on July 5, 2005 without conducting any further factual investigation into Lane's claim.

29. During discovery, it became apparent Lane and McKnight both intended for a Progressive auto liability insurance policy with limits $1,000,000 to be issued to Lane.

30. Discovery also revealed that but for the above referenced clerical error, Lane would have automatically qualified for a Progressive policy limits of $1,000,000.

31. During his deposition, Lane testified that he was willing to pay whatever premiums Progressive required for an auto liability insurance policy with limits of $1,000,000.

32. Had Progressive investigated the facts surrounding the March 10, 2003 application, either Progressive (or one of its lawyers) would have, or should have, realized the policy is due to be reformed and Progressive is entitled to an additional premium in the amount of approximately $1,700.

33. Instead of reforming the policy to reflect the intent of the parties (i.e., to have an auto liability insurance policy with limits of $1,000,000 issued to Lane by Progressive) Progressive filed this lawsuit naming Joe McKnight and the McKnight Agency as defendants.

34. In its Complaint, as amended, Progressive requests the Court to enter an Order determining whether Lane is entitled to coverage of $300,000 or $1,000,000 and, if so, determining whether McKnight is liable for the $700,000 difference.

35. McKnight has not been named in a lawsuit by Lane or Riverside Turf.

36. After Progressive filed this lawsuit, Lane and Riverside Turf both filed Cross-Claims against McKnight requesting compensatory and punitive damages.

37. As a result of Progressive's filing of this lawsuit without conducting a sufficient factual investigation, McKnight has been damaged in the form of, *inter alia*, attorney fees, costs, litigation expenses (all of which continue to increase), and exposure to claims for compensatory and punitive damages by Lane and Riverside.

## **COUNT I**

38. McKnight re-alleges paragraphs 1-37 of the Counterclaim as if set forth fully herein.

39. Progressive and McKnight entered into a Producer Agreement on February 5, 1998. (Exh. A).

40. Under the Producer Agreement, Progressive is obligated to indemnify McKnight and to pay any damages, liabilities, expenses, including attorneys' fees, due to Progressive's own negligence, acts, errors, omissions, or failure to comply with the duties set forth in Article III, including the duty to properly handle claims. (Exh. A, Art. III(B)(2); Exh. A, Article VIII (A)).

41. Progressive is contractually obligated under the Producer Agreement to adjust Lane's claim properly.

42. Progressive breached its duty and breached the Producer's Agreement by failing to properly adjust or arrange for the adjustment of Lane's claim for benefits in the amount of $1,000,000.

43. Progressive failed to properly investigate the matters surrounding the sale of the policy to Lane by McKnight prior to filing its lawsuit against McKnight and Lane.

44. As a result of Progressive's actions and breach of the Producer Agreement, McKnight has been damaged as described herein including, but not limited to, legal fees, costs, litigation expenses (all of which continue to increase), and exposure to claim for compensatory and punitive damages by Lane and Riverside Turf.

Wherefore, McKnight demands judgment against Progressive for (1) any amounts which McKnight may be ordered to pay to any party to this lawsuit, (2) McKnight's attorney fees, litigation costs, and expenses associated with the defense of this lawsuit.

## COUNT II

45. McKnight re-alleges paragraphs 1-44 of the Counterclaim as if set forth fully herein.

46. Progressive owed McKnight a duty to properly adjust Lane's claim for benefits.

47. Progressive breached the duty it owes to McKnight as set forth in this Counterclaim.

48. As a proximate result of Progressive's actions, McKnight has been damaged as described herein including, but not limited to, legal fees, costs, litigation expenses, and exposure to claim for compensatory and punitive damages by Lane and Riverside Turf.

Wherefore, McKnight demands judgment against Progressive for (1) any amounts which McKnight may be ordered to pay to any party to this lawsuit, (2) McKnight's attorney fees, litigation costs, and expenses associated with the defense of this lawsuit.

## COUNT III

49.     McKnight re-alleges paragraphs 1-48 of the Counterclaim as if set forth fully herein.

50.     Progressive and McKnight entered into a Producer Agreement on February 5, 1998. (Exh. A).

51.     Under the Producer Agreement, Progressive agrees to indemnify McKnight and to pay any damages, liabilities, expenses, including attorneys' fees, due to Progressive's own negligence, acts, errors, omissions, or failure to comply with the duties set forth in Article III, including the duty to properly handle claims, including the claim by Lane for benefits in the amount of $1,000,000.  (Exh. A, Art. III(B)(2); Exh. A, Article VIII (A)).

52.     McKnight fully performed under the Producer Agreement with Progressive.

53.     Progressive failed to perform its part and has breached the Producer Agreement with McKnight by failing to fulfill all its duties in the Producer Agreement, including but not limited to those duties set forth in Article III of the Producer Agreement, and by failing to fulfill its obligation to indemnify McKnight under Article VIII.

54.     As a proximate result of Progressive's breach of the Producer Agreement, , McKnight has been damaged as described herein including, but not limited to, legal fees, costs, litigation expenses (all of which continue to increase), and exposure to claim for compensatory and punitive damages by Lane and Riverside Turf.

Wherefore, McKnight demands judgment against Progressive for (1) any amounts which McKnight may be ordered to pay to any party to this lawsuit, (2) McKnight's attorney fees, litigation costs, and expenses associated with the defense of this lawsuit.

                                                s/Graham R. Pulvere
                                                Stephen E. Whitehead
                                                Mark E. Tindal
                                                Graham R. Pulvere
                                                Attorneys for Joe McKnight and The
                                                McKnight Agency

**OF COUNSEL:**
LLOYD, GRAY, & WHITEHEAD, P.C.
2501 Twentieth Place South, Suite 300
Birmingham, Alabama 35223
Telephone - (205) 967-8822
Facsimile - (205) 967-2380

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the above and foregoing has been served upon the following via electronic filing on this the 1st day of September, 2006.

Larry Bradford
Shane T. Sears
Bradford Law Firm, P.C.
2020 Canyon Road, Suite 100
Birmingham, Alabama 35216

                                                s/Graham R. Pulvere
                                                OF COUNSEL