IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PROGRESSIVE SPECIALTY INS., CO.,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | CASE NO. 2:05-cv-438-WKW |
| ) | (WO) |
| MCKNIGHT AGENCY, INC., *et al.*,   ) | |
| ) | |
| Defendants.   ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Progressive Specialty Insurance Company ("Progressive") brings this action against Defendants McKnight Agency, Inc. ("McKnight Agency"), Joe McKnight ("McKnight"), Ricky Lane ("Lane"), Riverside Turf Farm ("Riverside"), and Jane Holmes ("Holmes")[1] alleging various state law claims. (Doc. # 1, Compl.) In response to the complaint, the defendants filed numerous cross claims and counterclaims. (Docs. # 38, 39, 40, 59, 61.)

This cause is before the court on the motion for summary judgment filed by Progressive (Doc. # 73), and the motion for summary judgment filed by McKnight and McKnight Agency (Doc. # 75). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the motions are due to be GRANTED in part and DENIED in part.

**I. FACTS AND PROCEDURAL HISTORY**

The disputes in this case arise out of user error of computer software. The evidentiary submissions of the parties establishes the following facts.

---

[1] Holmes is sued individually and as the personal representative of the estate of Daisy Beasley, deceased. (Doc. # 1, Compl.)

*A.     Facts*

McKnight owned and operated McKnight Agency[2] which was an authorized agent for Progressive.[3] In October 2000, Lane, a commercial truck driver, met with McKnight to obtain liability insurance coverage for his truck. On October 27, 2000, Lane was approved for and purchased a combined single limits ("CSL") policy with $1,000,000 of coverage from Progressive through McKnight.

On March 10, 2003, Lane returned to McKnight to purchase another $1,000,000 CSL policy from Progressive so he could start hauling sod for Riverside. Although Lane was required to have at least $750,000 of liability coverage to haul for Riverside, Lane requested $1,000,000 of coverage. Because Lane continued to qualify for $1,000,000 of CSL coverage, McKnight submitted a computerized application on Lane's behalf to Progressive for the coverage. Unbeknown to McKnight and Lane, McKnight mistakenly selected $300,000, rather than $1,000,000, from the drop-down menu in Progressive's application software[4] while he was completing Lane's application for the policy ("the Policy").[5] McKnight and Lane were unaware of the clerical error and believed that Lane had purchased $1,000,000 of CSL coverage from Progressive. Upon that mistaken belief, Lane signed the application for the Policy and McKnight issued a certificate of liability insurance

---

[2] McKnight sold the McKnight Agency to Young, Johnston & Associates in December 2004 and the McKnight Agency was dissolved. McKnight remains a licensed agent for Progressive.

[3] On February 5, 1998, McKnight and Progressive entered into a Producer's Agreement, providing McKnight Agency with authority to "solicit, provide quotes, receive applications, bind coverage, and collect, receive and receipt for premiums for insurance products" in the state of Alabama for Progressive. (Doc. # 143, Ex. A, Article II, ¶ A.)

[4] McKnight testified that he had been using Progressive's software for seven or eight years and had no previous problems with the software. (McKnight Dep. 70-71.)

[5] It is undisputed that, but for McKnight's clerical error, Progressive would have issued the Policy to Lane with $1,000,000 of CSL coverage. (Fitzgerald Dep. 55.)

("COLI") to Riverside stating that Lane was insured for $1,000,000.[6] However, Progressive issued the Policy to Lane, providing only $300,000 of CSL coverage, due to McKnight's clerical error. The Policy was in effect from March 10, 2003, to March 10, 2004.[7]

In March 2004, McKnight and Lane renewed the Policy.[8] Because it was a renewal, no application was completed. Consequently, the previous clerical error in CSL coverage was carried forward on the renewed Policy and neither Lane nor McKnight realized the error.[9] Again, McKnight mistakenly issued a COLI to Riverside stating that Lane was insured for $1,000,000.

