IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PROGRESSIVE SPECIALTY INS., CO.,  ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:05-cv-438-WKW |
| ) | (WO) |
| MCKNIGHT AGENCY, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**AMENDED MEMORANDUM OPINION AND ORDER**

This Amended Memorandum Opinion and Order supercedes the interlocutory order entered in this matter on February 7, 2007. (Doc. # 149.) Plaintiff Progressive Specialty Insurance Company ("Progressive") brought this action against Defendants McKnight Agency, Inc. ("McKnight Agency"), Joe McKnight ("McKnight"), Ricky Lane ("Lane"), Riverside Turf Farm ("Riverside"), and Jane Holmes ("Holmes")[1] alleging various state law claims. (Doc. # 1, Compl.) In response to the complaint, the defendants filed numerous cross claims and counterclaims. (Docs. # 38, 39, 40, 59, 61.)

This cause is before the court on the motion for summary judgment filed by Progressive (Doc. # 73), and the motion for summary judgment filed by McKnight and McKnight Agency (Doc. # 75). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that McKnight's motion is due to be DENIED, and Progressive's motion is due to be GRANTED in part and DENIED in part.

---

[1] Holmes was sued individually and as the personal representative of the estate of Daisy Beasley, deceased. (Doc. # 1, Compl.)

## I. FACTS AND PROCEDURAL HISTORY

The dispute in this case arises out of user error by an insurance agent using the computer software of his carrier. The evidentiary submissions of the parties establish the following facts.

*A.     Facts*

McKnight owned and operated McKnight Agency[2] which was an authorized agent for Progressive.[3] In October 2000, Lane, a commercial truck driver, met with McKnight to obtain liability insurance coverage for his truck. On October 27, 2000, Lane was approved for and purchased a combined single limits ("CSL") policy with $1,000,000 of coverage from Progressive through McKnight.

On March 10, 2003, Lane returned to McKnight to purchase another $1,000,000 CSL policy from Progressive so that he could start hauling sod for Riverside. Although Lane was required to have at least $750,000 of liability coverage to haul for Riverside, Lane requested $1,000,000 of coverage. Because Lane continued to qualify for $1,000,000 of CSL coverage, McKnight submitted a computerized application on Lane's behalf to Progressive for the coverage. Unbeknown to McKnight and Lane, McKnight mistakenly selected $300,000, rather than $1,000,000, from the drop-down menu in Progressive's application software[4] while he was completing Lane's application

---

[2] McKnight sold the McKnight Agency to Young, Johnston & Associates in December 2004 and the McKnight Agency was dissolved. McKnight remains a licensed agent for Progressive.

[3] On February 5, 1998, McKnight and Progressive entered into a Producer's Agreement, providing McKnight Agency with authority to "solicit, provide quotes, receive applications, bind coverage, and collect, receive and receipt for premiums for insurance products" in the state of Alabama for Progressive. (Doc. # 143, Ex. A, Article II, ¶ A.)

[4] McKnight testified that he had been using Progressive's software for seven or eight years and had no previous problems with the software. (McKnight Dep. 70-71.)

for the policy ("the Policy").[5] McKnight and Lane were unaware of the clerical error and believed that Lane had purchased $1,000,000 of CSL coverage from Progressive. Upon that mistaken belief, Lane signed the application for the Policy and McKnight issued a certificate of liability insurance ("COLI") to Riverside stating that Lane was insured for $1,000,000.[6] However, Progressive issued the Policy to Lane, providing only $300,000 of CSL coverage, due to McKnight's clerical error. The Policy was in effect from March 10, 2003, to March 10, 2004.[7]

In March 2004, McKnight and Lane renewed the Policy.[8] Because it was a renewal, no application was completed. Consequently, the previous clerical error in CSL coverage was carried forward on the renewed Policy and neither Lane nor McKnight realized the error.[9] Again, McKnight mistakenly issued a COLI to Riverside stating that Lane was insured for $1,000,000.