In July 2004, Lane was involved in an automobile accident that resulted in the death of Daisy Beasley. When Lane called Progressive to report the accident, he learned for the first time that the renewed Policy only provided $300,000 of CSL coverage. Shortly thereafter, Lane called McKnight to discuss the CSL coverage under the renewed Policy. Lane informed McKnight that, according to Progressive, he only had $300,000 of CSL coverage. Disbelieving Progressive's assertion of coverage, McKnight reviewed Lane's file and surprisingly discovered that Lane only had $300,000 of CSL coverage.

Subsequently, in October 2004, Lane requested and received an increase in the renewed

---

[6] There is no dispute that both Lane and McKnight intended for Lane to receive a policy with $1,000,000 of CSL coverage from Progressive, and Lane met the underwriting criteria of Progressive at the time of the application to obtain CSL coverage of $1,000,000.

[7] The declarations page for the Policy reflects that Lane had $300,000 of coverage. A copy of the Policy, including the declarations page, was mailed to both McKnight and Lane; neither of them noticed the clerical error.

[8] The renewed Policy provided coverage from March 10, 2004 to March 10, 2005.

[9] A copy of the renewed Policy and declarations page were mailed to Lane and McKnight; neither of them caught the mistake.

Policy to provide $1,000,000 of CSL coverage.[10] In March 2005, Lane again renewed his coverage and was approved for $1,000,000 of CSL coverage by Progressive.

B.   *Underlying Lawsuit*

As a result of the July 2004 accident, Holmes filed a lawsuit in the Circuit Court of Pike County, Alabama, against Lane, Riverside, and other defendants. According to Holmes' complaint,[11] at the time of the accident,[12] Lane was driving the truck insured by Progressive and was hauling a load for Riverside. While traveling on U.S. Highway 231, Lane struck Beasley's vehicle from the rear while she was in the left turn lane waiting to turn. This collision caused Beasley's vehicle to be pushed under the tractor trailer of another driver, resulting in Beasley's death.

Progressive defended Lane in Holmes' lawsuit and settled the claims against Lane for $1,000,000.

C.   *This Lawsuit*

On May 10, 2005, Progressive filed the instant action naming McKnight Agency, McKnight, Lane, Riverside and Holmes as defendants. (Doc. # 1, Compl.) On August 25, 2006, Progressive's claims against Holmes, Lane and Riverside were dismissed; Lane and Riverside's counterclaims against Progressive were dismissed; and Holmes was dismissed as a party to the action. (Doc. # 137.) On September 11, 2006, Lane and Riverside's cross claims against McKnight and McKnight Agency were dismissed. (Doc. # 147.) Thus, the only defendants remaining in this action are McKnight and McKnight Agency (collectively "McKnight").

---

[10] Progressive agreed to increase the limits of coverage on the renewed Policy to $1,000,000 for an additional premium.

[11] (*See* Doc. # 1, Ex. D.)

[12] The accident occurred on July 6, 2004.

Further, the only claims remaining in this action are Progressive's claims against McKnight, and McKnight's counterclaim against Progressive. Progressive alleges claims against McKnight for negligent procurement of insurance coverage, innocent/reckless misrepresentation on the insurance application, and breach of contract. (Doc. # 142, Final Am. Compl.) Progressive seeks damages for the increased liability limits in the amount of $700,000,[13] interest, costs, reasonable attorney's fees and litigation expenses. McKnight alleges a counterclaim against Progressive for breach of contract, breach of duty, and failure to indemnify. (Doc. # 143, Final Am. Answer & Final Countercl.) McKnight seeks costs, reasonable attorney's fees, and litigation expenses.

On November 23, 2005, Progressive filed a motion for summary judgment arguing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law on its claims. (Doc. # 73.) On November 25, 2005, McKnight filed a motion for summary judgment arguing that he is entitled to judgment as a matter of law on the counterclaim. (Doc. # 75.) These motions are now fully briefed and ripe for consideration by the court. Because the parties stipulated that no disputed facts exist in relation to the claims presently before the court, all claims and counterclaims in this action are deemed submitted solely as questions of law and are due to be resolved as a matter of law in this opinion on summary judgment. (*See* Doc. # 139.)