In July 2004, Lane was involved in an automobile accident that resulted in the death of Daisy Beasley. When Lane called Progressive to report the accident, he learned for the first time that the renewed Policy only provided $300,000 of CSL coverage. Shortly thereafter, Lane called McKnight to discuss the CSL coverage under the renewed Policy. Lane informed McKnight that, according to Progressive, he only had $300,000 of CSL coverage. Disbelieving Progressive's assertion of

---

[5] It is undisputed that, but for McKnight's clerical error, Progressive would have issued the Policy to Lane with $1,000,000 of CSL coverage. (Fitzgerald Dep. 55.)

[6] There is no dispute that both Lane and McKnight intended for Lane to receive a policy with $1,000,000 of CSL coverage from Progressive, and that Lane met the underwriting criteria of Progressive at the time of the application to obtain CSL coverage of $1,000,000.

[7] The declarations page for the Policy reflects that Lane had $300,000 in coverage. A copy of the Policy, including the declarations page, was mailed to both McKnight and Lane; neither of them noticed the clerical error.

[8] The renewed Policy provided coverage from March 10, 2004 to March 10, 2005.

[9] A copy of the renewed Policy and declarations page were mailed to Lane and McKnight; neither of them caught the mistake.

coverage, McKnight reviewed Lane's file and discovered that Lane in fact had only $300,000 of CSL coverage.

Subsequently, in October 2004, Lane requested and received an increase in the renewed Policy to provide $1,000,000 of CSL coverage.[10]  In March 2005, Lane again renewed his coverage and was approved for $1,000,000 of CSL coverage by Progressive.

B.     *Underlying Lawsuit*

As a result of the July 2004 accident, Holmes filed a lawsuit in the Circuit Court of Pike County, Alabama, against Lane, Riverside, and other defendants.  According to Holmes's complaint,[11] at the time of the accident,[12] Lane was driving the truck insured by Progressive and was hauling a load for Riverside.  While traveling on U.S. Highway 231, Lane struck Beasley's vehicle from the rear while she was in the left turn lane waiting to turn.  This collision caused Beasley's vehicle to be pushed under the tractor trailer of another driver, resulting in Beasley's death.

Progressive defended Lane in Holmes' lawsuit and settled the claims against Lane for $1,000,000.

C.     *This Lawsuit*

On May 10, 2005, Progressive filed the instant action naming McKnight Agency, McKnight, Lane, Riverside and Holmes as defendants.  (Doc. # 1, Compl.)  On August 25, 2006, Progressive's claims against Holmes, Lane and Riverside were dismissed; Lane and Riverside's counterclaims against Progressive were dismissed; and Holmes was dismissed as a party to the action.  (Doc. #

---

[10] Progressive agreed to increase the limits of coverage on the renewed Policy to $1,000,000 for an additional premium.

[11] (*See* Doc. # 1, Ex. D.)

[12] The accident occurred on July 6, 2004.

137.) On September 11, 2006, Lane and Riverside's cross claims against McKnight and McKnight Agency were dismissed. (Doc. # 147.) Thus, the only defendants remaining in this action are McKnight and McKnight Agency (from this point on referred to collectively as "McKnight").

Further, the only claims remaining in this action are Progressive's claims against McKnight, and McKnight's counterclaims against Progressive. Progressive alleges claims against McKnight for negligent procurement of insurance coverage, innocent/reckless misrepresentation on the insurance application, and breach of contract. (Doc. # 142, Final Am. Compl.) Progressive seeks damages for the increased liability limits in the amount of $700,000,[13] interest, costs, reasonable attorney's fees and litigation expenses. McKnight brings counterclaims against Progressive for breach of contract, breach of duty, and failure to indemnify. (Doc. # 143, Final Am. Answer & Final Countercl.) McKnight seeks costs, reasonable attorney's fees, and litigation expenses.

On November 23, 2005, Progressive filed a motion for summary judgment arguing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law on its claims. (Doc. # 73.) On November 25, 2005, McKnight filed a motion for summary judgment arguing that he is entitled to judgment as a matter of law on the counterclaims. (Doc. # 75.) These motions are now fully briefed and ripe for consideration by the court. The parties stipulated that no disputed facts exist in relation to the claims presently before the court. (*See* Doc. # 139.)