## II. JURISDICTION AND VENUE

The parties have not disputed that this court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332[14] and 1367. The parties do not contest personal jurisdiction or venue,

---

[13] This amount represents the settlement sum in excess of Lane's $300,000 CSL coverage under the renewed Policy.

[14] Progressive is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Ohio. McKnight is a resident of Alabama, and McKnight Agency was a corporation organized and existing under the laws of the State of Alabama, with its principal place of business in Alabama. According to the

and the court finds adequate allegations in support of both personal jurisdiction and venue.

### III.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from

---

Complaint, the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00. (Doc. # 1, Compl., ¶ 6.)

the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### IV. DISCUSSION

*A.    Applicable Law*

At the outset, the court notes that the issues in this case must be decided in accordance with Alabama law. When a federal court exercises diversity-of-citizenship jurisdiction, the court is bound to apply the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The *Erie* doctrine extends to choice-of-law questions, so that a court sitting in diversity must apply the forum state's conflict-of-law rules. *Strochak v. Federal Ins. Co.,* 109 F.3d 717, 719-20 (11th Cir. 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, *Inc.*, 313 U.S. 487, 496 (1941)). "The general choice-of-law rule in Alabama is *lex loci contractus*, which provides that 'a contract is governed as to its nature, obligation, and validity by the law of the place where it was made.'" *Kruger Commodities, Inc. v. U.S. Fid. and Guar.*, 923 F. Supp. 1474, 1477 (M.D. Ala. 1996) (Thompson, J.) (citations omitted). Here, the insurance contract was formed in Alabama.[15]

*B.    Motions for Summary Judgment*

In its motion for summary judgment, Progressive argues that since McKnight's negligence caused the error, McKnight should indemnify Progressive pursuant to the Producer's Agreement for the $700,000 increased liability. McKnight argues that the renewed Policy should be reformed to provide $1,000,000 CSL coverage and that pursuant to the Producer's Agreement Progressive

---

[15] In addition, the Producer's Agreement provides that the "Agreement will be governed by and interpreted under" Alabama law. (Doc. # 143, Ex. A, Article IX, ¶ A.)

should indemnify McKnight for attorney fees and litigation costs. The court addresses these arguments in turn.[16]

   *1.   Insurance Policy*

In Alabama, reformation of contracts is governed by Ala. Code § 8-1-2 (1975), which provides:

> When, through fraud, a mutual mistake of the parties or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value.

The Alabama Supreme Court has stated that "[t]he terms of the statute are plain and unambiguous and give the equity court power to reform or revise a written contract only when the requirements of the statute have been met." *Am. Liberty Ins. Co. of Birmingham v. Leonard*, 115 So. 2d 470, 473 (Ala. 1959). "[I]t is the burden of the party seeking reformation to establish by clear and convincing evidence that those requirements have been met." *Goodwyn, Mills & Cawood, Inc. v. Markel Ins. Co.*, 911 So. 2d 1044, 1048 (Ala. 2004) (citation omitted). Moreover, "[a]n insurance policy may be reformed as other instruments." *Highland Underwriters Inc. Co. v. Elegante Inns, Inc.*, 361 So. 2d 1060, 1063 (Ala. 1978).

---

[16] As a threshold matter, one must determine whether McKnight was Lane's agent in procuring insurance coverage.

> In Alabama, an insurance broker becomes an insured's agent when two requirements are satisfied. First, the broker must exclusively represent one party when negotiating and transacting business with other parties. In other words, the broker is not the insured's agent when the broker "acts as intermediate negotiator between the parties to a transaction." . . . Second, the insured must have the right to control the broker.