---

[13] This amount represents the settlement sum in excess of Lane's $300,000 CSL coverage under the renewed Policy.

## II.  JURISDICTION AND VENUE

The parties have not disputed that this court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332[14] and 1367.  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both personal jurisdiction and venue.

## III.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories,

---

[14] Progressive is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Ohio.  McKnight is a resident of Alabama, and McKnight Agency was a corporation organized and existing under the laws of the State of Alabama, with its principal place of business in Alabama.  According to the Complaint, the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00. (Doc. # 1, Compl., ¶ 6.)

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

The parties stipulated that there is no dispute as to any material fact and have submitted the case for decision on the summary judgment record. However, "[t]he determination whether a genuine issue concerning a material fact exists is itself a question of law that must be decided by the court. It does not depend upon what either or both of the parties may have thought about the matter." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1988). The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment. *See, e.g., Gerling Global Reins. Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233 (11th Cir. 2001). The Eleventh Circuit has held that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.3d 1553, 1555 (11th Cir. 1984) (citation omitted). However, it is also true that cross-motions may indicate the absence of a factual dispute where they reflect general agreement by the parties as to the dispositive legal theories and material facts. *Id.* at 1555-56. In this case, the

court has carefully reviewed the evidence and concludes, as do the parties, that there is no dispute as to any material fact, and that judgment may be entered on the record before it.

## IV. DISCUSSION

*A.     Applicable Law*

At the outset, the court notes that the issues in this case must be decided in accordance with Alabama law. When a federal court exercises diversity of citizenship jurisdiction, the court is bound to apply the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The *Erie* doctrine extends to choice-of-law questions, so that a court sitting in diversity must apply the forum state's conflict-of-law rules. *Strochak v. Federal Ins. Co.,* 109 F.3d 717, 719-20 (11th Cir. 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, *Inc.*, 313 U.S. 487, 496 (1941)). "The general choice-of-law rule in Alabama is *lex loci contractus*, which provides that 'a contract is governed as to its nature, obligation, and validity by the law of the place where it was made.'" *Kruger Commodities, Inc. v. U.S. Fid. and Guar.*, 923 F. Supp. 1474, 1477 (M.D. Ala. 1996) (Thompson, J.) (citations omitted). Here, the insurance contract was formed in Alabama.[15]

*B.     Motions for Summary Judgment*

In its motion for summary judgment, Progressive argues that because McKnight's negligence caused the error, McKnight should indemnify Progressive pursuant to the Producer's Agreement for the $700,000 increased liability. McKnight argues that the renewed Policy should be reformed to provide $1,000,000 CSL coverage and that, pursuant to the Producer's Agreement, Progressive should indemnify McKnight for attorney's fees and litigation costs. The court addresses these

---

[15] In addition, the Producer's Agreement provides that the "Agreement will be governed by and interpreted under" Alabama law. (Doc. # 143, Ex. A, Article IX, ¶ A.)

arguments in turn.

   1.   *Reformation of the Insurance Policy*

Addressing the parties' arguments, the court in its prior opinion devoted substantial discussion to the issue of reformation of the underlying insurance contract on the ground of mutual mistake. (Doc. # 149 at 8-10.) Although the court concludes from a review of the record that this would be a case in which equitable reformation would be appropriate, upon its own reconsideration, the court finds that the policy cannot be reformed for a very basic reason not argued by either party: the contract in question is an insurance policy issued by Progressive to Lane. Lane is no longer a party to this action, and McKnight has no standing to advocate reformation of a contract to which he is not a party. Couch on Insurance, § 28:1. Accordingly, the court finds that McKnight is not entitled to reformation of the underlying insurance contract.

   2.   *Producer's Agreement:  Breach of Contract*

Progressive alleges a breach of contract claim against McKnight for his carelessness in creating the erroneous Policy. Progressive argues that McKnight's error constituted a breach of his contractual duty under the Producer's Agreement and, as a result, McKnight is liable to Progressive under the indemnification provision of the Producer's Agreement for its damages suffered. Progressive requests damages in the amount of $700,000 (for the settlement of the underlying state court lawsuit), plus attorney's fees and litigation expenses.