*First Ala. Bank of Montgomery, N.A. v. First State Ins. Co., Inc.* 899 F.2d 1045, 1078 (11th Cir. 1990) (citations omitted). Because all of the evidence in this case suggests that McKnight acted solely as the representative of Progressive in procuring insurance coverage, and there is no evidence that Lane had a right of control over McKnight, the court concludes that the evidence in this case sufficiently establishes that McKnight was not Lane's agent.

McKnight argues that it has produced clear and convincing evidence establishing that the true intention of the parties[17] was for Lane to purchase $1,000,000, not $300,000, of CSL coverage from Progressive, and that the failure of the Policy to reflect that intention is due to a mutual mistake of the parties.[18] The Alabama Supreme Court defines "mutual mistake" as a "mutual misunderstanding concerning a basic assumption on which the contract was made." *EBSO Indus., Inc. v. Royal Ins. Co. of Am.*, 775 So. 2d 128, 131 (Ala. 2000) (citations omitted). On the other hand, Progressive argues that this is not a situation where reformation is appropriate because the mistake was unilateral. "A mistake or misunderstanding of one party to a transaction, sometimes styled a 'unilateral mistake,' will not [authorize] the reformation of a written instrument; since, in order to reform a contract, it must appear that the parties mutually intended something different from that expressed." *Kant v. Atlanta, B. & A.R. Co.*, 66 So. 598, 599 (Ala. 1914) (citation omitted).

In this case, the evidence establishes that both McKnight and Lane made a mistake. It is undisputed that (1) both McKnight and Lane intended to obtain $1,000,000 of CSL coverage from Progressive; (2) but for the clerical error, Progressive would have issued the Policy to Lane with $1,000,000 of CSL coverage;[19] (3) McKnight mistakenly selected $300,000 of CSL coverage from the drop-down menu on Progressive's application software; and (4) Lane mistakenly signed the application requesting only $300,000 of CSL coverage. Because McKnight, who was acting as an

---

[17] The parties to Lane's policy of insurance are Progressive, by its authorized agent McKnight, and Lane. *First Ala. Bank of Montgomery, N.A.*, 899 F.2d at 1079 ("Alabama courts have always adhered to the general rule that the agent's knowledge is treated as the principal's knowledge.")

[18] McKnight makes no claim for fraud nor does he claim that Lane knew of his mistake.

[19] Lane was, and remains, willing to pay the increased premium required for $1,000,000 of CSL coverage for the time period at issue.

authorized agent of Progressive,[20] was not the only party that made the mistake on the application which resulted in the erroneous Policy, the mistake was mutual and not unilateral. Accordingly, the court concludes from a review of the record that this is a case for equitable reformation.[21] McKnight's summary judgment is thus due to be granted in relation to reformation of the Policy.

   2.   *Producer's Agreement*

Progressive alleges a breach of contract claim against McKnight for his carelessness in creating the erroneous Policy. Progressive argues that McKnight's error constituted a breach of his contractual duty under the Producer's Agreement and, as a result, McKnight is liable to Progressive under the indemnification provision of the Producer's Agreement for its damages suffered. Progressive requests damages in the amount of $700,000 (for the settlement of the underlying state court lawsuit), plus attorney's fees and litigation expenses.

McKnight argues that Progressive breached its contractual duty under the Producer's Agreement and maintains that Progressive is liable for McKnight's damages suffered under the indemnification provision of the Producer's Agreement. McKnight requests damages of "any amounts which McKnight may be ordered to pay to any party to this lawsuit," plus attorney's fees, court costs, and litigation expenses. (Doc. # 143.)

---

[20] Contrary to Progressive's argument, the evidence submitted by the parties establishes that McKnight's error did not extinguish his authority to bind Progressive on insurance coverage. The Producer's Agreement states in relevant part:

> You have no authority to, and you will not, bind us on insurance coverage:
> (1) based on information that you know or have reason to know is false or inaccurate . . . .

(Doc. # 143, Ex. A, Article II, ¶ B.) This provision is inapplicable here because the evidence indicates that at the time McKnight completed Lane's application for the Policy, McKnight did not "know or have reason to know" that the application contained the error and thus was inaccurate.