McKnight's obligations under the Producer's Agreement are as follows:

> B. [McKnight] will indemnify and hold [Progressive] harmless for and from all Losses that [Progressive] sustain[s] due to [McKnight's] negligence, any unauthorized representations, acts, errors, or omissions on [McKnight's] part, or [its] failure to comply with the provisions of this Agreement, including without limitation, [McKnight's] failure to perform [its] duties set forth in Article III, or failure to

>   comply with restrictions on [its] binding authority . . . provided that [McKnight] is legally liable to [Progressive] for such Losses.

(Doc. # 143, Ex. A, Article VII.) Under Article III of the Producer's Agreement, McKnight's duties include, among other duties, reasonably ensuring that all applications are complete and contain accurate information. (*Id*. at Article III.)

Here, the evidence establishes that McKnight's error constituted a failure to perform his duties under the Producer's Agreement and thus McKnight is liable to Progressive under the indemnification provision.[16] In his summary judgment briefs, McKnight concedes that he is liable to Progressive under the indemnification provision for his error in Lane's insurance application and the resulting Policy. (Doc. # 90 at 10.) However, McKnight argues that Progressive is only entitled to receive the difference in premiums for a policy with $1,000,000 limits and a policy with $300,000 limits – the increased premiums.

The Alabama Supreme Court has stated that "a contract of insurance is essentially like all other contracts, and governed by general rules of contract." *Pate v. Rollison Logging Equip., Inc.*, 628 So. 2d 337, 345 (Ala. 1993) (citation omitted). General rules of contract law provide that damages should return the injured party to the position he would have been in had the contract been fully performed and that these damages are generally those that flow naturally from the breach. *See*

---

[16] McKnight's failure to ensure that Lane's application contained accurate information clearly constitutes a breach of the Producer's Agreement for which Progressive can recover compensatory damages. *See Employees' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 975 (Ala. 1998) ("In order to establish that a breach of contract has occurred, a plaintiff must prove: (1) the *existence of a valid contract* binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages.") (internal quotation and citation omitted) (emphasis added). All of these requisites are satisfied in this case; therefore, Progressive is entitled to summary judgment on its breach of contract claim.

*id*. Considering these principles,[17] the court finds that Progressive is only entitled to recover the increased premium amounts, attorney's fees, and court costs. If McKnight had not erred on Lane's application for the Policy, Progressive would have provided $1,000,000 of CSL coverage to Lane and Progressive would have received the appropriate premium for that policy. The only difference between Progressive's position under that scenario and the present is the lack of increased premiums that Lane would have paid. Accordingly, because the court concludes that Progressive is entitled to recover the increased premiums, attorney's fees, and litigation expenses[18] from McKnight under the indemnity provision, Progressive is therefore entitled to summary judgment in relation to its breach of contract claim.

    3.    *Progressive's and McKnight's Other Claims*

When an insurance agent has failed in the duty he assumes, the principal may sue either for breach of contract or in tort for breach of duty imposed on the agent. *Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*, 361 So. 2d 1060, 1064 (Ala. 1978). Progressive has sued McKnight under both breach of contract and tort breach of duty theories. Having considered Progressive's claims under both theories, the court finds that Progressive's tort claims are due to be dismissed.

First, according to Progressive, its claim of negligent procurement of insurance is premised upon McKnight's contractual duty under the Producer's Agreement to provide accurate information to Progressive to bind coverage. (Doc. # 91 at 19.) Because Progressive's negligent procurement of insurance claim is simply a restatement of its breach of contract claim, the court finds that said

---

[17] The court is not persuaded by the case law from numerous state courts cited by McKnight in his summary judgment briefs as the court is bound to apply Alabama law to this action.