[21] *See Home Indem. Co. of New York v. City of Mobile*, 477 So. 2d 312, 315 (Ala. 1985) ("There can be no modification of an insurance policy unless both parties agreed to the modification." (citation omitted)).

>The indemnification provision of the Producer's Agreement provides in relevant part:
>
>A. [Progressive] will indemnify and hold [McKnight] harmless for and from all liabilities, losses, damages, judgements, actions, and expenses, including reasonable attorneys' fees (collectively, "Losses"), that [McKnight] sustain[s] due to [Progressive's] negligence, any acts, errors or omissions on [Progressive's] part, or [Progressive's] failure to comply with the provisions of this Agreement, including, without limitation, [Progressive's] failure to perform [its] duties set forth in Article III, provided that [Progressive] is legally liable to [McKnight] for such Losses. [McKnight] will immediately notify [Progressive] when it learn[s] of or receive[s] any claim that [McKnight] feel[s] is covered under this Article. [Progressive has] the right to participate in the investigation and defense of any such claim, and may, at [Progressive's] option, assume full defense of any action filed. If [Progressive] assume[s] the defense, [it] will not be liable to [McKnight] for any cost of litigation, including, without limitation, court costs and attorneys' fees, that [McKnight] incur[s] subsequent to [Progressive's] decision to assume defense of any such action.
>
>B. [McKnight] will indemnify and hold [Progressive] harmless for and from all Losses that [Progressive] sustain[s] due to [McKnight's] negligence, any unauthorized representations, acts, errors, or omissions on [McKnight's] part, or [its] failure to comply with the provisions of this Agreement, including without limitation, [McKnight's] failure to perform [its] duties set forth in Article III, or failure to comply with restrictions on [its] binding authority . . . provided that [McKnight] is legally liable to [Progressive] for such Losses.

(Doc. # 143, Ex. A, Article VII.)

Under Article III of the Producer's Agreement, McKnight's duties include, among other duties, reasonably ensuring that all applications are complete and contain accurate information. (*Id.* at Article III.) Progressive's duties under Article III include, *inter alia*, adjusting or arranging for the adjustment of all claims. (*Id.*)

Here, the evidence before the court establishes that McKnight's error constituted a failure to perform his duties under the Producer's Agreement and thus McKnight is liable to Progressive

under the indemnification provision.[22] In the summary judgment briefs, McKnight concedes that he is liable to Progressive under the indemnification provision for his error in Lane's insurance application and the resulting Policy. (Doc. # 90 at 10.) However, McKnight argues that Progressive is only entitled to receive the difference in premiums for a policy with $1,000,000 limits and a policy with $300,000 limits – the increased premiums.

The Alabama Supreme Court has stated that "a contract of insurance is essentially like all other contracts, and governed by general rules of contract." *Pate v. Rollison Logging Equip., Inc.*, 628 So. 2d 337, 345 (Ala. 1993) (citation omitted). The general rules of contract provide that damages should return the injured party to the position he would have been in had the contract been fully performed and that these damages are generally those that flow naturally from the breach. *See id*. Considering these principles,[23] the court finds that Progressive is only entitled to recover the increased premium amounts, attorney's fees, and court costs. If McKnight had not erred on Lane's application for the Policy, Progressive would have provided $1,000,000 of CSL coverage to Lane and Progressive would have received the appropriate premium for that policy. The only difference between Progressive's position under that scenario and the present is the lack of increased premiums that Lane would have paid. Accordingly, because the court concludes that Progressive is entitled to

---

[22] McKnight's failure to ensure that Lane's application contained accurate information clearly constitutes a breach of the Producer's Agreement for which Progressive can recover compensatory damages. *See Employees' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 975 (Ala. 1998) ("In order to establish that a breach of contract has occurred, a plaintiff must prove: (1) the *existence of a valid contract* binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages.") (internal quotation and citation omitted) (emphasis added). All of these requisites are satisfied in this case therefore Progressive is entitled to summary judgment on its breach of contract claim.