[18] Attorney's fees and litigation expenses are those arising out of this action to enforce the terms of the Producer's Agreement.

claim is due to be dismissed. Second, Progressive's claim for innocent/reckless misrepresentation is due to be dismissed as moot. There has been no showing of intentional or reckless misrepresentation. Progressive, thus, cannot recover punitive damages and may only recover damages equivalent to that for the breach of contract (*i.e.*, compensatory damages). *See Christopher v. Heimlich*, 523 So. 2d 466, 466-67 (Ala. Civ. App. 1988) (noting that a plaintiff in an innocent misrepresentation case is entitled to only compensatory damages because punitive damages are not allowed unless the misrepresentation is shown to be intentional or reckless). Because the court specifically finds in favor of Progressive on its contract claim and Progressive cannot receive double recovery, its claim for innocent/reckless misrepresentation is moot. *See Oxford Furniture Cos., Inc. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1125 (11th Cir. 1993) ("Under Alabama law . . . a single transaction can support an award of damages for both breach of contract and fraud as long as . . . there [is] no double recovery.").

Furthermore, McKnight's counterclaims against Progressive are due to be dismissed. McKnight argues that Progressive breached its contractual duty under the Producer's Agreement and maintains that Progressive is liable for McKnight's damages suffered under the indemnification provision of the Producer's Agreement. McKnight requests damages of "any amounts which McKnight may be ordered to pay to any party to this lawsuit," plus attorney's fees, court costs, and litigation expenses. (Doc. # 143.) The indemnification provision of the Producer's Agreement provides in relevant part:

> A. [Progressive] will indemnify and hold [McKnight] harmless for and from all liabilities, losses, damages, judgements, actions, and expenses, including reasonable attorneys' fees (collectively, "Losses"), that [McKnight] sustain[s] due to [Progressive's] negligence, any acts, errors or omissions on [Progressive's] part, or [Progressive's] failure to comply with the provisions of this Agreement, including, without limitation, [Progressive's] failure to perform [its] duties set forth in Article

> III, provided that [Progressive] is legally liable to [McKnight] for such Losses. [McKnight] will immediately notify [Progressive] when it learn[s] of or receive[s] any claim that [McKnight] feel[s] is covered under this Article. [Progressive has] the right to participate in the investigation and defense of any such claim, and may, at [Progressive's] option, assume full defense of any action filed. If [Progressive] assume[s] the defense, [it] will not be liable to [McKnight] for any cost of litigation, including, without limitation, court costs and attorneys' fees, that [McKnight] incur[s] subsequent to [Progressive's] decision to assume defense of any such action.

(Doc. # 143, Ex. A, Article VII.) Under Article III of the Producer's Agreement, Progressive's duties under Article III include, *inter alia*, adjusting or arranging for the adjustment of all claims. (*Id.* Article III.)

There is no evidence before the court which indicates that Progressive failed to properly investigate the matters concerning the Policy, failed to adjust Lane's claim for benefits, or failed to fulfill any of its duties under the Producer's Agreement. Thus, the court concludes that Progressive is entitled to summary judgment on McKnight's counterclaims.

### V. PREMIUM, ATTORNEY'S FEES AND LITIGATION EXPENSES

Also before the court is Progressive's claim for increased premiums, attorney's fees and litigation expenses arising out of this action to enforce the terms of the Producer's Agreement. (See Document # 149, n. 24.) On the evidence before it, the court finds the increased premiums due to Progressive from McKnight to be $2,821.76. Judgment will be entered in favor of Progressive for this sum.

Progressive submitted an itemized claim for attorney's fees in the amount of $18,949.80 and litigation expenses in the amount of $1,041.20, for a total of $19,991.00. (Doc. # 150.) McKnight disputes portions of the fees and expenses claimed on two grounds. First, McKnight insists that Progressive's recovery was less than one percent of the $700,000 original amount claimed and that

the amount claimed for attorney's fees and expenses by Progressive is therefore not reasonable in relation to the amount recovered. McKnight insists that the extent of success of a party claiming fees and expenses is a crucial factor in the determination, citing *Farrar v. Hobby*, 506 U.S. 103 (1992), a § 1983 case involving prevailing party fees. Second, McKnight parses Progressive's attorney's fee bill, challenging 75.44 hours of work totaling $8,975.80. McKnight's argument concerning these items faults Progressive for attempting to recover sums expended in prosecuting and defending the underlying tort claims of Lane, Riverside, and Holmes.