[23] The court is not persuaded by the case law from numerous state courts cited by McKnight in its summary judgment briefs as the court is bound to apply Alabama law to this action.

recover the increased premiums, attorney's fees, and litigation expenses[24] from McKnight under the indemnity provision, Progressive is therefore entitled to summary judgment in relation to its breach of contract claim.

Furthermore, McKnight's counterclaim against Progressive is due to be dismissed. There is no evidence before the court which indicates that Progressive failed to properly investigate the matters concerning the Policy, failed to adjust Lane's claim for benefits, or failed to fulfill any of its duties under the Producer's Agreement. Thus, the court concludes that Progressive is entitled to summary judgment on McKnight's counterclaim.

## V. CONCLUSION[25]

For the reasons stated above, it is hereby ORDERED that:

1. McKnight's motion for summary judgment (Doc. # 75) is GRANTED in part and DENIED in part. The motion is GRANTED to the extent that the Policy is reformed to provide $1,000,000 of CSL coverage to Lane, and DENIED in all other respects.

---

[24] Attorney's fees and litigation expenses are those arising out of this action to enforce the terms of the Producer's Agreement.

[25] When an insurance agent has failed in the duty he assumes, the principal may sue either for breach of contract or in tort for breach of duty imposed on the agent. *Elegante*, 361 So. 2d at 1064. Progressive has sued McKnight under both breach of contract and tort breach of duty theories. Having considered Progressive's claims under both theories, the court finds that Progressive's tort claims are due to be dismissed. First, according to Progressive, its claim of negligent procurement of insurance is premised upon McKnight's contractual duty under the Producer's Agreement to provide accurate information to Progressive to bind coverage. (Doc. # 91 at 19.) Because Progressive's negligent procurement of insurance claim is simply a restatement of its breach of contract claim, the court finds that said claim is due to be dismissed. Second, Progressive's claim for innocent/reckless misrepresentation is due to be dismissed as moot. Since there has been no showing of intentional or reckless misrepresentation, Progressive cannot recover punitive damages and may only recover damages equivalent to that for the breach of contract (i.e., compensatory damages). *See Christopher v. Heimlich*, 523 So. 2d 466, 466-67 (Ala. Civ. App. 1988) (noting that a plaintiff in an innocent misrepresentation case is entitled to only compensatory damages because punitive damages are not allowed unless the misrepresentation is shown to be intentional or reckless). Because the court specifically finds in favor of Progressive on its contract claim and Progressive cannot receive double recovery, its claim for innocent/reckless misrepresentation is moot. *See Oxford Furniture Cos., Inc. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1125 (11th Cir. 1993) ("Under Alabama law . . . a single transaction can support an award of damages for both breach of contract and fraud as long as . . . there can be no double recovery.")

2. Progressive's motion for summary judgment (Doc. # 73) is GRANTED in part and DENIED in part. The motion is GRANTED to the extent that: (1) Progressive is entitled to summary judgment against McKnight on its breach of contract claim, (2) under the Producer's Agreement, Progressive is entitled to indemnification from McKnight for its damages, and (3) Progressive is entitled to summary judgment on McKnight's counterclaim. The motion is DENIED in all other respects.

3. McKnight's counterclaim is hereby DISMISSED with prejudice.

4. Progressive's tort claims are hereby DISMISSED.

5. On or before **February 21, 2007**, Progressive shall file a memorandum brief providing (1) the specific requested amount of attorney's fees, court costs and litigation expenses; and (2) the specific amount of additional premiums which Lane would have had to pay to secure $1,000,000 of CSL coverage under the Policy. Progressive is DIRECTED include or attach specific evidentiary support to its submission. McKnight shall file a response on or before **February 28, 2007**.

DONE this 7th day of February, 2007.

                        /s/  W. Keith Watkins
                        UNITED STATES DISTRICT JUDGE