Progressive defends the submitted amounts on several grounds. The primary ground advanced is that if McKnight had chosen the correct amount of liability coverage for Lane, there would have been no need for Progressive to file the suit. "Progressive had to file this lawsuit." (Doc. # 156 ¶ 8.) Moreover, "[t]he underlying state court defendants had an interest in this lawsuit and Progressive was required to make them a defendant in this case to fairly adjudicate their claims." (*Id.* ¶ 9.) Finally, Progressive says the fees and costs are reasonable and naturally flow as damages in the case.

When state law supplies the rule of decision, it also supplies the rule regarding attorney's fees awarded as costs pursuant to the terms of a contract. Fields v. Primerica Life Ins. Co., Civ. A. No. 97-D-1637-E, 2002 WL 31059371, *1 (M.D. Ala. 2002). In Alabama, twelve criteria may be considered in determining the reasonableness of an award of attorney's fees, including:

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the

>  circumstances. . . . Although all of these criteria need not be met, they are available for the trial court to consider in connection with each claim for an award of attorney fees.

*Lanier v. Moore-Handley, Inc.*, 575 So. 2d 83 (Ala. Sup. Ct. 1991)(internal quotes and citations omitted).  As can be readily seen, the measure of success achieved is only one factor of many to be considered, and upon due reflection upon the factors, is the only one that operates against Progressive's claim.[19]  The balance is either neutral or irrelevant (numbers 1, 5, 7, 8, 9, 11 and 12) or strongly favors Progressive's claim (numbers 2, 3, 4, and 10).  Further, in citing *Farrar*, McKnight conflates his success on the merits argument with the unique aspects of § 1983 prevailing party fees, a comparison that is inapposite to the contract dispute involved here.  The most relevant factors, time expended and rates charged, are certainly reasonable for the nature of the services provided here.

Because McKnight is liable for attorney's fees and expenses under the Producer's Agreement he executed, and because he benefitted from construction of the contract involved, he cannot now be heard to dispute the reasonableness of the fees on the ground that other parties were involved resulting in excess legal fees for Progressive.  The court cannot speculate on whether suit would have ensued with other parties if the policy had properly been issued for $1,000,000, or whether all or some of the parties to this action would have been party to that imaginary suit.  What can be gleaned from all the circumstances is that, but for McKnight's negligence, this suit with these issues would

---

[19] However, in order to resolve the competing rights and interests of the parties under the contract, the court had to construe the Producer's Agreement.  Irrespective of the ultimate success of either party on the merits, both benefitted from the resolution of the contract issues between them.

15

not have come about, and these fees and expenses would not have been incurred by Progressive. McKnight's invitation to trim the fees on this ground is therefore rejected.[20]

Once entitlement to attorney's fees and expenses is established, reasonableness of the award is the sole remaining issue. The court has carefully reviewed the legal issues and tasks, the rates charged and the time expended, as well as the other factors listed in *Moore-Handley,* and concludes that the attorney's fees and expenses claimed by Progressive are reasonable and due to be awarded.

### VI. CONCLUSION

For the reasons stated above, it is hereby ORDERED that:

1. McKnight's motion for summary judgment (Doc. # 75) is hereby DENIED.

2. Progressive's motion for summary judgment (Doc. # 73) is hereby GRANTED in part and DENIED in part. The motion is GRANTED to the extent that: (1) Progressive is entitled to summary judgment against McKnight on its breach of contract claim; (2) under the Producer's Agreement, Progressive is entitled to indemnification from McKnight for its damages of $2,821.76 for recovery of premiums; and $19,991.00 for attorney's fees and litigation expenses; and (3) Progressive is entitled to summary judgment on McKnight's counterclaims. The motion is DENIED in all other respects.

3. McKnight's counterclaims are hereby DISMISSED with prejudice.

4. Progressive's tort claims are hereby DISMISSED.

5. An appropriate final judgment will be issued.

---

[20] Nevertheless the court reviewed the billing line by line, afterwards concluding that any attempt by the court to allocate the charges among parties would be entirely conjectural and speculative, and ultimately futile.

DONE this 18th day of September, 2007.

                               /s/ W. Keith Watkins
                               UNITED STATES DISTRICT JUDGE